# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

**Civil Action No**.: 1:24-cv-00739-DDD-SBP

KARAM AKHRAS, Individually and on
behalf of all others similarly situated,

      Plaintiff,

      v.

SSR MINING INC., RODNEY P. ANTAL,
and ALISON WHITE,

      Defendants.

---

**Civil Action No**.: 1:24-cv-00808-CNS-SBP

ERIC LINDEMANN, Individually and on Behalf
of All Others Similarly Situated,

      Plaintiff,

v.

SSR MINING, INC., RODNEY P. ANTAL,
ALISON WHITE, STEWART J. BECKMAN,
WILLIAM NEVIN, and F. EDWARD FARID,

      Defendants.

---

**MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF GEORGE
LAMASON AND JEREMY LINHARDT FOR CONSOLIDATION, APPOINTMENT AS
CO-LEAD PLAINTIFFS AND APPROVAL OF COUNSEL; AND (2) IN OPPOSITION TO
COMPETING MOTIONS**

---

Movants Lamason and Linhardt[1] respectfully submit this memorandum of law in further

support of their motion for consolidation, appointment as Co-Lead Plaintiffs, and approval of their

selection of Pomerantz as Lead Counsel (Dkt. No. 22); and in opposition to the competing motions

of (i) RAD Investment LLC ("RAD Investment") (Dkt. No. 18); (ii) Employees Retirement System

of the City of Baltimore (the "Retirement System") (Dkt. No. 21); and (iii) Linda Thompson and

Terry Thompson (the "Thompsons") (Dkt. No. 19).[2]

## PRELIMINARY STATEMENT

The Related Actions are putative securities class action lawsuits on behalf of investors in

SSR Mining securities.[3]  As with all federal class action securities lawsuits, a lead plaintiff must

be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court must

appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the

action; and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15

U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, those movants are Lamason and Linhardt, who incurred an aggregate loss of

approximately ***$1.47 million*** in connection with their Class Period purchases of SSR Mining

securities.  *Darwin v. Taylor*, No. 12-CV-01038-CMA-CBS, 2012 WL 5250400, at *2 (D. Colo.

---

[1] All capitalized terms herein are defined in Lamason and Linhardt's moving brief, unless otherwise indicated.  *See* Dkt. No. 22.

[2] Initially three other putative Class members or groups of Class members filed similar competing motions: (1) Haldun Cetinbay and Jeffrey C. Williams ("Cetinbay and Williams") (Dkt. No. 12); (2) Stephen Gillig ("Gillig") (Dkt. No. 14); and (3) Shawn Araghi and Matthew Chipman ("Araghi and Chipman") (Dkt. No. 16.).  On May 23, 2024, Gillis filed a notice of non-opposition to competing motions (Dkt. No. 24) and on May 31, 2024, Araghi and Chipman filed a notice of non-opposition to competing motions (Dkt. No. 25).  On June 5, 2024, Cetinbay and Williams filed a notice withdrawing their motion.  Dkt. No. 30.

[3] All of the competing movants before the Court agree that the Related Actions should be consolidated.  *See* Dkt. Nos. 18, 19, 21-22.

Oct. 23, 2012) ("[C]ourts routinely look to the movant's financial loss as the most significant factor in assessing his financial interest in the action.").

The table below sets for the respective losses of the competing movants:

| Movant | Loss |
|---|---|
| Lamason and Linhardt | $1,468,963 |
| RAD Investment | $1,137,195.50 |
| The Retirement System | $291,320.81 |
| The Thompsons | $162,207.69 |

As the table reflects, Lamason and Linhardt's loss is significantly larger than that of any competing movant. The movant with the next largest loss, RAD Investment, incurred a loss of only $1,137,195.50—nearly $332,000 less than Lamason and Linhardt. As such, it cannot reasonably be disputed that Lamason and Linhardt have alleged the largest financial interest in this litigation.

