## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-00739-SBP

KARAM AKHRAS, Individually and on behalf of all others similarly situated,

        Plaintiff,

    v.

SSR MINING INC.,
RODNEY P. ANTAL, and
ALISON WHITE,

        Defendants.

---

Civil Action No. 1:24-cv-00808-SBP

ERIC LINDEMANN, Individually and on behalf of all others similarly situated,

        Plaintiff,

    v.

SSR MINING, INC.,
RODNEY P. ANTAL,
ALISON WHITE,
STEWART J. BECKMAN,
WILLIAM NEVIN, and
F. EDWARD FARID,

        Defendants.

---

## RAD INVESTMENT LLC'S OPPOSITION TO COMPETING MOTIONS FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL

**TABLE OF CONTENTS**

I.    INTRODUCTION ...............................................................................................................1

II.   THE PSLRA MANDATED PROCEDURE FOR APPOINTING A LEAD
      PLAINTIFF.......................................................................................................................2

III.  RAD INVESTMENT IS THE PRESUMPTIVELY MOST ADEQUATE
      PLAINTIFF TO BE APPOINTED AS LEAD PLAINTIFF .............................................3

      A.    RAD Investment Has the Largest Financial Interest ................................................3

      B.    Lamason and Linhardt Do Not Have the Largest Financial Interest; They
            Overstated Lamason's Loss ......................................................................................6

      C.    Lamason and Linhardt Are Also Subject to Disqualifying Unique Defenses
            Because They Are Net Sellers and Net Gainers .......................................................7

IV.   THE PRESUMPTION THAT RAD INVESTMENT IS THE MOST ADEQUATE
      PLAINTIFF HAS NOT BEEN REBUTTED ....................................................................9

V.    CONCLUSION.................................................................................................................9

## TABLE OF AUTHORITIES

<u>CASES</u>

*City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*,
  No. 23-cv-1769, 2023 WL 6458930 (S.D.N.Y. Oct. 4, 2023)...................................................... 8

*Dura Pharm. v. Broudo*,
  544 U.S. 336 (2005)...................................................................................................... 2, 4

*Eichenholtz v. Verifone Holdings, Inc.*,
  No. 07-cv-06140, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008) ......................................... 4, 7

*Foster v. Maxwell Techs., Inc.*,
  No. 13-cv-00580, 2013 WL 5780424 (S.D. Cal. Oct. 24, 2013)................................................ 5

*In re Bausch & Lomb Inc. Sec. Litig.*,
  244 F.R.D. 169 (W.D.N.Y. 2007)..................................................................................... 8

*In re Molson Coors Brewing Co. Sec. Litig.*,
  No. 19-cv-00455, 2019 WL 10301639 (D. Colo. Oct. 3, 2019)................................................ 8

*In re Peregrine Sys., Inc. Sec. Litig.*,
  No. 02-cv-870, 2002 WL 32769239 (S.D. Cal. Oct. 11, 2002)................................................. 7

*Khunt v. Alibaba Grp. Holding Ltd.*,
  102 F. Supp. 3d 523 (S.D.N.Y. 2015)................................................................................ 4

*Landry v. Price Waterhouse Chartered Accountants*,
  123 F.R.D. 474 (S.D.N.Y. 1989) ...................................................................................... 8

*Mariconda v. Farmland Partners Inc.*,
  No. 18-cv-02104, 2018 WL 6307868 (D. Colo. Dec. 3, 2018) ........................................ 4, 7, 9

Plaintiff." *Armbruster v. Gaia, Inc.*,
  No. 22-cv-03267, 2023 WL 2613817 (D. Colo. Mar. 23, 2023)................................................ 3

*Richman v. Goldman Sachs Grp., Inc.*,
  274 F.R.D. 473 (S.D.N.Y. 2011) ...................................................................................... 5

*Rodriguez v. DraftKings Inc.*,
  No. 21-cv-5739, 2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021)................................................ 4

*Sallustro v. CannaVest Corp.*,
   93 F. Supp. 3d 265 (S.D.N.Y. 2015).......................................................................................... 4, 7

*Scheller v. Nutanix, Inc.*,
   No. 19-cv-01651, 2021 WL 2410832 (N.D. Cal. June 10, 2021)................................................ 8

*Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*,
   No. 18-cv-2662, 2019 WL 1171695 (D. Kan. Mar. 13, 2019) ................................................. 4, 7

STATUTES

15 U.S.C. § 78u-4(a)(3)(B)(i) .......................................................................................................... 2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) .............................................................................................. 1, 3, 6

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa) ............................................................................................. 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) .............................................................................................. 3

15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc) .............................................................................................. 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)............................................................................................ 2, 3, 7

RULES

Fed. R. Civ. P. 23............................................................................................................................. 3

Lead plaintiff movant RAD Investment LLC ("RAD Investment") submits this memorandum of law in opposition to the six competing motions for consolidation, appointment as lead plaintiff, and approval of lead counsel filed by other class members pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). *See* Dkt. Nos. 12, 14, 16, 19, 21, 22. All movants agree that the related actions should be consolidated. RAD Investment should be appointed as lead plaintiff because it, alone, has the largest financial interest, and its counsel should be approved because they are well-equipped to represent the class. The competing motions should be denied.

## I.     INTRODUCTION

Of the seven motions seeking appointment as lead plaintiff, RAD Investment's should be granted because it is the presumptively most adequate plaintiff, and no competing movant can rebut the presumption.[1] Under the PSLRA, the "most adequate plaintiff" to be appointed as lead plaintiff is the movant that has the "largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). RAD Investment has the single largest financial interest in the relief sought by the class because its last in, first out ("LIFO") loss, is $1,137,195.50. *See* Dkt. No.

---

[1]     Seven movants filed competing motions: RAD Investment (Dkt. No. 18); George Lamason and Jeremy Linhardt ("Lamason and Linhardt") (Dkt. No. 22); City of Baltimore Employees Retirement System (the "Retirement System") (Dkt. No. 21); Matthew Chipman and Shawn Araghi ("Chipman and Araghi") (Dkt. No. 16); Haldun Cetinbay and Jeffrey C. Williams ("Cetinbay and Williams") (Dkt. No. 12); Linda Thompson and Terry Thompson (the "Thompsons") (Dkt. No. 19); Stephen Gillig ("Gillig") (Dkt. No. 14). However, Cetinbay and Williams, Chipman and Araghi, the Thompsons, and Gillig, subsequently abandoned their motions by withdrawing their motions or filing notices informing the Court that they do not oppose RAD Investment's motion. *See* Dkt. Nos. 24, 25, 30, 31. As such, only RAD Investment, Lamason and Linhardt, and the Retirement System remain.

18-4. Moreover, RAD Investment is adequate and typical and adequate of all class members. *See* Dkt. No. 18 at 7-9.

One competing movant group claims a larger financial loss, but it is overstated. Lamason and Linhardt, who moved as group, improperly include losses from "in-and-out" transactions— shares that were purchased and sold before any corrective disclosure. The Supreme Court held that such losses are not recoverable because they are not proximately caused by the defendants' misstatements. *See generally Dura Pharm. v. Broudo*, 544 U.S. 336, 342-43 (2005) (If "the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss"). Once such losses are properly excluded, Lamason and Linhardt's loss is $1,090,675, which is smaller than RAD Investment's loss of $1,137,195. Even if they had a larger loss (they do not), Lamason and Linhardt are "net sellers" and "net gainers," meaning they benefited from the fraud and are therefore subject to unique defenses that disqualify them from being appointed as lead plaintiff.

The presumption that RAD Investment is the most adequate plaintiff can only be rebutted by a showing that it "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No competing movant has rebutted the presumption. Therefore, RAD Investment should be appointed lead plaintiff, and its selection of GPM as lead counsel should be approved.

## II.    THE PSLRA MANDATED PROCEDURE FOR APPOINTING A LEAD PLAINTIFF

The PSLRA mandates that the Court appoint "the most adequate plaintiff" to be lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). The PSLRA further provides a rebuttable presumption that the "most adequate plaintiff" is the movant that: (1) has either filed the complaint or made a motion

in response to a notice; (2) in the determination of the Court, has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once the Court identifies the presumptively most adequate plaintiff, the presumption may be rebutted only "upon proof . . . that the presumptively most adequate plaintiff' (1) "will not fairly and adequately protect the interests of the class," or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## III. RAD INVESTMENT IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF TO BE APPOINTED AS LEAD PLAINTIFF

