## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:24-cv-00739-DDD-SBP

KARAM AKHRAS, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

v.

SSR MINING INC.,
RODNEY P. ANTAL,
and ALISON WHITE,

      Defendants.

---

Civil Action No.: 1:24-cv-00808-CNS-SBP

ERIC LINDEMANN, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

v.

SSR MINING, INC.,
RODNEY P. ANTAL,
ALISON WHITE,
STEWART J. BECKMAN,
WILLIAM NEVIN, and
F. EDWARD FARID,

      Defendants.

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THE MOTION OF THE EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF BALTIMORE FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF SELECTION OF COUNSEL, AND IN OPPOSITION TO THE COMPETING MOTIONS**

## TABLE OF CONTENTS

I.    Introduction.................................................................................................................... 1

II.    Argument ....................................................................................................................... 3

       A.    L&L Cannot Satisfy Rule 23's Prerequisites for Appointment...............................3

             1.    L&L Are Disqualified for Profiting from the Fraud...................................3

             2.    Lamason's Extraordinarily Unusual Trading Activity Renders
                L&L Atypical and Inadequate .....................................................................6

       B.    The Timing of RAD's Purchases Subjects It to Unique Defenses .........................8

       C.    Baltimore Employees Is the Only Qualified Movant ...........................................11

III.    Conclusion .................................................................................................................. 13

## TABLE OF AUTHOTITIES

**Page(s)**

**Cases**

*Alghazwi v. Beauty Health Co.*,
2024 WL 1984879 (C.D. Cal. May 2, 2024) ................................................................................ 7

*Armbruster v. Gaia, Inc.*,
2023 WL 2613817 (D. Colo. Mar. 23, 2023) ...................................................................... 4, 11

*Barnwell v. Advanced Emissions Sols., Inc.*,
2015 WL 13612170 (D. Colo. Feb. 19, 2015) ............................................................................ 13

*Bhangal v. Hawaiian Elec. Indus, Inc.*,
2023 WL 8482871 (N.D. Cal. Dec. 7, 2023) ............................................................................ 10

*Born v. Quad/Graphics, Inc.*,
2020 WL 994427 (S.D.N.Y. Mar. 2, 2020) ........................................................................ 5, 12

*City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*,
2023 WL 6458930 (S.D.N.Y. Oct. 4, 2023) ........................................................................ 1, 5

*Deering v. Galena Biopharma, Inc.*,
2014 WL 4954398 (D. Or. Oct. 3, 2014) .................................................................................... 5

*Doshi v. Gen. Cable*,
2017 WL 5178673 (E.D. Ky. Nov. 7, 2017) ........................................................................ 5, 6

*Ellis v. Spectranetics Corp.*,
2015 WL 9259928 (D. Colo. Dec. 18, 2015) ............................................................................ 12

*Erickson v. Snap, Inc.*,
2017 WL 11592635 (C.D. Cal Sept. 18, 2017) .......................................................................... 9

*Faris v. Longtop Fin. Techs. Ltd.*,
2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ................................................................ 2, 10, 11

*Galmi v. Teva Pharms. Indus. Ltd.*,
302 F. Supp. 3d 485 (D. Conn. 2017) ........................................................................................ 8

*GAMCO Invs., Inc. v. Vivendi, S.A.*,
917 F. Supp. 2d 246 (S.D.N.Y. 2013) ................................................................................. 9, 11

*George v. China Auto. Sys., Inc.*,
2013 WL 3357170 (S.D.N.Y. July 3, 2013) ............................................................................ 10

*Gordon v. Sonar Capital Mgmt. LLC*,
  92 F. Supp. 3d 193 (S.D.N.Y. 2015) ............................................................................ 6

*Gurevitch v. KeyCorp*,
  2023 WL 8890938 (N.D. Ohio Dec. 26, 2023) ................................................... 2, 7, 12

*In re Bausch & Lomb Inc. Sec. Litig.*,
  244 F.R.D. 169 (W.D.N.Y. 2007) ............................................................................ 5, 6

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir. 2002) ..................................................................................... 3

