**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

**Civil Action No**.: 1:24-cv-00739-DDD-SBP

KARAM AKHRAS, Individually and on
behalf of all others similarly situated,

     Plaintiff,

     v.

SSR MINING INC., RODNEY P. ANTAL,
and ALISON WHITE,

     Defendants.

---

**Civil Action No**.: 1:24-cv-00808-CNS-SBP

ERIC LINDEMANN, Individually and on Behalf
of All Others Similarly Situated,

     Plaintiff,

v.

SSR MINING, INC., RODNEY P. ANTAL,
ALISON WHITE, STEWART J. BECKMAN,
WILLIAM NEVIN, and F. EDWARD FARID,

     Defendants.

---

**REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF
GEORGE LAMASON AND JEREMY LINHARDT FOR CONSOLIDATION,
APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF COUNSEL; AND (2)
IN OPPOSITION TO COMPETING MOTIONS**

---

Movants Lamason and Linhardt[1] respectfully submit this reply memorandum of law in further support of their motion for consolidation, appointment as Co-Lead Plaintiffs, and approval of their selection of Pomerantz as Lead Counsel (Dkt. No. 22); and in opposition to the competing motions of (i) RAD Investment (Dkt. No. 18) and (ii) the Retirement System (Dkt. No. 21).[2]

## PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" and has made a *prima facie* showing of typicality and adequacy within the meaning of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii).  This presumption can only be rebutted upon proof that the presumptive "most adequate plaintiff" is atypical or inadequate.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  Here, as discussed at length in their moving and opposition briefs (Dkt. Nos. 22, 32), Lamason and Linhardt satisfy all of the statutory criteria to be entitled to the "most adequate plaintiffs" presumption.  First, having incurred aggregate investment losses of $1,468,963 in connection with their Class Period transactions in SSR Mining securities, Lamason and Linhardt have alleged the largest financial interest among the competing movants in the relief sought by the Class.  Second, as set forth in greater detail in their moving and opposition briefs,

---

[1] All capitalized terms herein are defined in Lamason and Linhardt's moving and opposition briefs, unless otherwise indicated.  *See* Dkt. Nos. 22, 32.

[2] Initially four other putative Class members or groups of Class members filed similar competing motions: (1) Haldun Cetinbay and Jeffrey C. Williams (collectively, "Cetinbay and Williams") (Dkt. No. 12); (2) Stephen Gillig ("Gillig") (Dkt. No. 14); (3) Shawn Araghi and Matthew Chipman (collectively, "Araghi and Chipman") (Dkt. No. 16.); and (4) Linda Thompson and Terry Thompson (collectively, the "Thompsons") (Dkt. No. 19).  On May 23, 2024, Gillis filed a notice of non-opposition to competing motions (Dkt. No. 24) and on May 31, 2024, Araghi and Chipman filed a notice of non-opposition to competing motions (Dkt. No. 25).  On June 5, 2024, Cetinbay and Williams filed a notice withdrawing their motion.  Dkt. No. 30.  Finally, on June 7, 2024, the Thompsons filed a notice of non-opposition to competing motions.  Dkt. No. 31.

Lamason and Linhardt also satisfy the typicality and adequacy criteria of Rule 23. *See* Dkt. No. 22 at 10-13; Dkt. No. 32 at 5-7. As such, Lamason and Linhardt are entitled to the PSLRA's rebuttable presumption that they are the "most adequate plaintiffs" of the Class—that is, the presumptive Lead Plaintiffs of the Class.

Two competing movants, RAD Investment and the Retirement System, both contest Lamason and Linhardt's appointment as Co-Lead Plaintiffs, with each erroneously laying claim to the "most adequate plaintiff" presumption. Specifically, RAD Investment argues that Lamason is an "in-and-out" trader who overstated his investment losses by including losses incurred in connection with shares purchased and sold before any corrective disclosure. *See generally* Dkt. No. 33 at 2 ("RAD Investment Opp.). Further, the Retirement System argues that Lamason's "in-and-out" trading subjects him to unique defenses. *See generally* Dkt. No. 34 at 1-2 ("Retirement System Opp."). In addition, RAD Investment and the Retirement System claim that Lamason and Linhardt's status as "net sellers" and "net gainers" with respect to their Class Period transactions in SSR Mining securities disqualifies them from serving as Co-Lead Plaintiffs. *See generally* RAD Investment Opp. at 2; Retirement System Opp. at 1. As will be discussed further below, both of these arguments are meritless.

