**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-00739-SBP

KARAM AKHRAS, Individually and on behalf of all others similarly situated,

       Plaintiff,

    v.

SSR MINING INC.,
RODNEY P. ANTAL, and
ALISON WHITE,

       Defendants.

---

Civil Action No. 1:24-cv-00808-SBP

ERIC LINDEMANN, Individually and on behalf of all others similarly situated,

       Plaintiff,

    v.

SSR MINING, INC.,
RODNEY P. ANTAL,
ALISON WHITE,
STEWART J. BECKMAN,
WILLIAM NEVIN, and
F. EDWARD FARID,

       Defendants.

---

**RAD INVESTMENT LLC'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ITS MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD
PLAINTIFF, AND APPROVAL OF LEAD COUNSEL**

Lead Plaintiff Movant RAD Investment LLC ("RAD Investment") submits this reply in further support of its motion for consolidation, appointment as lead plaintiff, and approval of its selection of counsel (Dkt. No. 18), and in response to the oppositions filed by George Lamason and Jeremy Linhardt ("Lamason and Linhardt") (Dkt. No. 32, "L&L Opp.") and the City of Baltimore Employees Retirement System (the "Retirement System") (Dkt. No. 34, "RS Opp."). Neither opposition can overcome the statutory presumption that RAD Investment should be appointed lead plaintiff because it has the largest financial interest.

All movants agree that consolidation is appropriate here. As detailed in RAD Investment's prior briefing, *see* Dkt. No. 33 ("RAD Opp.") at 5, its losses are larger than any other movants' including Lamason and Linhart and RAD Investment is therefore the presumptively most adequate plaintiff to be appointed as lead plaintiff. Only the Retirement System challenges the presumption on the grounds that RAD Investment purchased shares after the first of a series of alleged corrective disclosures. This type of argument, frequently rejected by most courts, is particularly inappropriate here because many class members (*including the Retirement System*) purchased shares after the first corrective disclosure. Corrective disclosures were still entering the market during the class period following the first disclosure. Accordingly, these purchases do not subject RAD Investment to any unique defenses. RAD Investment should be appointed as lead plaintiff, and its selection of counsel should be approved.

## I.    RAD INVESTMENT IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF TO BE APPOINTED AS LEAD PLAINTIFF

RAD Investment is presumptively the most adequate plaintiff to be appointed as lead plaintiff because it has the largest financial interest, claiming a loss of $1,137,195. *See* RAD Opp. at 5. Lamason and Linhardt continue to overstate their loss in their opposition

memorandum by including shares that were purchased and then sold *before any* corrective disclosure, *i.e.* "in-and-out transactions." L&L Opp. at 2. Shares purchased before any disclosures are not properly included in calculating damages and Lamason and Linhardt fail to offer any explanation as to why otherwise unrecoverable losses should count towards their "financial interest." Once the in-and-out transactions are properly removed from their loss calculation, Lamason and Linhardt's combined loss is revealed to be just $1,090,675, which is smaller than RAD Investment's loss. *See* RAD Opp. at 5. The Retirement System, the only other movant still seeking appointment as lead plaintiff, *concedes* that it has a smaller financial interest than RAD Investment. *See* RS Opp. at 2. Since RAD Investment has the largest financial interest, it is the presumptively most adequate plaintiff to be appointed as lead plaintiff.

Moreover, even if Lamason and Linhardt had a larger financial interest than RAD Investment (they do not), Lamason and Linhardt should be disqualified from consideration because they are subject to the unique defense that they are "net sellers" and "net gainers." *See* RAD Opp. at 7-9. The Retirement System identified the same defense in its opposition, *see* RS Opp. at 4-6, adding the observation that "while [Lamason and Linhardt] acknowledge that net shares purchased and net expenditures are factors courts use to assess financial interest . . . they conspicuously omit these calculations from their brief." *Id.* at 4. Lamason and Linhardt should be disqualified.

Whether Lamason and Linhardt's in-and-out transactions are removed from their loss calculation, or whether they are disqualified as net gainers and net sellers, the result is the same: RAD Investment has the largest financial interest of the *bona fide* movants and is the presumptively most adequate plaintiff to be appointed as lead plaintiff.

