**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:24-cv-00739-DDD-SBP

KARAM AKHRAS, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

v.

SSR MINING INC.,
RODNEY P. ANTAL,
and ALISON WHITE,

      Defendants.

---

Civil Action No.: 1:24-cv-00808-CNS-SBP

ERIC LINDEMANN, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

v.

SSR MINING, INC.,
RODNEY P. ANTAL,
ALISON WHITE,
STEWART J. BECKMAN,
WILLIAM NEVIN, and
F. EDWARD FARID,

      Defendants.

---

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT
OF THE MOTION OF THE EMPLOYEES' RETIREMENT SYSTEM OF THE CITY OF
BALTIMORE FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS
LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT ................................................................................................................. 2

      A.    Baltimore Employees' Qualifications Are Not Contested ...................................... 2

      B.    Opposition Briefing Verifies that L&L Must Be Disqualified ............................... 5

      C.    Baltimore Employees Has Established that RAD Must Be Disqualified ................ 6

III.  CONCLUSION .............................................................................................................. 8

# TABLE OF AUTHOTITIES

**PAGE(S)**

**Cases**

*Armbruster v. Gaia, Inc.*,
   2023 WL 2613817 (D. Colo. Mar. 23, 2023) ............................................................................. 5

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*,
   2020 WL 2614703 (S.D.N.Y. May 22, 2020) ............................................................................. 3

*DiTucci v. Ashby*,
   2020 WL 1249627 (D. Utah Mar. 16, 2020) ............................................................................. 4

*Erickson v. Snap, Inc.*,
   2017 WL 11592635 (C.D. Cal. Sept. 18, 2017) ....................................................................... 7

*Faris v. Longtop Fin. Techs. Ltd.*,
   2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ............................................................................. 7

*Gurevitch v. KeyCorp*,
   2023 WL 8890938 (N.D. Ohio Dec. 26, 2023) ......................................................................... 6

*In re Amer. Business Fin. Serv. Sec. Litig.*,
   2004 WL 1221353 (E.D. Pa. June 3, 2004) ............................................................................. 4

*In re Hebron Tech. Co., Ltd. Sec. Litig.*,
   2020 WL 5548856 (S.D.N.Y. Sept. 16, 2020)...................................................................... 7, 8

*In re Pfizer Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) ................................................................................................ 4

*In re UTStarcom, Inc. Sec. Litig.*,
   2010 WL 1945737 (N.D. Cal. May 12, 2010) ........................................................................... 5

*Kapur v. Usana Health Scis., Inc.*,
   2007 WL 3046664 (D. Utah Oct. 17, 2007) ............................................................................. 4

*Karinski v. Stamps.com, Inc.*,
   2020 WL 6572660 (C.D. Cal. Nov. 9, 2020)......................................................................... 5, 7

*Lemm v. New York Cmty. Bancorp, Inc.*,
   2024 WL 2022213 (E.D.N.Y. May 7, 2024) ............................................................................. 8

*Milbeck v. TrueCar, Inc.*,
   2019 WL 2353010 (C.D. Cal. May 24, 2019) ........................................................................ 4, 7

*Perlmutter v. Intuitive Surgical, Inc.*,
   2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ............................................................................. 5

*Plymouth Cnty. Ret. Sys. v. Apache Corp.*,
   566 F. Supp. 3d 712 (S.D. Tex. 2021) ...................................................................................... 3

*Reiger v. Altris Software, Inc.*,
   1998 WL 1986953 (S.D. Cal. Sept. 11, 1998) .......................................................................... 4

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
   335 F.R.D. 276 (N.D. Cal. 2020) .......................................................................................... 5, 7

Baltimore Employees respectfully submits this reply brief in further support of its motion for appointment as Lead Plaintiff.[1]

## I.    INTRODUCTION

Of the three remaining movants, only Baltimore Employees has established that it is typical and adequate under Rule 23 and is therefore qualified to be appointed Lead Plaintiff. Baltimore Employees has indisputably demonstrated its substantial financial interest in this litigation and, as an institutional investor, is precisely the type of lead plaintiff envisioned under the PSLRA.  Unlike L&L and RAD, Baltimore Employees is not subject to unique defenses that could impede its ability to prosecute the claims on behalf of the Class.   Indeed, Baltimore Employees is the only movant whose qualifications are ***unchallenged***.