In addition to their significant financial interest, Lamason and Linhardt also satisfy the adequacy and typicality requirements of Rule 23. Lamason and Linhardt are aware of no conflict between their interests and those of the Class, their losses incurred as a result of the Defendants' alleged malfeasance gives them a sufficient stake in the outcome of the Related Actions to ensure vigorous advocacy, and in Pomerantz, Lamason and Linhardt have retained qualified and experienced counsel. *See Meyer v. Paradigm Med. Indus.*, 225 F.R.D. 678, 680 (D. Utah 2004). Moreover, Lamason and Linhardt's claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the claims of the other Class members. *See, e.g.*, *id.* Lamason and Linhardt are a small and cohesive movant group who have further demonstrated their adequacy by submitting a Joint Declaration contemporaneously with their motion, attesting to, *inter alia*, their shared understanding of the responsibilities of a Lead Plaintiff

pursuant to the PSLRA and their preparedness to coordinate their efforts to prosecute this action diligently on behalf of the Class.  *See* Dkt. No.  23-4.  Courts routinely appoint groups of two or more investors to serve as Co-Lead Plaintiffs under such circumstances.  *See, e.g.*, *In re Molycorp, Inc. Sec. Litig.*, No. 12-CV-0292-WJM-KMT, 2012 WL 13013602, at *2 (D. Colo. May 29, 2012) (collecting Tenth Circuit cases and finding "a group of unrelated individuals, who have no pre-existing litigation relationship, may be appointed as Lead Plaintiff in a shareholder class action" and "find[ing] that [movant group] has successfully demonstrated that it can act in a cohesive manner to protect the interests of the absent class members" based on, *inter alia*, its submission of "a detailed Joint Declaration"); *Subramanian v. Watford*, No. 20-CV-02652-CMA-STV, 2021 WL 1697147, at *3–4 (D. Colo. Apr. 29, 2021) (appointing movant group "contain[ing] only five class members" as lead plaintiff under the PSLRA where "[t]he members of [the group] submitted a Joint Declaration detailing their diversity of background, sophistication, and plans evincing cooperation"); *In re Spectranetics Corp. Sec. Litig.*, No. 08-cv-02048, 2009 WL 1663953, at *6 (D. Colo. June 15, 2009) ("certifications and declarations submitted by the members . . . demonstrate that the [group] . . . can and will work together to actively oversee the litigation and to monitor the work of counsel").

Finally, anticipating a potential argument by RAD Investment and/or the Retirement System, Lamason and Linhardt respectfully submit that neither RAD Investment nor the Retirement System are entitled to preferential treatment by virtue of their status as institutional investors.  In enacting the PSLRA, Congress hoped that institutional investors would seek appointment as lead plaintiffs, yet the statute that Congress ultimately passed does not so much mention institutional investors, let alone privilege them over individuals with larger investment

losses than institutional investors.  *See*, *e.g.*, *Kapur v. Usana Health Sciences, Inc.,* Case No. 2:07CV177DAK., 2007 WL 3046664, at *2 (D. Utah Oct. 17, 2007) ("While the legislative history reflects that Congress intended the Lead Plaintiff provisions to increase the likelihood that institutional investors would participate in litigation as a result of the size of the holdings held by such institutions, it did not choose to make any special preference for institutional investors in the plain language of the PSLRA."); *Reiger v. Altris Software, Inc.,* 98-cv-0528 (JFS), 1998 WL 1986953, at *4 (S.D. Cal. Sept. 11, 1998) ("If Congress had intended to restrict the application of the rebuttable presumption to institutional investors, it could have stated such in the statute."). Here, Lamason and Linhardt's investment loss of $1,468,963 is nearly $332,000 greater than RAD Investment's loss of $1,137,195.50 and more than five times the size of the Retirement System's loss of $291,320, and Lamason and Linhardt likewise satisfy Rule 23's adequacy and typicality requirements.  Lamason and Linhardt, not RAD Investment or the Retirement System, are thus plainly the "most adequate plaintiffs" pursuant to the PSLRA's criteria.  There is no basis to permit RAD Investment and/or the Retirement System to leapfrog Lamason and Linhardt and claim presumptive Lead Plaintiff status simply because they are institutional investors.