RAD Investment satisfies all three requirements to be the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I). RAD Investment filed a timely motion for appointment as lead plaintiff. *See* Dkt. No. 18; 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(aa). RAD Investment satisfies the requirements of Rule 23, as demonstrated in its memorandum of law in support of its lead plaintiff motion. *See* Dkt. No. 18 at 7-9; 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc). And as explained *infra*, RAD Investment has the largest financial interest in the relief sought by the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### A. RAD Investment Has the Largest Financial Interest

"The PSLRA does not specify a method for calculating the largest financial interest when considering appointment of a Lead Plaintiff." *Armbruster v. Gaia, Inc.*, No. 22-cv-03267, 2023 WL 2613817, at \*2 (D. Colo. Mar. 23, 2023). "However, the weight of authority appears to favor the four-factor *Lax* test" which considers: "(1) the total number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Id.*

To calculate the fourth factor, losses suffered, courts "greatly prefer[]" the last in, first out (LIFO) method. *Mariconda v. Farmland Partners Inc.*, No. 18-cv-02104, 2018 WL 6307868, at *3 (D. Colo. Dec. 3, 2018). Moreover, the securities laws do not "provide investors with broad insurance against market losses, but . . . protect them against those economic losses that misrepresentations actually cause." *Dura*, 544 U.S. at 345. As a result, courts appointing a lead plaintiff typically exclude losses on shares that were not held at the time of a corrective disclosure (*i.e.* "in-and-out transactions"). *Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*, No. 18-cv-2662, 2019 WL 1171695, at *4 (D. Kan. Mar. 13, 2019) ("LIFO excludes 'in-and-out' transactions"); *see also Rodriguez v. DraftKings Inc.*, No. 21-cv-5739, 2021 WL 5282006, at *5 (S.D.N.Y. Nov. 12, 2021) ("Critically . . . the LIFO methodology excludes 'in-and-out' trades.").

Losses from in-and-out transactions are not tied to the fraud. *See Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 270 (S.D.N.Y. 2015) ("losses result[ing] from 'in-and-out' transactions, which took place during the class period, but before the misconduct identified was ever revealed to the public are not to be included in loss calculations for purposes of selecting lead plaintiff") (internal quotation marks omitted); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) ("[A]ny losses that [a plaintiff] may have incurred before [a defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in th[e] litigation."). These losses are properly excluded because, when appointing a lead plaintiff, courts focus on whether the claimed loss is recoverable. *Eichenholtz v. Verifone Holdings, Inc.*, No. 07-cv-06140, 2008 WL 3925289, at *4 (N.D. Cal. Aug. 22, 2008) ("the court finds no reason to include losses in its calculations that would later be considered uncompensable" recognizing "it is difficult, if not impossible, to

demonstrate loss causation for shares bought and sold before the disclosure of the misstatements or omissions"); *Foster v. Maxwell Techs., Inc.*, No. 13-cv-00580, 2013 WL 5780424, at *3 (S.D. Cal. Oct. 24, 2013) ("This Court focuses on the amount of potential recovery in the relief sought by the class.").

Here, RAD Investment has a larger financial interest than Lamason and Linhardt and the Retirement System as measured by almost every *Lax* factor:[2]

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Expenditure | LIFO Loss |
|---|---|---|---|---|
| RAD Investment | **1,134,028** | **941,230** | **$5,678,446** | **$1,137,195** |
| *Lamason* | *1,287,600* | *(100,000)* | *($771,582)* | *$920,404* |
| *Linhardt* | *23,135* | *0* | *$170,271* | *$170,271* |
| Lamason/Linhardt Total | **1,310,735** | **(100,000)** | **($601,311)** | **$1,090,675** |
| Retirement System | **74,858** | **61,516** | **$618,034** | **$251,045** |
| *Williams* | *34,086* | *11,530* | *$156,629* | *$133,082* |
| *Cetinbay* | *4,058* | *4,058* | *$56,583* | *$37,001* |
| Williams/Cetinbay Total | **38,144** | **15,588** | **$213,211** | **$170,083** |
| *Thompsons' Joint Account* | *14,280* | *14,280* | *$188,444* | *$119,538* |
| *Terry Thompson* | *1,988* | *1,988* | *$26,749* | *$17,156* |
| *Linda Thompson* | *3,000* | *3,000* | *$40,290* | *$25,814* |
| Thompsons' Total | **19,268** | **19,268** | **$255,483** | **$162,508** |
| Gillig | **131,880** | **60,009** | **$418,395** | **$133,906** |
| *Chipman* | *91,000* | *11,000* | *$270,908* | *$116,064* |
| *Araghi* | *2,197,500* | *0* | *$50,337* | *$0* |
| Chipman/Araghi Total | **2,288,500** | **11,000** | **$321,245** | **$116,064** |