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ................................................................................... 3, 11

*In re Molson Coors Brewing Co. Sec. Litig.*,
  2019 WL 10301639 (D. Colo. Oct. 3, 2019) ............................................................. 5

*In re Netflix, Inc., Sec. Litig.*,
  2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) ........................................................... 3

*In re Paysafe Ltd. Sec. Litig.*,
  2024 WL 1636415 (S.D.N.Y. Apr. 16, 2024) ........................................................... 3

*In re Petrobras Sec. Litig.*,
  104 F. Supp. 3d 618 (S.D.N.Y. 2015) ...................................................................... 10

*In re Pfizer Inc. Sec. Litig.*,
  282 F.R.D. 38 (S.D.N.Y. 2012) ............................................................................... 11

*In re Valence Tech. Sec. Litig.*,
  1996 WL 119468 (N.D. Cal. Mar. 14, 1996) ........................................................... 10

*Jaffe Pension Plan v. Household Int'l, Inc.*,
  756 F. Supp. 2d 928 (N.D. Ill. 2010) ........................................................................ 6

*Lemm v. New York Cmty. Bancorp, Inc.*,
  2024 WL 2022213 (E.D.N.Y. May 7, 2024) ........................................................ 10, 11

*Lundy v. Ideanomics, Inc.*,
  2020 WL 7389027 (S.D.N.Y. Dec. 16, 2020) .......................................................... 10

*Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*,
  2019 WL 3714798 (D. Colo. Aug. 7, 2019) ............................................................. 12

*Plymouth Cnty. Ret. Sys. v. Apache Corp.*,
  566 F. Supp. 3d 712 (S.D. Tex. 2021) ....................................................................... 5

*Rodriguez v. DraftKings Inc.*,
  2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) ........................................................... 7

*Ross v. Abercrombie & Fitch Co.*,
  2007 WL 895073 (S.D. Ohio Mar. 22, 2007) ............................................................ 6

*Scheller v. Nutanix, Inc.*,
  2021 WL 2410832 (N.D. Cal. June 10, 2021) ........................................................... 6

*Scuderi v. Mammoth Energy Servs., Inc.*,
  2019 WL 4397340 (W.D. Okla. Sept. 13, 2019) ....................................................... 3

*United Food & Com. Workers Int'l Union Loc. 464A v. Pilgrim's Pride Corp.*,
  2021 WL 1022704 (D. Colo. Mar. 17, 2021) .......................................................... 12

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii) ............................................................................... 1, 6, 9

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 .............................. 12

Baltimore Employees respectfully submits this brief in further support of its motion for appointment as Lead Plaintiff and in opposition to the competing motions.[1]

## I.    INTRODUCTION

The PSLRA provides that the "court shall adopt a presumption that the most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" *and* "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Of the three remaining movants,[2] only Baltimore Employees satisfies both requirements. While L&L and RAD respectively claim a larger financial interest than Baltimore Employees, their motions suffer from fatal defects that prevent findings of typicality and adequacy.

***First***, L&L are disqualified from serving as Lead Plaintiff because Lamason—who claims 88% of L&L's losses—is both a "net seller" and "net gainer" who profited from the fraud. Specifically, Lamason sold 100,000 more shares than he purchased and received more than $770,000 in ***profits*** from these transactions at fraud-inflated prices, while L&L collectively received $601,000 in profits. Courts consistently hold that movants like L&L who are both net sellers and net gainers—even if claiming a sizable loss—are "effectively disqualifie[d]" from serving as lead plaintiff. *City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, 2023 WL 6458930, at *6 (S.D.N.Y. Oct. 4, 2023). In addition, L&L cannot be appointed because Lamason will face unique reliance defenses due to his unusual transactions, *e.g.*, as many as 241 purchases on one day and complete liquidations in as short a span as three days.

---

[1] All defined terms take their meanings from Baltimore Employees' opening brief, ECF No. 21. Internal quotations and citations are omitted, and all emphasis is added unless otherwise noted.