Finally, in response to the Retirement System's assertion that it is "uniquely able to effect Congressional preference that institutional investors lead securities class actions" (Retirement System Opp. at 12), Lamason and Linhardt respectfully submit that the PSLRA's clear language does not mention, much less privilege, institutional investors. *See In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 04-cv-0265, 2004 WL 1221353, at *2 (E.D. Pa. June 3, 2004) ("The language of the [PSLRA] does not require that institutional investors take precedence over individual plaintiffs

2

who are otherwise qualified to serve in a lead capacity.").  As such, there is no basis to permit the Retirement System to leapfrog Lamason and Linhardt and claim presumptive Lead Plaintiff status simply because it is an institutional investor.

Accordingly, for the foregoing reasons, Lamason and Linhardt respectfully request that the Court grant their motion in its entirety and deny the competing motions.

## ARGUMENT

### I.    LAMASON HAS NOT OVERSTATED HIS FINANCIAL INTEREST

In its opposition brief, RAD Investment argues that Lamason has overstated his financial interest by including losses in his loss calculation that were incurred in connection with in-and-out transactions—*i.e.,* shares purchased and sold before any corrective disclosure.  RAD Investment Opp. 2, 6-7.  To support this contention, RAD Investment cites *Dura Pharm. v. Broudo*, No. 03–932, 544 U.S. 336, 342-43 (2005) ("*Dura*") for the proposition that "such losses are not recoverable because they are not proximately caused by the defendants' misstatements."  RAD Investment Opp. at 2.  Accordingly, RAD Investment claims that because "Lamason sold the entirety of his holdings 11 separate times during the class period" and that "the first 10 of Lamason's 11 sell offs occurred before the first corrective disclosure," "[a]ny losses associated with those sales are not tied to the fraud in this case, are not recoverable, and should not be included in Lamason's loss calculation."  *See id.* at 2, 6-7.

This argument is unavailing.  Courts generally decline to apply *Dura* principles in assessing financial interest for the purposes of appointing lead plaintiffs in PSLRA actions.  *See*, *e.g.*, *Luo v. Spectrum Pharms., Inc.*, 21-cv-01612, 2022 WL 2985939, at *3 (D. Nev. July 28, 2022) (rejecting application of *Dura*-derived loss-causation methodology at the lead plaintiff appointment stage);

*Cook v. Allergan PLC*, *et al.*, 18 Civ. 12089 (CM), 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019) (finding it "unwise to embrace [*Dura*] methodology at the expense of . . . straightforward [last-in, first-out ('LIFO')] calculations" at lead plaintiff appointment stage); *Blitz v. AgFeed Indus.*, No. 3:11–0992, 2012 WL 1192814, at *4 (M.D. Tenn. Apr. 10, 2012) (*Dura* "was not a case involving the appointment of a Lead Plaintiff under the PSLRA, and *Dura* does not discuss [first-in, first-out ("FIFO")] or LIFO losses"); *In re Watchguard Sec. Litig.*, No. C05-678JLR, 2005 WL 8188936, at *3-4 (W.D. Wash. July 13, 2005); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, No. 08C0458, 256 F.R.D. 620 (E.D. Wis. 2009). Applying a *Dura*-derived loss-calculation methodology at this juncture would be premature, as it would require the Court to conduct a merits analysis necessitating expert opinion and otherwise consider factors not yet clear at the lead plaintiff stage. *See*, *e.g.*, *Spectrum*, 2022 WL 2985939, at *3; *Allergan*, 2019 WL 1510894, at *3. The Complaints in the Related Actions do ***not*** simply allege that Class members were harmed ***only*** by the corrective disclosures currently referenced in the Complaints, but rather more broadly that investors were harmed by Defendants' false and misleading statements during the Class Period with respect to the efficacy of the Company's mine safety protocols. Following the appointment of a Lead Plaintiff, the initial Complaints in this litigation will likely be superseded in short order by an Amended Complaint that may identify additional corrective disclosures that precede the corrective disclosures currently alleged. Applying a *Dura*-derived methodology at this stage would thus myopically focus only on the currently alleged corrective disclosures, while disregarding the broader theory of loss caused by the Defendants' alleged violations of the federal securities laws during the Class Period.