**II.     THE RETIREMENT SYSTEM FAILED TO REBUT THE PRESUMPTION
THAT RAD INVESTMENT IS THE MOST ADEQUATE PLAINTIFF**

The presumption that RAD Investment is the most adequate plaintiff may be rebutted only "*upon proof*" that it (1) "will not fairly and adequately protect the interests of the class," or (2) is "subject to unique defenses that render [it] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). "[C]hallenges based on speculation" are not "proof." *Kain v. Ampio Pharms., Inc.*, No. 22-cv-2105, 2023 WL 5095547, at \*5 (D. Colo. Aug. 9, 2023); *see also In re Molycorp, Inc. Sec. Litig.*, No. 12-CV-0292, 2012 WL 13013602, at \*2 (D. Colo. May 29, 2012) ("[S]peculation that a movant may be either atypical or inadequate will not defeat the PSLRA's most adequate plaintiff presumption.").

Here, only the Retirement System challenges RAD Investment's adequacy to represent the class. *See* RS Opp. at 8-11. The Retirement System argues that RAD Investment is subject to unique defenses because it significantly increased its holdings on and after February 13, 2024, the date of the first of multiple corrective disclosures alleged in this action. *See id.*; Dkt. No. 1 ¶¶ 59-66 (alleging corrective disclosures on five days: February 13, 2024, February 16, 2024, February 17, 2024, February 18, 2024, and February 27, 2024). The Retirement System argues that such purchases demonstrate that RAD Investment invested in SSR Mining "notwithstanding notice of defendants' misstatements and omissions" and therefore did not rely on the Defendants' false statements. *See* RS Opp. at 9. For the reasons below, this attack should be rejected.

The Retirement System also *more than doubled* its holdings following the February 13, 2024 corrective disclosure. *See* Dkt. No. 21-2 (Retirement System's Loss Chart). At the time of

3

the February 13, 2024 disclosure, the Retirement System was holding 27,597 shares. *See id.*[1]

Thereafter, the Retirement System purchased another 33,919 shares—increasing its holdings by

122%. *See id.* Of course, the Retirement System claims that its post-disclosure purchases are not

disqualifying because, though significant, they are not as much as RAD Investment's. *See* RS

Opp. at 11-13. This type of comparative analysis reinforces RAD Investment's position that it is

not subject to unique defenses and that it is similarly situated to other class members including

the Retirement System. The Court should reject the Retirement System's attempt to thread the

needle between the Retirement System's purchases and RAD Investments' purchases in an effort

to secure a position as lead plaintiff. To support its own appointment, the Retirement System

ultimately argues that even significant purchases following the first of multiple corrective

disclosures is not per se disqualifying. But that same reasoning more properly supports RAD

Investment's bid for lead plaintiff since RAD Investment is the presumptively most adequate

plaintiff.

The weight of authority nationwide supports RAD Investment's argument and holds that

purchases after a partial disclosure are not disqualifying. *See Tenneson v. Nikola Corp.*, No. 23-

cv-02131, 2024 WL 905244, at *10 (D. Ariz. Feb. 29, 2024) ("[C]ourts in the Ninth Circuit have

regularly determined that buying stock after a partial corrective disclosure does not per se bar a

plaintiff from satisfying [the typicality and adequacy requirements]"); *Ferreira v. Funko*, Inc.,

No. 20-cv-02319, 2020 WL 3246328, at *6 (C.D. Cal. June 11, 2020) (appointing a movant

whose loss was *entirely* attributable to shares purchased after the first corrective disclosure,

---

[1] The Retirement System purchased a total of 40,939 shares in December 2022 and February 2023, but then sold 13,342 shares in November 2023. Net, the Retirement System was holding 27,597 shares at the time of the February 13, 2024 corrective disclosure.

noting "[c]ourts typically find that purchasing securities after a partial, or even full, disclosure of alleged fraud does not disqualify potential lead plaintiffs") (collecting cases); *In re VEON Ltd. Sec. Litig.*, No. 15-cv-8672, 2022 WL 1284547, at *6 (S.D.N.Y. Apr. 29, 2022) (appointing a movant that "purchased his shares after three of the five partially corrective disclosures," noting "courts have frequently found that the purchase of a stock after a partial disclosure does not bar a plaintiff from satisfying the typicality requirement"); *In re K-V Pharm. Co. Sec. Litig.*, No. 11-cv-01816, 2012 WL 1570118, at *6 (E.D. Mo. May 3, 2012) ("Courts have consistently rejected the argument that post-disclosure purchases preclude a proposed class representative from meeting Rule 23(a) requirements in a fraud-on-the-market suit."). The same result is warranted here with respect to RAD Investment.