In stark contrast to the consensus surrounding Baltimore Employees' qualifications to serve as Lead Plaintiff, the opposition brief submitted by RAD confirms glaring deficiencies that doom L&L's motion, while Baltimore Employees has established that RAD is equally unfit. Specifically, RAD's opposition supports Baltimore Employees' argument that L&L's motion must be jettisoned because L&L sold more shares than they purchased during the Class Period for collective net proceeds of $601,000, rendering them a "net seller" ***and*** "net gainer"—a status that is disqualifying on its face.  Both Baltimore Employees and RAD cite the substantial body of case law rejecting net sellers who are also net gainers given concerns such investors may have benefitted from a fraud.  In addition, Baltimore Employees has demonstrated that Lamason, who incurred the largest loss of L&L, would be an atypical representative for the Class due to his extraordinarily extensive and unusual trading activity, including more than 2,200 transactions

---

[1] All defined terms take their meanings from Baltimore Employees' opening and opposition briefs, ECF Nos. 21 and 34.  Internal quotations and citations are omitted, and all emphasis is added unless otherwise noted.

and 11 liquidations of his position in SSR Mining stock. Both L&L's status as a net seller and net gainer and Lamason's trading patterns are at risk of becoming the focus of litigation on their own, but together these deficiencies are fatal to L&L's bid for appointment.

Baltimore Employees also has established that RAD's candidacy similarly fails. RAD is atypical because it purchased nearly all its position in SSR Mining *after* the Copler Disaster substantially revealed the fraud. Following that February 13, 2024 disclosure, RAD quadrupled its position by purchasing 82% of its shares, with 69% of its shares purchased on one day. Courts routinely reject movants like RAD that purchase an extraordinarily disproportionate number of their shares after a material disclosure of fraud because such purchasing raises questions about their reliance on the misrepresentations at issue. Such reliance questions unnecessarily expose the movant and the Class to challenges at later stages.

Baltimore Employees is not subject to these or any other unique defenses. There is no reason to saddle the Class with a deficient lead plaintiff given that Baltimore Employees is unquestionably qualified and no arguments whatsoever have been raised concerning Baltimore Employees' typicality, adequacy, or financial interest. Therefore, the Court should appoint Baltimore Employees as Lead Plaintiff and deny the competing motions.

## II.    ARGUMENT

### A.    Baltimore Employees' Qualifications Are Not Contested

As noted in its opening brief, Baltimore Employees suffered a loss of $291,320 on its Class Period purchases of SSR Mining stock. *See* ECF Nos. 21-2 at 2; 34 at 7. Baltimore Employees is also a net purchaser of 61,516 SSR Mining shares during the Class Period, with a net loss of $618,034. *See* ECF Nos. 34 at 7; 21-2 at 2. Importantly, Baltimore Employees is the only movant before the Court that suffered a significant loss on its purchases of SSR Mining stock *and* satisfies the requirements of Rule 23. ECF No. 21 at 15; 34 at 17. Neither L&L nor

2

RAD challenge Baltimore Employees' financial interest or its adequacy and typicality.[2]   The absence of any argument from either competing movant questioning Baltimore Employees' qualifications is a concession that there are no impediments to Baltimore Employees' appointment as Lead Plaintiff.

L&L argues that Baltimore Employees is not "entitled to preferential treatment" as an institutional investor,[3] but its motion and opposition to the competing motions are not merely predicated on its status as an institutional investor.   Rather, Baltimore Employees is the only movant before the Court that meets all criteria for appointment under the PSLRA, whereas L&L and RAD do not.   ECF No. 34 at 16-18.   The fact that Baltimore Employees is also the prototypical institutional investor Congress envisioned when enacting the PSLRA (a fact not disputed by L&L or RAD) provides further assurance that Baltimore Employees will zealously represent the Class and effectively oversee Lead Counsel's prosecution of the Action.   *See Plymouth Cnty. Ret. Sys. v. Apache Corp.*, 566 F. Supp. 3d 712, 720 (S.D. Tex. 2021) (rejecting individual movant "subject to unique defenses that render him unfit to be appointed" and noting that appointing a pension funds "has the added benefit of furthering the PSLRA's ***clear preference*** for institutional investors to serve as lead plaintiff"); *City of Warren Police & Fire Ret. Sys. v. World Wrestling Ent. Inc.*, 2020 WL 2614703, at *3 (S.D.N.Y. May 22, 2020)

---

[2] L&L and RAD only note that they claim larger losses than Baltimore Employees.  *See* ECF Nos. 32 at 5, and 33 at 9.