For the foregoing reasons, Lamason and Linhardt respectfully request that the Court grant their motion in its entirety and deny the competing motions.

## ARGUMENT

### I.  LAMASON AND LINHARDT SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The movant that has

the largest financial interest must make only a "'preliminary' showing that [the movant] satisfies the typicality and adequacy requirements of Rule 23." *Bilinsky v. Gatos Silver, Inc.*, No. 22-cv-00453-PAB-KLM, 2022 WL 18539368, at \*2 (D. Colo. June 03, 2022). Once this presumption is triggered, it may be rebutted upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Here, the most adequate plaintiffs are Lamason and Linhardt.

### A. Lamason and Linhardt Have the Largest Financial Interest in the Relief Sought by the Class

The PSLRA requires the court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). As the chart at p. 2 reflects, Lamason and Linhardt incurred losses of approximately $1,468,963 as a result of the malfeasance alleged in the Related Actions. The movant with the next largest loss, RAD Investment, incurred a loss of only $1,137,195.50—nearly $332,000 less than Lamason and Linhardt. Lamason and Linhardt have plainly alleged the largest financial interest in this litigation.

### B. Lamason and Linhardt Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, Lamason and Linhardt has also made the requisite *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23. *See Lane v. Page*, 250 F.R.D. 634, 640 (D.N.M. 2007). First, Lamason and Linhardt's claims satisfy the typicality requirement of Rule 23(a)(3) because their claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See Meyer*, 225 F.R.D. at 680. Lamason and Linhardt, like other Class members, purchased SSR Mining securities during the Class Period at

prices artificially inflated by Defendants' misrepresentations or omissions and were damaged upon the disclosure of those misrepresentations and/or omissions, which drove SSR Mining's share price downward. These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3). *Id.* Second, Lamason and Linhardt satisfy the adequacy requirement of Rule 23(a)(4) because there is no evidence of antagonism or conflict between their interests and those of the Class, they have a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, and in Pomerantz, they have retained qualified and experienced counsel with expertise in litigating securities fraud class actions, among other matters. *See, e.g.*, *id.* at 681.

Lamason and Linhardt also constitute an appropriate movant group of the type routinely appointed to serve as Co-Lead Plaintiffs. *See, e.g.*, *Molycorp,* 2012 WL 13013602, at *2 (collecting Tenth Circuit cases and finding "a group of unrelated individuals, who have no pre-existing litigation relationship, may be appointed as Lead Plaintiff in a shareholder class action"). Lamason and Linhardt have further demonstrated their adequacy because they have submitted a Joint Declaration attesting to, *inter alia*, their respective backgrounds and investing experience, their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, their decision to seek appointment jointly as Co-Lead Plaintiffs, and the steps that each of them are prepared to take to cooperatively prosecute this litigation on behalf of the Class. *See* Dkt. No. 23-4. Courts routinely appoint more than one investor as Co-Lead Plaintiffs under such circumstances. *See, e.g.*, *Molycorp*, 2012 WL 13013602, at *3 ("find[ing] that [movant group] has successfully demonstrated that it can act in a cohesive manner to protect the interests of the

6

absent class members" based on, *inter alia*, its submission of "a detailed Joint Declaration");

*Subramanian*, 2021 WL 1697147, at *3–4 (appointing movant group "contain[ing] only five class

members" as lead plaintiff under the PSLRA where "[t]he members of [the group] submitted a

Joint Declaration detailing their diversity of background, sophistication, and plans evincing

cooperation"); *Spectranetics*, 2009 WL 1663953, at *6 ("certifications and declarations submitted

by the members . . . demonstrate that the [group] . . . can and will work together to actively oversee

the litigation and to monitor the work of counsel").