Lamason and Linhardt together purchased more shares, but gross shares purchased is the "least important" factor. *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 476 (S.D.N.Y. 2011).[3]

---

[2]    The values in the chart are derived from the movants' loss charts submitted with their lead plaintiff motions.

[3]    Unlike the other factors, gross shares purchased does not account for price and it includes securities not held at the time of a corrective disclosure. As such, gross shares purchased typically corresponds the least to the movants' potential recovery.

5

As such, RAD Investment has the largest financial interest in the relief sought by the class as measured by the other three determinative factors.

Notably, Lamason sold 100,000 more shares than he purchased during the class period, and thereby received more in sales proceeds than he expended purchasing shares. In total, Lamason and Linhardt netted $601,311 in proceeds during the class period. No other movant sold more shares than they purchased or received more than they spent during the class period. As such, Lamason and Linhardt have the smallest financial interest as measured by two of the *Lax* factors (net shares and net expenditure).[4]

Since RAD Investment has the largest financial interest, satisfies the requirements of Rule 23, and filed a timely motion, RAD Investment is the presumptively most adequate plaintiff to be appointed as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### B.    Lamason and Linhardt Do Not Have the Largest Financial Interest; They Overstated Lamason's Loss

While Lamason and Linhardt claim to have a combined loss of $1,468,963 in their initial motion papers (*see* Dkt. No. 23-1)—$1,298,692 for Lamason and $170,271 for Linhardt—Lamason's loss is overstated. Lamason included losses from in-and-out transactions in his loss calculation. Specifically, Lamason sold the entirety of his holdings 11 separate times during the class period.[5] *See* Dkt. No. 23-1. However, the first corrective disclosure alleged in this action did not occur until February 13, 2024. *See* Dkt. No. 1, ¶ 59. As such, the first 10 of Lamason's 11 sell

---

[4]    The fact that Lamason and Linhardt are "net sellers" and "net gainers" during the class period also renders them subject to unique defenses, discussed further *infra*. As such, even if they had the "largest financial interest" they would be disqualified as inadequate to represent the class.
[5]    He zeroed out his position on March 7, 2022, July 29, 2022, November 22, 2022, March 16, 2023, May 9, 2023, June 21, 2023, August 3, 2023, October 5, 2023, November 3, 2023, November 28, 2023, and February 21, 2024.

offs occurred before the first corrective disclosure and constitute "in-and-out transactions." Any losses associated with those sales are not tied to the fraud in this case, are not recoverable, and should not be included in Lamason's loss calculation. *See CURO Grp.*, 2019 WL 1171695, at *4; *CannaVest*, 93 F. Supp. 3d at 270; *Verifone*, 2008 WL 3925289, at *4. When losses from in-and-out transactions are excluded, Lamason's loss is only $920,404, which is much smaller than RAD Investment's loss of $1,137,195, as illustrated in the above chart. This underscores that RAD Investment has the largest financial interest.

### C. Lamason and Linhardt Are Also Subject to Disqualifying Unique Defenses Because They Are Net Sellers and Net Gainers

Even if the Court were to credit Lamason and Linhardt's inflated loss figure, and find that they are the presumptively most adequate plaintiff to be appointed as lead plaintiff, they should be disqualified because they are net sellers and net gainers. The lead plaintiff presumption may be rebutted by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

To disqualify Lamason and Linhardt, the unique defenses need not be ironclad; the possibility that a unique defense might become the focus of the litigation and distract from the more central class-wide issues is sufficient. *See Mariconda v. Farmland Partners Inc.*, No. 18-cv-02104, 2018 WL 6307868, at *6 (D. Colo. Dec. 3, 2018) ("Unique defenses are those defenses specific to a plaintiff, or small subset thereof, such that it would impede the party's ability to serve as an adequate class representative by 'threaten[ing] to become the focus of the litigation.'"); *see also In re Peregrine Sys., Inc. Sec. Litig.*, No. 02-cv-870, 2002 WL 32769239, at *7 (S.D. Cal. Oct. 11, 2002) ("[W]hether these defenses will be successful is of no matter. The fact that plaintiffs

7

will be subject to such defenses renders their claims atypical of other class members.") (quoting *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989)).