[2] The competing movants are RAD Investment LLC ("RAD") (ECF No. 18) and George Lamason and Jeremy Linhardt ("L&L") (ECF No. 22). All other movants filed notices of withdrawal or non-opposition. *See* ECF Nos. 24, 25, 30, 31. As an update pursuant to L.R. 7.1(a), *see* ECF No. 21 at 5-6, the undersigned counsel conferred with counsel for RAD and L&L, who support consolidation but oppose Baltimore Employees' appointment.

1

ECF No. 23-3 at 4-8, 16, 48; *see Gurevitch v. KeyCorp*, 2023 WL 8890938, at *7 (N.D. Ohio

Dec. 26, 2023) (rejecting movant that frequently liquidated investments, citing "foreseeable

***possibility*** of [unique defenses]" when competing movant "presents none of these distractions").

***Second***, the movant claiming the second-largest loss, RAD, must also be disqualified for

purchasing the overwhelming majority of its shares after the material disclosure of fraud: the

February 13, 2024 shutdown of the Copler mine that called into question Company safety

practices (the "Copler Disaster").  Following this disclosure, SSR Mining stock lost more than

half of its value and experienced the largest alleged share price decline.  RAD then ***quadrupled***

its position by purchasing nearly all of its shares, more than ***82%***, following this key disclosure.

On February 13, 2024 alone, RAD purchased ***69%*** of its shares.  Courts routinely reject movants

that purchase the bulk of their shares following a pivotal partial disclosure, finding their claims

are atypical and unnecessarily expose the class to challenges at later stages.  *See Faris v. Longtop*

*Fin. Techs. Ltd.*, 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) (disqualifying movant group

whose members purchased ***87%*** of their shares after first disclosure, which "undermine[s] the[ir]

ability ... to assert the fraud-on-the-market presumption of reliance").

Given these deficiencies, Baltimore Employees claims the largest financial interest:

| Movant | Total Shares Purchased | Net Shares Purchased/ (Sold) | Net Funds Received/ (Expended) | Claimed Loss |
|---|---|---|---|---|
| ~~L&L~~ | ~~1,310,735~~ | ~~(100,000)~~ | ~~$601,311~~ | ~~($1,468,963)~~ |
| ~~*Lamason*~~ | ~~1,287,600~~ | ~~(100,000)~~ | ~~$771,582~~ | ~~($1,298,692)~~ |
| ~~*Linhardt*~~ | ~~23,135~~ | ~~0~~ | ~~($170,271)~~ | ~~($170,271)~~ |
| ~~RAD~~ | ~~1,134,028~~ | ~~922,030~~ | ~~($5,260,093)~~ | ~~($1,137,196)~~ |
| **Baltimore Employees** | **74,858** | **61,516** | **($618,034)** | **($291,321)** |

Furthermore, Baltimore Employees has established that it is the prototypical lead plaintiff

envisioned by Congress when enacting the PSLRA and meets all criteria for appointment, and its

candidacy for appointment is beyond reproach. Accordingly, the Court should grant Baltimore Employees' motion and deny the competing motions.

## II.    ARGUMENT

The "threshold determination" under the PSLRA is to identify whether the movant with the largest financial interest *also* satisfies Rule 23's typicality and adequacy requirements. *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001). "'The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order'" when the presumptive lead plaintiff is found inadequate or atypical. *Scuderi v. Mammoth Energy Servs., Inc.*, 2019 WL 4397340, at *2 (W.D. Okla. Sept. 13, 2019) (quoting *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002). If the movant "with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, ... considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies [Rule 23's] requirements." *Cavanaugh*, 306 F.3d at 730.

In assessing typicality and adequacy, court do not look "at this early stage" at whether defendants will be able to "prove a defense"; rather, the inquiry is whether there is "a degree of likelihood that a unique defense might play a significant role" in the case, and whether the court can "protect the absent class members from the expense of litigating" the issue. *In re Netflix, Inc., Sec. Litig.*, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 27, 2012). Thus, where "there is at least a potential that a plaintiff will be subject to unique defenses, disqualification is appropriate." *In re Paysafe Ltd. Sec. Litig.*, 2024 WL 1636415, at *6 (S.D.N.Y. Apr. 16, 2024).