4

Moreover, courts are especially reluctant to apply *Dura* in cases such as the instant litigation, in which multiple corrective disclosures are alleged. In such circumstances, the "fraud premium"—*i.e.*, the amount by which the price of the relevant securities was inflated by the Defendants' false and misleading statements—"varie[s] over the course of the class period', such that 'some transactions resulted in greater losses than others.'" *Li Hong Cheng v. Canada Goose Holdings Inc.*, No. 19-CV-8204 (VSB), 2019 WL 6617981, at *5 (S.D.N.Y. Dec. 05, 2019) (quoting *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999)); *see also Plaut v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 WL 4512774, at *4 (S.D.N.Y. Sept. 19, 2019) ("Under the circumstances presented here, in which the complaint alleges multiple partial disclosures over the course of the Class Period, courts have been reluctant to apply a *Dura*-based approach to calculate[e] losses."). Here, the complaints in the Related Actions allege three corrective disclosures, occurring on the following dates: (1) February 13, 2024, following which SSR Mining's stock price fell $5.22 per share, or nearly 54%; (2) February 18, 2024, following which SSR Mining's stock price fell $0.29 per share, or nearly 6%; and (3) February 27, 2024, following which SSR Mining's stock price fell $0.37 per share, or nearly 8%. Each of these three disclosures independently contributed to the reduction in value of SSR Mining stock, meaning that the fraud premium at issue clearly varied during the Class Period, such that certain of the movants' transactions resulted in greater losses than others. Given that varying fraud premium, it is plainly premature to decide, at the very outset of this litigation, that certain of the investment losses that Lamason and likely many other similarly situated Class members incurred are categorically unrecoverable.

Considering the foregoing, it would clearly be improper to apply *Dura*-derived loss-causation principles at this stage of the litigation.  Doing so would amount to simply "guess[ing] about the effect of . . . as-yet-unknown factors in selecting a lead plaintiff", *Watchguard*, 2005 WL 8188936, at *4 n.6—which is *not* the holding of *Dura*.

**II.    LAMASON AND LINHARDT ARE NOT SUBJECT TO DISQUALIFYING UNIQUE DEFENSES**

**A. Lamason's In-and-Out Transactions Do Not Render Him Atypical or Inadequate**

In its opposition brief, the Retirement System argues that the Court should deny Lamason and Linhardt's motion because "Lamason engaged in extremely unusual and atypical trading strategies[] which subject [Lamason and Linhardt] to 'unique defenses that render [them] incapable of adequately representing the class.'"  Retirement System Opp. at 6.  Specifically, the Retirement System states that "[s]uch 'in-and-out' trading patterns and the 'idiosyncrasies of [Lamason's]' trading will become a 'distraction at trial' and therefore his 'trading history inhibit[s] his ability to serve as an untarnished proxy for the class.'"  *Id.* at 7.  This argument is unavailing.

As a threshold matter, the Retirement System has not demonstrated that Lamason's in-and-out transactions are actually unique to Lamason and irrelevant to other Class members.  Indeed, it is highly likely that other investors in SSR Mining securities engaged in similar trading activity during the Class Period, thereby subjecting them to the same purportedly "unique" defense to which the Retirement System claims Lamason is subject.  Definitionally, a defense that applies to a material portion of the Class cannot be considered "unique."  *See*, *e.g.*, *Lehocky v. Tidel Techs., Inc.*, No. CIV.A. H–01–3741, 220 F.R.D. 491, 502 (S.D. Tex. 2004) (finding a purported lack-of-reliance defense not unique to lead plaintiff movants upon determining that the defense "[could]