Significantly, many class members likely purchased shares after the February 13, 2024 disclosure as the facts were making their way into the market, so any defense based on those purchases would not be unique to RAD Investment. Approximately 67 million shares traded on March 13, 2024, following the first corrective disclosure.[2] The next day, February 14, 2024, more than 22 million shares were traded. Each day the week prior, for comparison, had less than 3 million shares traded per day. As such, "the Class will likely include those who purchased after the first . . . partial disclosure" and any defense applicable to RAD Investment on the same basis would not be unique. *See Schneider v. Champignon Brands Inc.*, No. 21-cv-03120, 2021 WL 4935160, at *4 (C.D. Cal. June 29, 2021); *see also VEON*, 2022 WL 1284547, at *6 (appointing a movant that purchased after a partial disclosure, reasoning "[p]resumably, other putative class members bought shares at various points during the Class Period, including before and after

---

[2]     Price and volume data is available at https://finance.yahoo.com/quote/SSRM/ (last visited June 19, 2024).

some disclosures"). The notion that many class members likely purchased a substantial number of shares after the first disclosure in this action is further supported by the fact that both RAD Investment and the Retirement System did just that. As such, RAD Investment is *not* subject to a unique defense on the basis that it purchased many of its shares after the first corrective disclosure.

In fact, all class members that purchased after the first disclosure, but before the final disclosure, purchased shares at an inflated price because SSR Mining had not yet disclosed certain information about the Copler mine incident, and these investors were later damaged when the truth was revealed. For example, the complaint alleges that on February 18, 2024, SSR Mining published a press release disclosing that some of its employees were "facing charges" in relation to the incident at Copler mine—indicating the collapse was due to misconduct on the part of SSR Mining. *See* Dkt. No. 1 ¶ 70. Then on February 27, 2024, SSR Mining disclosed the magnitude of the mine incident's negative effect on SSR Mining's financials going forward. *See* Dkt. No. 1 ¶¶ 72-74. RAD Investment and other investors who bought shares after the February 13, 2024 partial corrective disclosure were injured when the share price fell following these later disclosures. Class members who bought in the later period are well represented by a lead plaintiff that also bought during that period. *See Champignon Brands*, 2021 WL 4935160, at *4 (appointing a movant that purchased all his shares after a partial disclosure, reasoning that "like prospective members of the class, Quinn suffered injuries as a result of the final . . . disclosure").

*     *     *

Accordingly, the Retirement System has failed to rebut the presumption that RAD Investment is the most adequate plaintiff. RAD Investment should therefore be appointed as lead plaintiff.

## III.    CONCLUSION

For all the foregoing reasons, the two above-captioned actions should be consolidated. In addition, since RAD Investment is the presumptively most adequate plaintiff and the Retirement System has failed to rebut the presumption, RAD Investment should be appointed as lead plaintiff and its selection of Glancy Prongay & Murray LLP as lead counsel for the class should be approved.

DATED: June 21, 2024

**GLANCY PRONGAY & MURRAY LLP**

*s/ Robert V. Prongay*
Robert V. Prongay
Charles H. Linehan (*pro hac vice* forthcoming)
Pavithra Rajesh (*pro hac vice* forthcoming)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
rprongay@glancylaw.com
clinehan@glancylaw.com
prajesh@glancylaw.com

Daniella Quitt (*pro hac vice* forthcoming)
745 Fifth Avenue, 5th Floor
New York, New York 10151
Telephone: (212) 935-7400
dquitt@glancylaw.com

*Counsel for RAD Investment LLC and Proposed*
*Lead Counsel for the Class*

7

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document and accompanying Proposed Order were filed with this Court on June 21, 2024 through the CM/ECF system and will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

*s/ Robert V. Prongay*
Robert V. Prongay