[3] *See* ECF No. 32 at 4-5, 8-9.  L&L makes this preemptive argument against RAD as well (*see id.*), but RAD does not make any claim to be an institutional investor, much less offer any other information to the Court evincing its sophistication, experience, resources, or ability to serve as Lead Plaintiff.  ECF Nos. 18 at 8-9, and 33 at 13.

(rejecting individual movant who "lacks meaningful litigation experience" and appointing "the kind of sophisticated institutional investor *favored* by the PSLRA[,]" a pension fund).[4]

While the Court should not entertain any untimely attacks on Baltimore Employees' qualifications related to its own post-disclosure purchases, such arguments would fail.[5] Baltimore Employees purchased most of its shares *before* the Copler Disaster, and then purchased less than half of its shares—45%—post-disclosure. *See* ECF Nos. 21-1 at 4; 21-2 at 2; 34 at 16 n.9. Baltimore Employees highlights its trading history to assure the Court that it faces none of the same typicality concerns that would surely become a focus of the litigation were RAD appointed. Baltimore Employees' post-disclosure purchases are well below the amounts courts have found to present unique defenses. For example, in *In re Pfizer Securities Litigation*, the court found that a proposed class representative that purchased 44% of its shares after an initial disclosure was not atypical. 282 F.R.D. 38, 46 & n.5 (S.D.N.Y. 2012) (granting class certification). Other courts at the class certification stage have similarly held that post-disclosure purchases of less than half of a plaintiff's total class period purchases do not render a plaintiff atypical. *See Milbeck v. TrueCar, Inc.*, 2019 WL 2353010, at *3 & n.1 (C.D. Cal. May 24, 2019) (finding post-disclosure purchases of 38% did not reach the 60% level found atypical);

---

[4] L&L's authorities (*see* ECF No. 32 at 5) are inapposite, addressing institutional movants who either presented no evidence or insufficient evidence challenging the adequacy of the movant with the largest loss. *See Kapur v. Usana Health Scis., Inc.*, 2007 WL 3046664, at *3 (D. Utah Oct. 17, 2007) (appointing individual with the largest loss where institutional investor movant "does not raise any conflicts or defenses that make [individual movant] atypical or inadequate"); *Reiger v. Altris Software, Inc.*, 1998 WL 1986953, at *4 (S.D. Cal. Sept. 11, 1998) (same); *In re Amer. Business Fin. Serv. Sec. Litig.*, 2004 WL 1221353 at *5 (E.D. Pa. June 3, 2004) (finding institutional movant "ha[s] presented no further evidence to rebut the presumption" of movant with largest loss). In contrast, Baltimore Employees has provided ample proof here, taken from L&L and RAD's own submissions, establishing that these movants fail to satisfy Rule 23, leaving Baltimore Employees as the only qualified movant. *See* ECF 34 at 9-16.

[5] *See DiTucci v. Ashby*, 2020 WL 1249627, at *11 (D. Utah Mar. 16, 2020) ("The court does not consider arguments raised for the first time in reply....").

4

*SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 284 (N.D. Cal. 2020) (determining 33% post-disclosure purchases "do not differ so dramatically from [plaintiff's] pre-disclosure purchases"); *Karinski v. Stamps.com, Inc.*, 2020 WL 6572660, at *4 (C.D. Cal. Nov. 9, 2020) (holding 31% post-disclosure purchases "do not defeat typicality because they are not disproportionate to [plaintiff's] prior purchases"). Accordingly, Baltimore Employees' investment pattern does not impede its appointment.

### B.    Opposition Briefing Verifies that L&L Must Be Disqualified

In contrast to Baltimore Employees' undisputed qualifications and status as the only institutional investor movant, L&L face infirmities that preclude their appointment. L&L's motion should be denied because their appointment would needlessly expose the Class to unique defenses stemming from (1) L&L's status as a net seller and net gainer and (2) Lamason's unusual trading practices including selling out of his position numerous times.