*****

Because Lamason and Linhardt have the largest financial interest of any eligible Lead

Plaintiff candidate in the relief sought by the Class and otherwise satisfy the requirements of Rule

23, they are the presumptive "most adequate plaintiffs" of the Class within the meaning of the

PSLRA.  To overcome the strong presumption entitling Lamason and Linhardt to appointment as

Co-Lead Plaintiffs, the PSLRA requires "proof" that the presumptive Lead Plaintiff is inadequate.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).  No such proof exists in this case and any

speculative arguments to the contrary should be flatly rejected.

## II. RAD INVESTMENT AND THE RETIREMENT SYSTEM'S STATUS AS INSTITUTIONAL INVESTORS IS IRRELEVANT TO THEIR MOTIONS

Anticipating a potential argument by RAD Investment and/or the Retirement System—

namely, that the Court should favor their motions over Lamason and Linhardt's simply because

RAD Investment and the Retirement System are institutional investors—Lamason and Linhardt

respectfully submit that the PSLRA's clear language does not mention, much less privilege,

institutional investors.  *See In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 04-cv-0265, 2004 WL

1221353, at *2 (E.D. Pa. June 3, 2004) ("The language of the [PSLRA] does not require that

7

institutional investors take precedence over individual plaintiffs who are otherwise qualified to serve in a lead capacity."). While there is no dispute in the Congressional record that Congress hoped that institutional investors would seek appointment as lead plaintiffs, Congress did not make such an aspiration a basis in the PSLRA's text to deny lead-plaintiff status to individuals who had larger losses than institutional investors. Indeed, "[if] Congress had intended to restrict the application of the rebuttable presumption to institutional investors, it could have stated such in the statute." *Reiger*, 1998 WL 1986953, at *4; *see also Kapur*, 2007 WL 3046664, at *2 ("While the legislative history reflects that Congress intended the Lead Plaintiff provisions to increase the likelihood that institutional investors would participate in litigation as a result of the size of the holdings held by such institutions, it did not choose to make any special preference for institutional investors in the plain language of the PSLRA."). Here, as set forth above, Lamason and Linhardt are the movants who satisfy the PSLRA's clearly stated criteria for appointment as Co-Lead Plaintiffs, and there is no basis in the PSLRA or in federal jurisprudence to deny Lamason and Linhardt's motion and appoint RAD Investment or the Retirement System as Lead Plaintiff instead.

## CONCLUSION

For the foregoing reasons, Lamason and Linhardt respectfully request that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Lamason and Linhardt as Co-Lead Plaintiffs for the Class; and (3) approving Lamason and Linhardt's selection of Pomerantz as Lead Counsel for the Class.

8

Dated:  June 7, 2024     Respectfully submitted,

           POMERANTZ LLP

           */s/ Jeremy A. Lieberman*
           Jeremy A. Lieberman
           J. Alexander Hood II
           600 Third Avenue, 20th Floor
           New York, New York 10016
           Telephone: (212) 661-1100
           Facsimile: (917) 463-1044
           jalieberman@pomlaw.com
           ahood@pomlaw.com

           *Counsel for George Lamason and Jeremy Linhardt
           and Proposed Lead Counsel for the Class*

           BRONSTEIN, GEWIRTZ &
           GROSSMAN, LLC
           Peretz Bronstein
           (*pro hac vice* application forthcoming)
           60 East 42nd Street, Suite 4600
           New York, New York 10165
           Telephone: (212) 697-6484
           Facsimile: (212) 697-7296
           peretz@bgandg.com

           *Additional Counsel for George Lamason and
           Jeremy Linhardt*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of June, 2024, a true and correct copy of the foregoing **MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF GEORGE LAMASON AND JEREMY LINHARDT FOR CONSOLIDATION, APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS** was e-filed with the Clerk of Court via the CM/ECF System which will send notification of such filing to all counsel of record.

10