Here, Lamason and Linhardt are subject to the unique defense that they are "net sellers" and "net gainers." They are net sellers because they collectively sold more shares than they purchased during the class period. They are net gainers because they received more in proceeds than they expended during the class period. Courts nationwide have held that movants who are both net sellers and net gainers cannot serve as lead plaintiff. *See In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007) ("Courts have consistently rejected applications for lead plaintiff status made by 'net sellers' and 'net gainers,' recognizing that they may in fact have profited, rather than suffered, as a result of the inflated stock prices.") (collecting cases nationwide); *see also City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, No. 23-cv-1769, 2023 WL 6458930, at *6 (S.D.N.Y. Oct. 4, 2023) ("Clal's status as a 'net seller' and 'net gainer' during the Class Period subjects it to unique defenses that prevent Clal from adequately representing the class."); *Scheller v. Nutanix, Inc.*, No. 19-cv-01651, 2021 WL 2410832, at *7 (N.D. Cal. June 10, 2021) (similar).[6]

Courts disqualify net sellers and net gainers because they "purchased the stock at issue prior to the class period" at "fair market value" but then "sold it during the class period" at "fraudulently inflated prices." *Nutanix*, 2021 WL 2410832, at *7. This makes it likely that the movant "benefited from the fraud." *Id.* This reasoning applies with equal force here: Lamason's first transaction during the class period was a sale of 100,000 shares on March 7, 2022 (at fraud-

---

[6]    *Cf. In re Molson Coors Brewing Co. Sec. Litig.*, No. 19-cv-00455, 2019 WL 10301639, at *2 (D. Colo. Oct. 3, 2019) (appointing a net seller that was ***not*** a net gainer).

8

inflated prices) for total proceeds of $2,070,273. *See* Dkt. No. 23-1 at 1-7. These shares were purchased prior to the class period at prices not alleged to be inflated in the operative complaints. As such, Lamason and Linhardt are subject to disqualifying unique defenses.

Accordingly, even if the Court were to credit Lamason and Linhardt's inflated loss figure, any presumption that they are the "most adequate plaintiff" is rebutted. RAD Investment is the *bona fide* movant with the largest financial interest. Since RAD Investment also filed a timely motion and is adequate and typical of the class, RAD Investment is the presumptively most adequate plaintiff to be appointed as lead plaintiff.

## IV.    THE PRESUMPTION THAT RAD INVESTMENT IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED

No proof has been presented that RAD Investment would be inadequate or subject to unique defenses and RAD Investment is not aware of any possible basis for such a contention. Accordingly, RAD Investment should be appointed as lead plaintiff, and no other movant is entitled to consideration. *Mariconda*, 2018 WL 6307868, at *7 (appointing a lead plaintiff when it "established that it is the presumptive Lead Plaintiff" and the competing movant "has not adequately rebutted that presumption").

## V.    CONCLUSION

For the foregoing reasons, RAD Investment respectfully requests that the Court enter an Order: (1) appointing RAD Investment as Lead Plaintiff; (2) approving Glancy Prongay & Murray LLP as Lead Counsel for the class; and (3) denying the competing motions.

9

DATED: June 7, 2024

**GLANCY PRONGAY & MURRAY LLP**

*s/ Robert V. Prongay*
Robert V. Prongay
Charles H. Linehan (*pro hac vice* forthcoming)
Pavithra Rajesh (*pro hac vice* forthcoming)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
rprongay@glancylaw.com
clinehan@glancylaw.com
prajesh@glancylaw.com

Daniella Quitt (*pro hac vice* forthcoming)
745 Fifth Avenue, 5th Floor
New York, New York 10151
Telephone: (212) 935-7400
dquitt@glancylaw.com

*Counsel for RAD Investment LLC and Proposed
Lead Counsel for the Class*

10

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document and accompanying Proposed Order were filed with this Court on June 7, 2024 through the CM/ECF system and will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

*s/ Robert V. Prongay*
Robert V. Prongay