### A.    L&L Cannot Satisfy Rule 23's Prerequisites for Appointment

#### 1.    L&L Are Disqualified for Profiting from the Fraud

In assessing financial interest, courts in this District and throughout the country consider four financial interest metrics, including net shares purchased and net expenditures. *See*

3

*Armbruster v. Gaia, Inc.*, 2023 WL 2613817, at *2 (D. Colo. Mar. 23, 2023) (describing financial interest factors).  Tellingly, while L&L acknowledge that net shares purchased and net expenditures are factors courts use to assess financial interest (ECF No. 22 at 13), they conspicuously omit these calculations from their brief.  *Id.* at 14.  This was no accident: doing so conceals the fact that they ***profited*** from transactions in SSR Mining stock during the Class Period.  In truth, L&L's motion makes clear that together they are the prototypical "net seller" and "net gainer" routinely disqualified by courts across the U.S. [3]

Lamason's first transactions in SSR Mining during the Class Period were the March 7, 2022 sales of 100,000 shares purchased at fair market value prior to Defendants' Class-Period misrepresentations.  ECF Nos. 23-1 at 2-7 and 23-3 at 17-20.  Lamason sold these shares in the range of $20.75 per share—inflated prices near the $24.58 Class-Period high—for proceeds of $2,070,273.  *See* Ex. 1.  Lamason then continued to sell 89% of his total Class-Period purchases ***before*** the first alleged disclosure on February 13, 2024.  ECF Nos. 23-1 at 7-49 and 23-3 at 20-48.  As shown in Exhibit 1, L&L sold a combined 100,000 more shares than they purchased, and received $601,311 more in proceeds from sales of SSR Mining stock than they expended:

**Summary of L&L's Class-Period Transactions**

| Total Shares Purchased | Total Shares Sold | **Net Shares Sold ("Net Seller")** |
|---|---|---|
| 1,310,735 | 1,410,735 | **100,000** |

| Cost of Shares Purchased | Proceeds from Shares Sold | **Net Gains from Shares Sold ("Net Gainer")** |
|---|---|---|
| $18,721,924 | $19,323,235 | **$601,311** |

---

[3] Linhardt's transactions do not spare L&L from being a net seller and net gainer together.

Analyzing movants' net sales and net gains enables courts to assess whether a movant is exposed to arguments that they "benefitted from the artificially inflated prices complained of in [the] lawsuit." *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007); *see also Doshi v. Gen. Cable*, 2017 WL 5178673, at *3 (E.D. Ky. Nov. 7, 2017) ("The purpose of isolating the calculation of net sales and net gains ... is to determine whether a party potentially benefitted from the fraud" by selling shares acquired "at fair market value" prior to the class period at "fraudulently inflated prices"). Here, because L&L benefitted from Defendants' fraud by selling 100,000 more shares at artificially inflated prices than L&L bought, translating to *$601,000* in net profits, they are a "net seller" *and* a "net gainer."[4]

Regardless of whether L&L can establish that they were damaged, consistent with the PSLRA's requirement to appoint a lead plaintiff who does not expose the class to litigation sideshows, courts "regularly" reject net sellers and net gainers as they "may be subject to unique defenses [from] ... selling pre-Class Period shares at allegedly inflated prices during the Class Period." *Doshi*, 2017 WL 5178673, at *3; *see also Born v. Quad/Graphics, Inc.*, 2020 WL 994427, at *2 (S.D.N.Y. Mar. 2, 2020) (rejecting net gainer due to "exceeding[] concern[s]"); *Cognyte*, 2023 WL 6458930, at *6 (finding movant's "status as a net seller and net gainer ... subject[s] it to unique defenses" that "effectively disqualifies" movant); *Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 718-19 (S.D. Tex. 2021) (same); *Deering v. Galena Biopharma, Inc.*, 2014 WL 4954398, at *11 (D. Or. Oct. 3, 2014) ("[C]ourts ... consistently have rejected applications ... made by net sellers and net gainers, recognizing the difficulty of proving damages at trial."). This is true irrespective of the price Lamason paid to purchase stock at fair