be made against all class members"). Indeed, courts routinely appoint in-and-out traders to serve as lead plaintiffs in PSLRA actions. *See*, *e.g.*, *In re Molycorp, Inc. Sec. Litig.*, C.A. No. 12-cv-0292-WJM-KMT, 2012 WL 13013602, at \*3 (D. Colo. May 29, 2012) (stating that "the prevailing view . . . is that day and momentum traders have the same incentives to prove defendants' liability as all other class members, and their presence in a securities class does not create intra-class conflicts.") (quoting *Prefontaine v. Research in Motion Ltd.*, No. 11-cv4068, 2012 WL 104770, at \*4 (S.D.N.Y. Jan. 5, 2012)); *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92(SAS), 227 F.R.D. 65, 96 (S.D.N.Y. 2004) ("attacks on the proposed class representatives' reliance on the integrity of the market because of 'unique' investment strategies do not defeat typicality"); *In re Host Am. Corp. Sec. Litig.*, No. 3:05 CV 1250(JBA), 236 F.R.D. 102, 108 (D. Conn. 2006) (finding that engaging in day-trading does not render a plaintiff atypical or inadequate to represent the class). Like any other Class member, in-and-out traders would have purchased SSR Mining securities at prices artificially inflated by the alleged false and misleading statements at issue in this litigation, and incurred investment losses when the value of those shares declined following a corrective disclosure that revealed the Defendants' alleged fraud. Accordingly, Lamason's status as an in-and-out trader has absolutely no bearing on his (or Linhardt's) adequacy to serve as a lead plaintiff because Lamason, like all other Class members, purchased SSR Mining securities at artificially inflated prices and were harmed thereby.

### B. Lamason and Linhardt's Status as Net Sellers and Net Gainers Does Not Disqualify Them from Serving as Co-Lead Plaintiffs

In their opposition briefs, RAD Investment and the Retirement System argue that because Lamason and Linhardt are "net sellers"—*i.e.*, they collectively sold more shares than they purchased during the Class Period—and "net gainers"—*i.e.*, they received more in proceeds than

they expended during the Class Period—they purportedly benefited from Defendants' fraud, rather than being harmed by it, and are thus disqualified from serving as Co-Lead Plaintiffs. *See generally* RAD Investment Opp. at 2, 7-9; Retirement System Opp. at 1, 3-6. This argument fails. Regardless of their status as net sellers and net gainers, both ***Lamason and Linhardt have alleged substantial recoverable investment losses as a result of Defendants' malfeasance.*** Matching their sales of SSR Mining securities to their purchases, both Lamason and Linhardt demonstrably incurred significant losses whether calculated on a LIFO or FIFO basis. *See* Dkt. No. 23-1; *see also In re UTStarcom, Inc. Sec. Litig.*, No. C 04–04908 JW, 2010 WL 1945737, at \*6 (N.D. Cal. May 12, 2010) (finding net-seller/net-gainer plaintiff typical because when the plaintiff's sales were matched to purchases it showed that plaintiff suffered a net loss). Here, as of February 13, 2024, the date of the first corrective disclosure alleged in the Complaints in the Related Actions, Lamason and Linhardt respectively held 140,000 and 23,135 shares of SSR Mining stock and, as of February 18, 2024, the date of the second corrective disclosure, Lamason held 140,000 shares. *See* Dkt. Nos. 23-1, 23-3. Lamason and Linhardt purchased those shares during the Class Period at prices artificially inflated by the Defendants' alleged fraud and suffered investment losses when SSR Mining stock declined in value following the alleged corrective disclosures of February 13 and February 18, 2024. At minimum, therefore, the losses Lamason and Linhardt incurred in connection with the foregoing corrective disclosures give them a clear and cognizable financial interest in this litigation. *See*, *e.g.*, *Turpel v. Canopy Growth Corp.*, No. 23 Civ. 4302 (PAE), 2023 WL 8276633, at \*6 (S.D.N.Y. Nov. 30, 2023) (explaining that "[c]ognizable damages in [PSLRA actions] are based on the drop in a stock's price occasioned by the revelation to the market of facts revealing the falsity of the issuer's earlier representations" and when the truth is revealed,

"investors either sell at a loss or retain their shares at the lower (albeit accurate) price."). Courts

have accordingly appointed net sellers and gainers to serve as lead plaintiffs in PSLRA actions.