First, Baltimore Employees and RAD agree that L&L is the prototypical net seller and net gainer that courts uniformly disqualify. *See* ECF Nos. 34 at 6-7, 8-11 and 33 at 6, 10-13; *see also Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at *8-9 (N.D. Cal. Feb. 15, 2011) (collecting cases concluding that a net seller who is also a net gainer should not be appointed because it "arguably profits more from the fraud than suffers from it").[6] L&L sold 100,000 more

---

[6] L&L are a net gainer even though they claim losses under a LIFO calculation. Net gains and out-of-pocket (LIFO) losses are distinct factors, and the presence of LIFO losses is irrelevant to the net gainer analysis. *See Armbruster v. Gaia, Inc.*, 2023 WL 2613817, at *2 (D. Colo. Mar. 23, 2023) (listing "the approximate losses suffered" separately from "the number of net shares purchased" and the "total net funds expended"). As explained in *Perlmutter*, "[t]he purpose of isolating the calculation of net sales and net gains to the Class Period is to determine whether a party potentially benefitted from the fraud.... This is not the same as determining whether a party lost or earned money trading in a particular stock." 2011 WL 566814, at *9. The authorities L&L cite to the contrary on reply (*see* ECF No. 35 at 8-10) do not establish that courts appoint net sellers who are also net gainers just because they sustain out-of-pocket losses. *See*, *e.g.*, *In re UTStarcom, Inc. Sec. Litig.*, 2010 WL 1945737, at *6 (N.D. Cal. May 12, 2010) (rejecting

shares than they purchased, due to Lamason's sell-off of pre-Class Period holdings for more than $2 million in proceeds.  ECF Nos. 34-1 at 2-4, and 33 at 12-13.  L&L also enjoyed a net gain of $601,311, with Lamason alone receiving net proceeds of $770,000.  ECF Nos. 34-1 at 28, and 33 at 6.  Baltimore Employees and RAD agree that appointing L&L raises unique defenses that may "become the focus of the litigation and distract from the more central class-wide issues."  *Id.* at 11.

Second, L&L's unusual trading patterns are also uniquely disqualifying.  ECF No. 34 at 11-12.  As demonstrated in Baltimore Employees' opposition, Lamason alone made 2,227 transactions in SSR Mining stock during the Class Period, including as many as 294 trades in a single day, and sold out 11 times.  ECF Nos. 34-1 and 34-2.  Courts have rejected movants engaging in similar "in-and-out" trading.[7]  *See Gurevitch v. KeyCorp*, 2023 WL 8890938, at *7 (N.D. Ohio Dec. 26, 2023) (rejecting movant whose "distracting factors," including "entirely exit[ing] his position *10 separate times*[,]" raised the "foreseeable *possibility*" of unique defenses) (emphasis in original).  As RAD agrees, the Court should deny L&L's motion given that Baltimore Employees "presents none of these distractions."  *Id.*; *see also* ECF No. 33 at 11.

### C.    Baltimore Employees Has Established that RAD Must Be Disqualified

Like L&L, RAD also faces infirmities that preclude its appointment.  As RAD purchased nearly all of its shares following the Copler Disaster disclosure, its appointment would expose the Class to unique defenses directed at RAD's investment decisions and reliance on the integrity of SSR Mining's stock price—an unnecessary distraction and drain on Class resources.  ECF No.

---

defendant's expert's argument that a method of loss calculation showing a profit—rather than a calculation of net shares sold and net proceeds received—rendered the plaintiff atypical).

[7] RAD also raises L&L's "in-and-out" trading as an impediment to its appointment.  ECF No. 33 at 6, 10-11.

34 at 7, 13-16.  Unlike Baltimore Employees (which purchased most of its shares before the Copler Disaster), RAD purchased 82% of its shares after the key disclosure in this case.  Courts find such substantial purchases are "disproportionately large" at the lead plaintiff and class certification stages, rendering movants like RAD atypical.