---

[4] As a net gainer, L&L cannot rely on precedent appointing net sellers who were also *net losers*. *See*, *e.g.*, *In re Molson Coors Brewing Co. Sec. Litig.*, 2019 WL 10301639, at *3 (D. Colo. Oct. 3, 2019) (appointing net seller *and net loser* as distinct from a net gainer).

market value before the Class Period and whether a loss was incurred when those shares were sold. The fact remains that Lamason's "loss was less than it would have been had the [stock] been trading at fair market value" during the Class Period. *Bausch & Lomb*, 244 F.R.D. at 173.

In sum, L&L's claimed losses are irrelevant because their status as a net seller and net gainer goes directly to their ability to satisfy Rule 23. *See Scheller v. Nutanix, Inc.*, 2021 WL 2410832, at *6-7 (N.D. Cal. June 10, 2021) (holding that "a net seller arguably profits more from the fraud than suffers from it" and is "subject to unique defenses" despite claimed loss); *Doshi*, 2017 WL 5178673, at *3-4 (analyzing net seller/net gainer issues after assessing financial interest as part of analysis of movant's ability to satisfy Rule 23).[5]  Accordingly, L&L are "exactly the type of net gainer [courts find] to be an inadequate lead plaintiff." *Id.*, at *3.[6]

### 2. Lamason's Extraordinarily Unusual Trading Activity Renders L&L Atypical and Inadequate

L&L's motion also fails for the independent reason that Lamason engaged in extremely unusual and atypical trading strategies, which subject L&L to "unique defenses that render [them] incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). As reflected in his unwieldy 45-page list of transactions, Lamason engaged in no fewer than

---

[5] For example, at class certification, Defendants would doubtlessly argue that L&L cannot claim damages when their fraud-related profits and losses are "netted" against each other. *See, e.g.*, *Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 935 (N.D. Ill. 2010) ("plaintiffs' losses [must] be netted against their profits attributable to the same fraud").  L&L's potential need to address the netting issue, which is critical to them—yet irrelevant to other movants—is disqualifying.  *See Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 205 (S.D.N.Y. 2015) (rejecting net gainer as a class representative because the netting issue would be paramount for him, unlike other class members).

[6] The Court should reject any proposal by Lindhart to be considered as a stand-alone movant, as L&L filed a joint motion and cannot now be disbanded.  *See Ross v. Abercrombie & Fitch Co.*, 2007 WL 895073, at *4 (S.D. Ohio Mar. 22, 2007) ("There is no requirement in the P[S]L[R]A that the Court realign a proposed group to cure a deficiency in adequacy of representation.").  In any event, Linhardt alone would not have the largest financial interest. *See supra* at 2.

6

2,227 transactions in SSR Mining stock during the Class Period, with as many as 294 trades in a single day.  *See* ECF No. 23-3 at 20-26.  On ***11 different occasions***, Lamason completely exited his position, sometimes just days after making significant purchases.  *See* Ex. 2 (reflecting Lamason's liquidations).  For example, in the period between November 1 and 3, 2023, Lamason started with zero shares and then bought and sold 125,000 shares, thereby ending the three-day period as he started—bereft of ***any*** holdings.  Such "in-and-out" trading patterns and the "idiosyncrasies of [Lamason's]" trading will become a "distraction at trial" and therefore his "trading history inhibit[s] his ability to serve as an untarnished proxy for the class." *Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at *10 (S.D.N.Y. Nov. 12, 2021).