*See*, *e.g.*, *Foley v. Transocean Ltd.*, No. 10 Civ. 5233 (NRB), 272 F.R.D. 126, 132 (S.D.N.Y. 2011)

(appointing net seller after reviewing specific facts of transaction, finding that movant "did not

benefit from the fraud by selling at inflated prices"); *In re BP P.L.C. Sec. Litig.*, MDL No. 10-md-

2185, 2013 WL 6388408, at *6-9 (S.D. Tex. Dec. 6, 2013) (rejecting challenge to plaintiff's

typicality due to its "net seller" status); *In re UnitedHealth Grp. Inc. PSLRA Litig.*, No. 06-cv-

01691, ECF No. 93, slip op. (D. Minn. Sept. 14, 2006) (appointing a net seller/net gainer as lead

plaintiff).

## III.    THE RETIREMENT SYSTEM'S STATUS AS AN INSTITUTIONAL INVESTOR IS IRRELEVANT TO ITS MOTION

Finally, in response to the Retirement System's claim that it is "uniquely able to effect

Congressional preference that institutional investors lead securities class actions" (Retirement

System Opp. at 12), Lamason and Linhardt respectfully submit that the PSLRA's clear language

does not mention, much less privilege, institutional investors. *See In re Am. Bus. Fin. Servs.*, 2004

WL 1221353, at *2 ("The language of the [PSLRA] does not require that institutional investors

take precedence over individual plaintiffs who are otherwise qualified to serve in a lead capacity.").

As discussed in Lamason and Linhardt's opposition brief (Dkt. No. 32 at 3-4, 7-8), while there is

no dispute in the Congressional record that Congress hoped that institutional investors would seek

appointment as lead plaintiffs, Congress did not make such an aspiration a basis in the PSLRA's

text to deny lead-plaintiff status to individuals who had larger losses than institutional investors.

Indeed, "[if] Congress had intended to restrict the application of the rebuttable presumption to

institutional investors, it could have stated such in the statute." *Reiger v. Altris Software, Inc.*, 98-

9

cv-0528 (JFS), 1998 WL 1986953, at *4 (S.D. Cal. Sept. 11, 1998); *see also Kapur v. Usana Health Sciences, Inc.*, Case No. 2:07CV177DAK., 2007 WL 3046664, at *2 (D. Utah Oct. 17, 2007) ("While the legislative history reflects that Congress intended the Lead Plaintiff provisions to increase the likelihood that institutional investors would participate in litigation as a result of the size of the holdings held by such institutions, it did not choose to make any special preference for institutional investors in the plain language of the PSLRA."). Here, as set forth above, Lamason and Linhardt are the movants who satisfy the PSLRA's clearly stated criteria for appointment as Co-Lead Plaintiffs, and there is no basis in the PSLRA or in federal jurisprudence to deny Lamason and Linhardt's motion and appoint the Retirement System as Lead Plaintiff instead.

## CONCLUSION

For the foregoing reasons, Lamason and Linhardt respectfully request that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Lamason and Linhardt as Co-Lead Plaintiffs for the Class; and (3) approving Lamason and Linhardt's selection of Pomerantz as Lead Counsel for the Class.

Dated:  June 21, 2024                Respectfully submitted,

                                     POMERANTZ LLP

                                     */s/ Jeremy A. Lieberman*
                                     Jeremy A. Lieberman
                                     J. Alexander Hood II
                                     600 Third Avenue, 20th Floor
                                     New York, New York 10016
                                     Telephone: (212) 661-1100
                                     Facsimile: (917) 463-1044
                                     jalieberman@pomlaw.com
                                     ahood@pomlaw.com

                                     *Counsel for George Lamason and Jeremy Linhardt*
                                     *and Proposed Lead Counsel for the Class*

10

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for George Lamason and
Jeremy Linhardt*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of June, 2024, a true and correct copy of the foregoing

**REPLY MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF GEORGE LAMASON AND JEREMY LINHARDT FOR CONSOLIDATION, APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS** was e-filed with the Clerk of Court via the

CM/ECF System which will send notification of such filing to all counsel of record.

12