To begin, it is not in dispute that RAD purchased 782,000 shares, or 69% of its total shares, on the day of the Copler Disaster.  ECF No. 18-3 at 5-6.  Multiple courts have found such a percentage of total purchases exceeds the "disproportionately large" threshold, which raises unique defenses.  *See Erickson v. Snap, Inc.*, 2017 WL 11592635, at *3 (C.D. Cal. Sept. 18, 2017) (rejecting movant who bought more than 60% of his shares after revelation of fraud).  Courts considering post-disclosure purchases at the class certification stage have cited *Snap*'s 60% benchmark in assessing the typicality of proposed class representatives.  *See Milbeck*, 2019 WL 2353010, at *3 (comparing proposed class representative's percentage of post-disclosure purchases to *Snap*'s 60% figure); *Symantec*, 335 F.R.D. 276, 284 (same); *Karinski*, 2020 WL 6572660, at *4 (same).  RAD's total post-disclosure purchases of *82%* of its shares—the overwhelming majority—is well beyond the 60% mark and is comparable to the high levels courts find disqualifying.  *See Faris v. Longtop Fin. Techs. Ltd.*, 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) (disqualifying movant group whose members purchased 87% of their shares after first disclosure); *In re Hebron Tech. Co., Ltd. Sec. Litig.*, 2020 WL 5548856, at *6-7 (S.D.N.Y. Sept. 16, 2020) (disqualifying movant who "bought all his [shares] ... at almost precisely the same time that adverse news broke").[8]

---

[8] To the extent RAD attempts to argue losses it suffered from its pre-disclosure purchases alone surpass Baltimore Employees' loss, such arguments necessarily fail as the issue of its typicality—and the risk to the Class were its typicality to become a focus of the litigation— would still remain.  RAD does not satisfy Rule 23, which is true regardless of the size of its loss.

As a court found just last month when faced with arguments about the importance of alleged disclosures, there is no need to appoint a movant like RAD that would saddle the Class with the risk of unique defenses due to reliance issues that defendants can raise against RAD. *See Lemm v. New York Cmty. Bancorp, Inc.*, 2024 WL 2022213, at *7 (E.D.N.Y. May 7, 2024). RAD itself recognizes that appointing a movant subject to unique defenses exposes the Class to unnecessary risks. *See* ECF No. 33 at 11-12.[9] This is especially true when Baltimore Employees, the only qualified movant, is also an institutional investor. *See Lemm*, 2024 WL 2022213, at *7 (rejecting movant whose post-disclosure purchases posed "a *risk* of unique defenses," and appointing a pension fund that claimed a smaller loss, noting "a countervailing Congressional preference for institutional investors") (emphasis in original). Thus, RAD's motion must be rejected in the interests of the Class.

## III.    CONCLUSION

For the foregoing reasons, Baltimore Employees respectfully requests that the Court: (1) consolidate the Actions; (2) appoint Baltimore Employees as Lead Plaintiff; (3) approve Baltimore Employees' selection of counsel; and (4) deny all competing motions.

Dated:  June 21, 2024                              Respectfully submitted,

                                                   */s/ Rusty E. Glenn*
                                                   Rusty E. Glenn (39183)
                                                   SHUMAN, GLENN & STECKER
                                                   600 17th Street, Ste. 2800 South
                                                   Denver, CO 80202

---

*See id.* at *8 n.8 (rejecting post-disclosure purchaser's argument that it still had the largest loss even excluding post-disclosure purchases where movant did not address "why, at a trial, his post-disclosure purchases would not be fodder for the defense's claim that none of his purchases ... were made in reliance on [company's] alleged misrepresentations or omissions.").

[9] It also is not in dispute that RAD sold 90,000 shares on the same day it purchased its 782,000 shares following the Copler Disaster. *See* ECF No. 34 at 13 n.8.

Telephone: (303) 861-3003
Facsimile: (303) 536-7849
rusty@shumanlawfirm.com

*Proposed Liaison Counsel for the Class*

**SAXENA WHITE P.A.**
Maya Saxena
Lester R. Hooker
7777 Glades Road, Suite 300
Boca Raton, FL 33434
Telephone: (561) 394-3399
Facsimile: (561) 394-3382
msaxena@saxenawhite.com
lhooker@saxenawhite.com

-and-

Marco A. Dueñas
10 Bank Street, Suite 882
White Plains, New York 10606
Telephone: (914) 437-8551
Facsimile: (888) 631-3611
mduenas@saxenawhite.com

*Counsel for Proposed Lead Plaintiff the
Employees' Retirement System of the City of
Baltimore, and Proposed Lead Counsel for
the Class*

## CERTIFICATION OF TYPE-VOLUME LIMITATIONS

I hereby certify that the foregoing response complies with the type-volume limitation set

forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Rusty E. Glenn*
Rusty E. Glenn (39183)

9

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 21st day of June, 2024, I caused to be electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all registered participants.

/s/ Rusty E. Glenn
Rusty E. Glenn (39183)

10