Courts regularly reject lead plaintiff applicants with similar unorthodox trading patterns. For example, in *Alghazwi v. Beauty Health Co.*, the movant's "habit of ***fully closing*** out his position in Company stock" rendered them atypical as it "raise[d] the risk that he may be subject to unique defenses with regards to his damages."  2024 WL 1984879, at *4 (C.D. Cal. May 2, 2024) (rejecting movant because trading issues "would likely play a large role in this litigation and involve concomitant expense"); *see also KeyCorp*, 2023 WL 8890938, at *6, 7 (rejecting movant who "purchased thousands of shares and entirely exited his position ***10 separate times***" even though "he held at the time of each corrective disclosure" given "the possibility of unique defenses as to, at least portions of," movant's trading history, "as well as the potential distractions that litigation over his trading history (even if not successful) might cause"); *DraftKings*, 2021 WL 5282006, at *10 (finding "potential to distract" given inevitable questions about movant's trading "militates against his appointment").

**B.    The Timing of RAD's Purchases Subjects It to Unique Defenses**

RAD, the movant with the second-largest claimed financial interest, should also be disqualified because it purchased nearly all of its SSR Mining stock *after* disclosure of the Copler Disaster on February 13, 2024, by far the most important disclosure,[7] when:

- SSR Mining announced suspension of operations at Copler, its second-largest producing gold mine, due to "a large slip on the heap leach pad." *Akhras* ¶ 59; *see also Lindemann* ¶¶ 5, 45.

- Reuters reported that the halt in gold production was prompted by a landslide that "left at least nine miners missing," and that the Turkish government had "launched an investigation into the incident." *Akhras* ¶¶ 61-62.

- PBS Newshour reported that "engineers warned that safety risks were frequently ignored and inspections not adequately carried out" at Turkish mines, and quoted a Turkish mining union statement that the Copler Disaster "is a disaster that (was) coming" and that it had filed lawsuits against its operation. *Akhras* ¶ 63.

In response, SSR Mining's stock price plummeted 53%, the largest alleged share price decline. *Akhras* ¶¶ 54, 71, 75; *see also Lindemann* ¶¶ 8, 54. Nevertheless, as reflected in RAD's Certification (*see* ECF No. 18-3) and the chart below, RAD purchased 782,000 additional shares of SSR Mining stock on the same day as the Copler Disaster disclosure, or *69%* of its Class-Period purchases.[8] In total, RAD purchased 932,000 additional shares from February 13, 2024 through February 22, 2024 (*see id.*), or more than *82%* of its Class-Period purchases.

---

[7] *Compare* Compl., *Akhras* Action, ¶¶ 59-64; and Compl., *Lindemann* Action, ¶¶ 5, 8, 45-47, 54.

[8] The fact that RAD both purchased 782,000 shares and sold 90,000 shares on the date of the Copler Disaster disclosure, ECF No. 18-3 at 5-6—seemingly untethered to the alleged misstatements and key disclosure—further underscores its exposure to unique defenses. *See Galmi v. Teva Pharms. Indus. Ltd.*, 302 F. Supp. 3d 485, 504 n.10 (D. Conn. 2017) ("Evidence that a particular plaintiff may be subject to the unique defense that it did not actually rely on the company's alleged misstatements is sufficient for a court to decline to appoint that plaintiff.").

8



As reflected above, RAD more than **quadrupled** its position in SSR Mining stock

following the key disclosure in this case. RAD is therefore subject to unique defenses that

destroy its typicality and adequacy. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also GAMCO Invs.,*

*Inc. v. Vivendi, S.A.*, 917 F. Supp. 2d 246, 261 (S.D.N.Y. 2013) ("[P]ost-disclosure purchases

*can* defeat the typicality requirement ... when plaintiffs made a disproportionately large

percentage of their purchases post-disclosure") (emphasis in original). Specifically, the

magnitude of RAD's post-disclosure purchases suggests that RAD invested in SSR Mining stock

"notwithstanding notice of defendants' misstatements and omissions[,]" which "undermine[s] the

ability of [RAD] to assert the fraud-on-the-market presumption of reliance, thereby rendering [it]

inadequate." *Erickson v. Snap, Inc.*, 2017 WL 11592635, at \*3 (C.D. Cal Sept. 18, 2017).

Courts repeatedly find that disproportionate post-disclosure purchases are disqualifying.

*See id.*, at \*4 (rejecting movant who bought more than **60%** of his shares after the revelation of

alleged fraud, given his exposure to unique defenses regarding whether he "actually relied on

any alleged misrepresentations"); *Longtop*, 2011 WL 4597553, at *8 (disqualifying movant group that purchased *87%* of its shares after the first disclosure); *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015) (rejecting movant group whose member purchased all shares after first partial disclosure); *Lundy v. Ideanomics, Inc.*, 2020 WL 7389027, at *3 (S.D.N.Y. Dec. 16, 2020) (disqualifying movant that purchased all shares after the partial disclosures); *Bhangal v. Hawaiian Elec. Indus, Inc.*, 2023 WL 8482871, at *3 (N.D. Cal. Dec. 7, 2023) (same).

RAD's high proportion of purchases after disclosure of the Copler Disaster is particularly problematic given this disclosure is "highly germane to the allegations of fraud in the present case." *Lemm v. New York Cmty. Bancorp, Inc.*, 2024 WL 2022213, at *6 (E.D.N.Y. May 7, 2024); *see also Akhras* ¶¶ 65-70, 72-74; *Lindemann* ¶¶ 5-7, 48-52 (describing further disclosures based on the Copler Disaster and safety issues initially disclosed on February 13, 2024). If it were appointed, RAD's post-disclosure purchases would become a focus of Defendants' attacks. For example, Defendants would question whether RAD relied upon alleged safety misrepresentations when it purchased 69% of its shares on the same day as the first disclosure.

Such attacks would be unique to RAD and would threaten the viability of the entire action, to the detriment of all Class members. These risks are not speculative, as courts have rejected proposed class representatives, denied class certification altogether, or allowed defendants to raise post-trial reliance defenses on this basis. *See*, *e.g.*, *George v. China Auto. Sys., Inc.*, 2013 WL 3357170, at *6 (S.D.N.Y. July 3, 2013) (denying class certification where proposed class representatives bought shares post-disclosure, which "will require that each of the named plaintiffs expend considerable time on unique defenses—precisely the situation the case law does not condone"); *In re Valence Tech. Sec. Litig.*, 1996 WL 119468, *5 (N.D. Cal. Mar.

14, 1996) (denying class certification where proposed class representative atypically increased holdings after a partial disclosure); *Vivendi*, 917 F. Supp. 2d at 261 (denying plaintiff's summary judgment motion and finding its post-disclosure purchases "are probative of whether [plaintiff's] investment strategy took market price into account").

Under these circumstances, appointing RAD as Lead Plaintiff would place the interests of the entire Class at unreasonable risk. *See Lemm*, 2024 WL 2022213, at *7 (finding the mere "***risk*** of unique defenses[,]" given movant's post-disclosure purchases, sufficient to rebut the presumption of movant's adequacy). This risk is unnecessary, given Baltimore Employees has a substantial financial interest in the outcome of the litigation and does not suffer from the same disqualifying issues, having purchased the majority of its shares before the Copler Disaster.[9] *See Longtop*, 2011 WL 4597553, at *8 ("this Court sees no reason to subject the class to this potential defense where there is another movant" that does not suffer from the same potential unique defenses arising from post-disclosure trading). Thus, RAD's motion should be denied.

### C.    Baltimore Employees Is the Only Qualified Movant

Because L&L and RAD cannot satisfy Rule 23's requirements, the Court must follow the PSLRA's sequential process and consider "the movant with the next largest loss" until it finds Baltimore Employees, the only movant who meets all criteria for appointment. *Cendant*, 264 F.3d at 267. Under every metric considered by courts, with a loss of $291,000, Baltimore Employees incurred the largest loss of any qualified movant. *See supra* at 2; *see also*

---

[9] While Baltimore Employees purchased SSR Mining stock after the Copler Disaster, it is indisputable that the ***majority*** of Baltimore Employees' shares were purchased ***prior*** to this disclosure. Accordingly, Baltimore Employees does not suffer from the same defect as RAD. *See Longtop*, 2011 WL 4597553, at *8-9 (appointing movant that purchased majority of shares before first disclosure); *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 46 n.5 (S.D.N.Y. 2012) (appointing class representative that purchased 44% of shares post-disclosure).

11

*Armbruster*, 2023 WL 2613817, at \*2 (considering the four *Lax* factors in determining financial interest); *Ellis v. Spectranetics Corp.*, 2015 WL 9259928, at \*2 (D. Colo. Dec. 18, 2015) ("[C]ourts routinely look to the movant's financial loss as the most significant factor"). Baltimore Employees also meets the typicality and adequacy requirements, *see* ECF No. 21 at 13-15, and is immune from the defects of L&L and RAD. Baltimore Employees is a "net purchaser" (purchasing more shares than it sold) and "net loser" (expending more on purchases than it received in proceeds), did not sell out of its position, and purchased the majority of its shares before the Copler Disaster disclosure. *See Quad/Graphics*, 2020 WL 994427, at \*2 (disqualifying net seller/net gainer movant and appointing institutional investor that "comes with no such risks"); *KeyCorp*, 2023 WL 8890938 at \*7 (appointing movant without in-and-out transactions because it was "subject to ***none*** of these distracting factors").

Baltimore Employees is also uniquely able to effect Congressional preference that institutional investors lead securities class actions. *See* H.R. Conf. Rep. No. 104-369, at \*34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995). Indeed, Courts in this District routinely appoint institutional investors that demonstrate their ability to fairly and adequately represent class interests. *See*, *e.g.*, *United Food & Com. Workers Int'l Union Loc. 464A v. Pilgrim's Pride Corp.*, 2021 WL 1022704, at \*3 (D. Colo. Mar. 17, 2021) (appointing single pension fund); *Oregon Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, 2019 WL 3714798, at \*3 (D. Colo. Aug. 7, 2019) (same). Baltimore Employees manages over $2 billion in assets, is committed to actively prosecuting this action, and has chosen counsel with extensive experience. *See* ECF No. 21 at 15-18. For example, Baltimore Employees served as co-lead plaintiff, with Saxena White serving as lead counsel, in *In re FibroGen Inc. Securities Litigation*, No. 3:21-cv-02623 (N.D. Cal.), achieving a $28.5 million recovery (pending final approval).

Accordingly, and because no "proof" exists to rebut the presumption that Baltimore Employees is the most adequate plaintiff, the Court should deny the competing motions. *See Barnwell v. Advanced Emissions Sols., Inc.*, 2015 WL 13612170, at *3 (D. Colo. Feb. 19, 2015) (appointing presumptive lead plaintiff when no movant or class member "has asserted that [it] will not fairly and adequately protect the interest of the class or is subject to unique defenses").

## III.    CONCLUSION

For the foregoing reasons, Baltimore Employees respectfully requests that the Court: (1) consolidate the Actions; (2) appoint Baltimore Employees as Lead Plaintiff; (3) approve Baltimore Employees' selection of counsel; and (4) deny all competing motions.

Dated:  June 7, 2024                                           Respectfully submitted,


/s/ Rusty E. Glenn
Rusty E. Glenn (39183)
**SHUMAN, GLENN & STECKER**
600 17th Street, Ste. 2800 South
Denver, CO 80202
Telephone: (303) 861-3003
Facsimile: (303) 536-7849
rusty@shumanlawfirm.com

*Proposed Liaison Counsel for the Class*

**SAXENA WHITE P.A.**
Maya Saxena
Lester R. Hooker
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
lhooker@saxenawhite.com

-and-

Marco A. Dueñas
10 Bank Street, Suite 882
White Plains, New York 10606

13

Telephone: (914) 437-8551
Facsimile: (888) 631-3611
mduenas@saxenawhite.com

*Counsel for Proposed Lead Plaintiff the Employees' Retirement System of the City of Baltimore, and Proposed Lead Counsel for the Class*

## CERTIFICATION OF TYPE-VOLUME LIMITATIONS

I hereby certify that the foregoing response complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Rusty E. Glenn*
Rusty E. Glenn (39183)

14

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 7th day of June, 2024, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered participants.

*/s/ Rusty E. Glenn*
Rusty E. Glenn (39183)

15