**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Consolidated Civil Action No. 1:24-cv-00739-DDD-TPO

KARAM AKHRAS, Individually and on
behalf of all others similarly situated,

      Plaintiff,

v.

SSR MINING INC.,
RODNEY P. ANTAL, and
ALISON WHITE,

      Defendants.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

---

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................iii

PRELIMINARY STATEMENT .................................................................................. 1

STATEMENT OF FACTS ........................................................................................... 3

     A.    SSR Mining And Its Çöpler Mine ................................................... 3

     B.    Mining Operations Must Monitor Heap Stability To Mitigate
         The Risk Of Landslides ................................................................. 4

     C.    During The Class Period, Defendants Issued Materially
         False And Misleading Statements And Omissions Regarding
         The Company's Safety Equipment And Attendant Risks............ 5

     D.    The Truth About SSR Mining's Deficient Safety Systems Emerges
         When Çöpler Operations Are Suspended Following A Landslide
         Trapping Miners ............................................................................ 7

ARGUMENT .............................................................................................................. 9

   I.    APPLICABLE LEGAL STANDARDS DISFAVOR DEFENDANTS'
      MOTION ...................................................................................................... 9

  II.    THE COMPLAINT ALLEGES MATERIALLY FALSE AND
      MISLEADING STATEMENTS............................................................... 10

     A.    Falsity Has Been Pled With Sufficient Particularity................. 10

     B.    Materiality Is Inappropriate For Resolution At The
         Pleading Stage ............................................................................. 11

     C.    Statements Regarding SSR Mining's Equipment To
         Ensure Employee Safety Are Actionable.................................... 13

     D.    Risks Purportedly Outside The Company's Control Were
         Materially Misleading ................................................................. 17

i

E.     Risks To The Company's Permits Were Materially
Misleading ............................................................................... 20

F.     The Safe Harbor Does Not Apply .............................................. 20

III.     THE COMPLAINT ALLEGES A STRONG INFERENCE OF
SCIENTER ........................................................................................ 22

A.     Defendants Knew, Or Were Reckless In Not Knowing,
About Equipment and Safety At Çöpler Because It Was
A Material Part Of SSR Mining's Business................................ 23

B.     The Individual Defendants Were Responsible For
Regularly Monitoring The Company's Safety Practices,
Supporting Scienter .................................................................... 26

C.     The Individual Defendants Ignored Red Flags From Prior
Safety Incidents .......................................................................... 28

D.     The Balance Of Inferences Supports Scienter............................ 29

E.     Motive Is Not Required ............................................................... 31

IV.     THE COMPLAINT ADEQUATELY PLEADS LOSS
CAUSATION...................................................................................... 32

CONCLUSION.................................................................................................. 36

# TABLE OF AUTHORITIES

**Cases**

*Abady v. Lipocine Inc.*,
 2023 WL 2938210 (D. Utah Apr. 13. 2023) ........................................................ 33

*Adams v. Kinder-Morgan, Inc.*,
 340 F.3d 1083 (10th Cir. 2003) .................................................................... 10, 31

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
 532 F. Supp. 3d 189 (E.D. Pa. 2021) .................................................................. 14

*Allison v. Oak St. Health, Inc.*,
 2023 WL 1928119 (N.D. Ill. Feb. 10, 2023) ........................................................ 18

*Anderson v. Spirit Aerosystems Holdings, Inc.*,
 827 F.3d 1229 (10th Cir. 2016) ........................................................................... 23

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007). ........................................................................................... 10

*Better v. YRC Worldwide Inc.*,
 2012 WL 4433500 (D. Kan. Sept. 25, 2012). ...................................................... 32

*Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
 866 F. Supp. 2d 223 (S.D.N.Y. 2012) ................................................................. 15

*Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*,
 2013 WL 5423875 (D. Idaho Sept. 26, 2013) ...................................................... 29

*City of Phila. v. Fleming Cos.*,
 264 F.3d 1245 (10th Cir. 2001). .......................................................................... 28

*Connett v. Justus Enter. Of Kan., Inc.*,
 68 F.3d 382 (10th Cir. 1995). .............................................................................. 12

*Dura Pharm., Inc. v. Broudo*,
 544 U.S. 336 (2005) ............................................................................................. 32

*El Paso Firemen & Policemen's Pension Fund v. InnovAge Holding Corp.*,
 709 F. Supp. 3d 1296 (D. Colo. 2023). ........................................................ 10, 19

*Exkae Ltd. v. Domo, Inc.*,
 2020 WL 7352735 (D. Utah Dec. 15, 2020).. ..................................................... 18

iii

*Firefighters Pension and Ret. Sys. v. Lexmark Int'l, Inc.*,
  367 F. Supp. 3d 16 (S.D.N.Y. 2019)........................................................................... 12

*Galestan v. OneMain Holdings, Inc.*,
  348 F. Supp. 3d 282 (S.D.N.Y. Dec. 12, 2018)....................................................... 14

*Grossman v. Novell, Inc.*,
  120 F.3d 1112 (10th Cir. 1997) ............................................................................... 12

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  573 U.S. 258 (2014) ..................................................................................................... 9

*Heiner v. Watford*,
  2022 WL 18777077 (D. Colo. Nov. 21, 2022)......................................................... 36

*IBT Employer Grp. Welfare Fund v. Compass Minerals Int'l, Inc.*,
  706 F. Supp. 3d 1225 (D. Kan. 2023)....................................................... 25, 26, 27

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) ..................................................................................... 25

*In re Barrick Gold Corp. Sec. Litig.*,
  341 F. Supp. 3d 358 (S.D.N.Y. 2018) ............................................................... 16, 26

*In re BP p.l.c. Sec. Litig.*,
  843 F. Supp. 2d 712 (S.D. Tex. 2012) ..................................................................... 17

*In re Crocs, Inc. Sec. Litig.*,
  774 F. Supp. 2d 1122 (D. Colo. 2011) ..................................................................... 27

*In re Grab Holdings Ltd. Sec. Litig.*,
  2024 WL 1076277 (S.D.N.Y. Mar. 12, 2024) ......................................................... 18

*In re Massey Energy Co. Sec. Litig.*,
  883 F. Supp. 2d 597 (S.D.W. Va. 2012) ................................................................. 15

*In re Molycorp, Inc. Sec. Litig.*,
  157 F. Supp. 3d 987 (D. Colo. 2016) ....................................................................... 24

*In re Myriad Genetics, Inc.*,
  2021 WL 977770 (D. Utah Mar. 16, 2021) ....................................................... 29, 30

*In re Norfolk S. Corp. Bond/Note Sec. Litig.*,
  2024 WL 3579096 (S.D.N.Y. July 26, 2024).......................................................... 14

*In re Peabody Energy Corp. Sec. Litig.*,
2022 WL 671222 (S.D.N.Y. Mar. 7, 2022) .......................................................... 15

*In re Qwest Commc'ns Int'l, Inc.*,
396 F. Supp. 2d 1178 (D. Colo. 2004) ................................................................. 36

*In re Sandridge Energy, Inc. Sec. Litig.*,
2017 WL 3317862 (W.D. Okla. Aug. 1, 2017)..................................................... 27

*In re Sibanye Gold Ltd. Sec. Litig.*,
2020 WL 6582326 (E.D.N.Y. Nov. 10, 2020) ................................................ 11, 13

*In re Vale S.A. Sec. Litig.*,
2017 WL 1102666 (S.D.N.Y. Mar. 23, 2017) ....................... ........................15, 21

*In re Vale S.A. Sec. Litig.*,
2020 WL 2610979 (E.D.N.Y. May 20, 2020) ....................................................... 33

*In re Williams Sec. Litig.*,
339 F. Supp. 2d 1206 (N.D. Okla. 2003).............................................................. 22

*Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*,
45 F.4th 1236 (10th Cir. 2022) ................................................................. 9, 19, 22

*Jun Zhang v. LifeVantage Corp.*,
2017 WL 2599883 (D. Utah June 15, 2017) ....................................................... 11

*Kessman v. Myriad Genetics, Inc.*,
2019 WL 1330363 (D. Utah Mar. 25, 2019) ....................................................... 34

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ............................................................................... 35

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011) ............................................................................................... 11

*Medina v. Clovis Oncology, Inc.*,
215 F. Supp. 3d 1094 (D. Colo. 2017) ............................................................. 9, 19

*Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*,
79 F.4th 1209 (10th Cir. 2023) ........................................................................... 27

*Meyer v. Jinkosolar Holdings Co., Ltd.*,
761 F.3d 245 (2d Cir. 2014)........................................................................... 17, 18

*MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*,
   761 F.3d 1109 (10th Cir. 2014) ............................................................................. 31

*Nakkhumpun v. Taylor*,
   782 F.3d 1142 (10th Cir. 2015) ............................................................................. 32

*Nardy v. Chipotle Mexican Grill, Inc.*,
   2019 WL 3297467 (D. Colo. Mar. 29, 2019) .................................................. 13, 34

*Oklahoma Police Pension & Ret. Sys. v. Boulder Brands, Inc.*,
   2017 WL 1148689 (D. Colo. Mar. 28, 2017) ........................................................ 11

*Or. Laborers Emp'rs.' Pension Tr. Fund v. Maxar Techs. Inc.*,
   2020 WL 5500458 (D. Colo. Sept. 11, 2020) ....................................... 28, 30, 32, 35

*Patel v. Koninklijke Philips N.V.*,
   2024 WL 4265758 (E.D.N.Y. Sept. 23, 2024) ....................................................... 14

*Schaffer v. Evolving Sys., Inc.*,
   29 F. Supp. 2d 1213 (D. Colo. 1998) .................................................................... 22

*Smallen v. W. Union Co.*,
   950 F.3d 1297 (10th Cir. 2020) ...................................................................... 28, 32

*South Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ................................................................................ 25

*In re Sprint Corp. Sec. Litig.*,
   232 F. Supp. 2d 1193 (D. Kan. 2002).................................................................... 21

*TDC Lending LLC v. Priv. Cap. Grp., Inc.*,
   340 F. Supp. 3d 1218 (D. Utah 2018) ................................................................... 27

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ...................................................................................... 23, 31

*Touchtone Grp., LLC v. Rink*,
   913 F. Supp. 2d 1063 (D. Colo. 2012) .................................................................. 24

*TSC Indus., Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976) .......................................................................................... .11

*Voulgaris v. Array Biopharma Inc.*,
   2020 WL 8367829 (D. Colo. Nov. 24, 2020)............................................. 20, 28, 31

*Wilbush v. Ambac Fin. Grp., Inc.*,
    271 F. Supp. 3d 473 (S.D.N.Y. 2017) ................................................................... 18

*Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*,
    426 F. Supp. 3d 864 (D. Kan. 2019).................................................... 22, 25, 27, 30

**Statutes**

15 U.S.C. § 78u-4. ...................................................................................................... 22

15 U.S.C. § 78u-5. ...................................................................................................... 20

## PRELIMINARY STATEMENT

SSR Mining Inc. ("SSR Mining" or the "Company") is a mining company, and investors expect that statements regarding its core asset would be truthful and reliable.[1]  Defendants make a series of predictable responses to a securities class action complaint, but this is not a case with technical accounting principles.  This is a case involving material misstatements and omissions that go to the heart of its business.  It is implausible that the senior executives were not aware of what was occurring at its most important asset, its gold mine in Turkey, and of the failure to take precautions to protect the safety of its miners.

The mine at issue was purchased in 2020 as part of a merger and no doubt, in connection with the merger, due diligence was performed with respect to all of the nuances of doing business and operating a mine in Turkey.  Defendants tout their knowledge of the industry but claim not to know the nitty gritty of the operation and safety of the mine.  They cannot have it both ways.  This mine accounted for greater than 40% of SSR Mining's net global revenue in 2021.  Defendants claimed to have "effective" safety mechanisms but, in reality, their procedures were woefully

---

[1]    " ¶__" refers to the Corrected Consolidated Amended Class Action Complaint (the "Complaint," ECF 61-1), and "MTD" refers to Defendants' Motion to Dismiss Consolidated Amended Class Action Complaint (the "Motion," ECF 60). "Plaintiff" refers to Lead Plaintiff RAD Investment LLC, and "Defendants" refers to SSR Mining, its Chief Executive Officer Rodney P. Antal ("Antal"), and its Chief Financial Officer Alison White ("White").

inadequate and did not meet industry standards. What occurred at their key mine was in their control and foreseeable. Yet, nine people died.

For purposes of this motion, what Defendants profess to know presents a question of fact, but they have not and cannot establish as a matter of law that their statements were truthful and complete. Significantly, there was no natural disaster that contributed to the landslide that caused the shutdown of the mine. This undermines their arguments regarding the language in their public filings that they cling to. Also, that the Turkish authorities were so suspicious of what occurred that they detained 8 mine employees undermines their argument. Six were eventually criminally charged. They cannot distance themselves from these facts.

Of note are the detailed findings in the reported prepared by the investigators for the Turkish prosecutor. As detailed below and in the Complaint, it found numerous deficiencies at the mine, including insufficient monitoring, inadequate warning systems, and a lack of effective management. Pictures of large cracks were circulated on social media, but no one had bothered to notice that the heap had displaced at a rate warranting evacuation. The report also confirmed that the landslide was not triggered by a natural disaster, bolstering plaintiff's allegation that what occurred was within the company's control. These are not Plaintiff's version of the facts but an independent finding. Defendants say these findings are preliminary. That is a hedge, but it is also not an issue that can be resolved on a motion to dismiss.

2

All told, at the end of the Class Period, the stock dropped from $9.72 to $4.29, or 56%. The stock price has hardly rebounded. This is another fact which undermines many of Defendants' arguments.

Despite the length of their brief, Defendants have not established that they are entitled to dismissal as a matter of law at the pleading stage. The Complaint easily satisfies the requirements of pleading fraud with particularity by identifying the misstatements and omissions, why they are misleading or should have been stated, and alleges the facts upon which that belief is based. Defendants' attempt to raise materiality on a pleading motion is misguided as it is inappropriate consideration at this stage of the litigation. Their *scienter* and loss causation arguments also ignore the facts as pled and their legal authorities easily distinguished.

For all the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss and allow discovery to proceed forthwith.

## STATEMENT OF FACTS

This is a class action on behalf of investors who purchased or otherwise acquired SSR Mining securities between February 23, 2022 and February 27, 2024, inclusive ("Class Period") and were damaged thereby.

### A.    SSR Mining And Its Çöpler Mine

SSR Mining is a precious metals mining company whose largest asset is Çöpler, a gold mine located in eastern Turkey near the Euphrates River. ¶21. Çöpler was acquired by SSR Mining in September 2020 in a merger-of-equals with Alacer

3

Gold Corp. ("Alacer"), whose predecessor entity had first identified gold-copper prospects in the basin in 1998. ¶¶23, 25. By December 2021, SSR Mining received permits and approvals to expand its operations in Turkey. ¶29.

Çöpler accounted for greater than 40% of SSR Mining's net global revenue in 2021. ¶2. Several market analysts estimated that Çöpler alone accounted for up to 45% of SSR Mining's overall operating net asset value. ¶115.

## B. Mining Operations Must Monitor Heap Stability To Mitigate The Risk Of Landslides

To extract gold from the metal-bearing rock, SSR Mining uses open pit mining and a leaching technique at a heap leach pad. ¶27. On the heap, pulverized ore is leached with a cyanide solution to dissolve valuable minerals such as gold for further processing filtration at the base. ¶27. The heap contains 13 layers of ore, each 8 meters thick; it takes more than two years to extract the majority of the valuable minerals from the heap. ¶2.

There is a significant risk of landslide due to the leaching process to extract gold at the mine. Open-pit mining erodes the surrounding land, which can exacerbate land erosion through increased exposure to rainfall and leaching. ¶106. This erosion, in turn, renders the slope of the heap unstable and can result in landslides. *Id.* Mining is among the top human-triggered causes of landslides. *Id.* In fact, several recent mining incidents globally have been caused by excessive rainfall, flash floods, and a loss of sensitivity in heap leaches. *Id.*

4

To mitigate the risk of landslides, mining companies like SSR Mining are required to implement systems to monitor the stability of the heap. ¶108. These include: (i) topographic monitoring, which uses precise GPS sensors to detect millimetric movements on the heap's surface and regularly maps mining sites to determine potential landslide areas; (ii) geotechnical monitoring, which uses an inclinometer to track movements inside the heap and sliding surfaces, a piezometer to track the heap's internal water pressure, and a deformation meter to monitor and track the heap's internal regression and deformation; (iii) remote monitoring, which uses light detection and ranging to monitor changes on the surface of the heap; and (iv) a system for collection and analysis of the aforementioned monitoring data. *Id.*

> C. **During The Class Period, Defendants Issued Materially False And Misleading Statements And Omissions Regarding The Company's Safety Equipment And Attendant Risks**

During the Class Period, Defendants claimed that the Company maintained "effective safety and health management systems," which "emphasize[d] effective risk-centered management systems." ¶¶78, 80. They also claimed to have "appropriate equipment" including at Çöpler. ¶¶79, 81. These statements omitted that SSR Mining lacked key systems at the Çöpler mine to monitor the movement and displacement of heap and, as a result, was ill-equipped to respond to emergencies such as landslides at the heap leach pad. ¶83. The Expert Committee Report commissioned by Turkish prosecutors ("Expert Committee Report") found that

tension in pore water was not monitored, measuring instruments were not placed sufficiently, and there was no centralized data collection and analysis. ¶¶109-112.

Defendants claimed that "failure of mining pit slopes" and "landslides" were "beyond the Company's control." ¶¶87-88. These statements omitted that the heap leach pad at the Çöpler mine was significantly higher than industry norms, which made the heap slope unstable. ¶54. As a February 21, 2024 article reported, Çöpler's heap leach pad was 70% taller than the maximum standard, so it was "above the 'controllable level.'" *Id.* Though the industry norm is a maximum of 150 meters high, the article reported that the Çöpler leach pad was 257 meters high. *Id.* Moreover, the Company lacked the systems to monitor the movement and displacement of the heap. ¶¶108-109. These were all foreseeable factors *within* the Company's control that contributed to a risk of landslides. ¶89.

Defendants claimed that permits and approvals "may be suspended or revoked" including because of "real or perceived detrimental events" associated with mining. ¶¶84-85. These statements were misleading because they described vague "detrimental events" when, in fact, Çöpler failed to comply with several industry standards (*e.g.*, the heap leach pad was too high and Çöpler lacked any monitoring systems) that created a significant risk that its permits would be suspended. ¶86.

6

**D.     The Truth About SSR Mining's Deficient Safety Systems Emerges When Çöpler Operations Are Suspended Following A Landslide Trapping Miners**

On February 13, 2024, before the market opened, SSR Mining announced that Çöpler operations were suspended due to a landslide. ¶41. The landslide brought a complete halt to SSR Mining's gold production in Turkey. ¶42. Four hundred search and rescue workers were dispatched to locate nine missing SSR Mining miners, and the Turkish Interior Department immediately launched an investigation. *Id.* The landslide proved so consequential that on the same day Türkiye's Energy Minister, Alparslan Bayraktar, announced he was returning immediately from an overseas trip with Türkiye's President, Recep Tayyip Erdogan, in order to "closely coordinate the rescue work" at Çöpler. *Id.* On this news, SSR Mining's stock fell 53.7%. ¶44.

Analysts found it would impact the Company's "social license in Turkey, as well as management credibility." ¶46. The suspension of operations could also impact expansion of the mine, and the Company's future prospects were called into doubt because SSR Mining was "highly dependent on growth assets in Türkiye." ¶45.

Eight of SSR Mining's employees, including SSR Mining's Senior Vice President of Operations and Country Manager for SSR Mining's Turkey operations Cengiz Yalçin Demirci, were detained as part of the government's ongoing investigation. ¶47. That Company employees were questioned highlights that this was not simply a natural disaster. That weekend, on Sunday, February 18, 2024, SSR Mining announced that its environmental permit had been revoked by the

7

Turkish Ministry of Environment, Urbanization, and Climate Change, and that its Çöpler operations would remain suspended "until further notice." ¶49. Before the market opened on Tuesday, February 20, 2024, SSR Mining announced the postponement of its full year 2023 financial results, and that search and rescue operations were temporarily suspended in order to "focus on stabilization of the heap leach area." ¶51. Analysts wondered whether the Çöpler operation would ever resume operations, and multiple analysts removed the Çöpler mine from their valuations of SSR Mining completely. ¶52. Indeed, RBC Capital Markets concluded that it was "prudent to assume that at a minimum, investors will have little visibility into realizing *any value* for SSR Mining's Turkish assets for an extended period (*if ever*), with significant risk of costs, fines, legal and environmental liabilities beyond the $200m we currently model through 2026." *Id.* On this news, the stock fell another 5.91%. ¶53.

On February 27, 2024, after the market closed, SSR Mining retracted its guidance for the Çöpler mine due to the indefinite suspension of operations. ¶55. Simultaneously, SSR Mining filed its fiscal 2023 annual report on Form 10-K, which stated, in part, that six SSR Mining employees were criminally charged by the Turkish government "directly related to actions on the day of the Çöpler Incident." ¶57. The stock fell 7.94%. ¶61.

The heap leach pad was permanently closed, and the Company incurred a $114.2 million impairment charge. ¶63. The plans to remediate impact of the 18-20

8

million tonnes of heap leach material that had been displaced was expected to cost between $250-300 million. ¶64.

The investigation and prosecutor commissioned Expert Committee Report, which found "multiple errors" at SSR Mining's Çöpler site including: (i) insufficient monitoring during the operation phase; (ii) inadequate warning systems; and (iii) the lack of an effective management system to act upon the warning signs of cracks. ¶71. The Expert Committee Report specifically concluded that the landslide was **not** triggered by a natural disaster, further highlighting that it was well within SSR Mining's control. ¶72.

## ARGUMENT

### I. APPLICABLE LEGAL STANDARDS DISFAVOR DEFENDANTS' MOTION

To state a claim, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014). "Notwithstanding [the] heightened pleading standard [set by the PSLRA], courts must, as with any motion to dismiss for failure to plead a claim upon which relief can be granted, accept all factual allegations in the complaint as true," *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1248 (10th Cir. 2022), "and draw all reasonable inferences in the plaintiff's favor," *Medina v. Clovis Oncology, Inc.*, 215 F. Supp. 3d

1094, 1100 (D. Colo. 2017).  Plausible basis for relief "does not impose a probability requirement" but "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" securities fraud.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Plaintiff can satisfy that standard.[2]

## II. THE COMPLAINT ALLEGES MATERIALLY FALSE AND MISLEADING STATEMENTS

### A. Falsity Has Been Pled With Sufficient Particularity

"The PSLRA requires that a plaintiff plead falsity by specifying each allegedly misleading statement, the reason why the statement is misleading, and, if made on information and belief, all facts on which that belief is formed."  *El Paso Firemen & Policemen's Pension Fund v. InnovAge Holding Corp.*, 709 F. Supp. 3d 1296, 1325 (D. Colo. 2023).  The Complaint identifies the allegedly misleading statements (¶¶78-82, 84-85, 87-88); states why they are misleading (¶¶83, 86, 89); and alleges the facts upon which that belief is based (*e.g.*, ¶¶ 49, 54, 71-77).  Thus, the Complaint adequately pleads falsity with particularity.  *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1103-05 (10th Cir. 2003) (complaint that "adequately puts the defendants on notice of the substance of the plaintiffs' claims . . . deserves to proceed to the next stage of litigation").

Defendants want more, claiming that they do not know which aspects of the block quotes are misleading.  MTD at 13 n.3.  The Complaint identifies the allegedly

---

[2]    Unless otherwise stated, internal citations and quotations are omitted, and all emphasis is added.

misleading aspects of the statements in bold, which is sufficient.  *Jun Zhang v. LifeVantage Corp.*, 2017 WL 2599883, at \*3 (D. Utah June 15, 2017) ("bold lettering . . . mak[es] it possible for Defendants and the Court to isolate the challenged statements").[3]  Defendants argue that certain statements are cited in the section of the Complaint regarding challenged statements but not alleged to be false or misleading.  MTD at 11 n.2.  That was a scrivener's error, which has been corrected. *See* ECF 61 (Notice of Errata).

**B.    Materiality Is Inappropriate For Resolution At The Pleading Stage**

Defendants incorrectly urge that the alleged misstatements and omissions were not misleading in light of the context in which they were made.  MTD at 11-12. This is a question of materiality, which is a fact-intensive inquiry reserved for the trier of fact.  *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976); *see generally Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011) (Statement is material if "there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.").  It can be "resolved as a matter of law when the information is so obviously important or unimportant to an investor, that reasonably

---

[3]    Defendants' cases are distinguishable.  *In re Sibanye Gold Ltd. Sec. Litig.*, 2020 WL 6582326, at \*14 (E.D.N.Y. Nov. 10, 2020) (complaint lacked "facts as to which, how and why statements" were misleading); *Oklahoma Police Pension & Ret. Sys. v. Boulder Brands, Inc.*, 2017 WL 1148689, at \*3 (D. Colo. Mar. 28, 2017) (theory of falsity was "diffuse").

minds cannot differ on the question of materiality." *Connett v. Justus Enter. Of Kan., Inc.*, 68 F.3d 382, 384 (10th Cir. 1995).

Given the importance of miner safety, environmental permits to operate Çöpler, and the significant revenue generated by Çöpler, investors would have wanted to know that SSR Mining did not monitor heap leach pad displacement in real-time to allow for early evacuation and that the heap was significantly higher than industry norms. ¶106 (mining erodes land, leading to devastating landslides); *see also* ¶60 (risks that other project permits would be revoked). These omitted facts would inform investors of the risk of landslide at Çöpler and the adequacy of the Company's risk mitigation efforts, which are material. *See Okla. Firefighters Pension and Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 31 (S.D.N.Y. 2019) ("literally true" statements actionable because "investors would have wanted to know that Lexmark's [European] channel inventory had swollen to unusual levels"). Nine miners died, and investors would have cared that SSR Mining did devote resources to monitor heap displacement and quickly evacuate the area at the first sign of trouble.

Defendants point to the general risks of landslides, equipment failures, and potential revocation of permits. MTD at 12. But this is not enough to overcome the misstatements cited in the Complaint. Defendants' authorities involved "highly specific, very factual" statements that "directly address[ed]" the alleged wrongdoing. *See Grossman v. Novell, Inc.*, 120 F.3d 1112, 1121 (10th Cir. 1997) (challenged

12

statements "specifically disclosed that revenues would tend to fluctuate following the merger"); *Sibanye*, 2020 WL 6582326, at \*14-16 (no omission where defendants had implemented safety program that reduced miner fatalities); *Nardy v. Chipotle Mexican Grill, Inc.*, 2019 WL 3297467, at \*17 (D. Colo. Mar. 29, 2019) ("specific instances of outbreaks" were immaterial where company had disclosed "significant" negative impact of even unsubstantiated reports).   Here, none of Defendants' statements disclosed what SSR Mining's systems purportedly existed to mitigate the risk of landslide.  *E.g.*, ¶79 (noting only that it was "specialized and sophisticated"). It is inconsistent for Defendants to claim that "health and safety" issues were specific enough to constitute adequate disclosure and simultaneously suggest they are too general to be misleading. *Compare* MTD at 12 ("SSR repeatedly disclosed . . . 'health and safety' risks")*, with* MTD at 13-15 (health and safety statements are "largely generalized," thus inactionable puffery).   Thus, materiality cannot be decided as a matter of law.

C.     **Statements Regarding SSR Mining's Equipment To Ensure Employee Safety Are Actionable**

Defendants represented that SSR Mining had "effective safety and health management systems" and "emphasize[d] pits] effective risk-centered management systems" that "enable the Company's employees to identify and assess job-related risks."  ¶¶78, 80; *see also* ¶79 ("high specialized and sophisticated equipment"), ¶81 ("appropriate equipment, effective communication"). Contrary to Defendants' representations, SSR Mining lacked effective monitoring and systems at Çöpler to

13

track heap displacement. ¶¶109-112. The heap had been displaced at rates suggesting the area was unstable, but the lack of centralized data collection and analysis prevented Company employees from acting in accordance with an emergency response plan. ¶¶110-11. Thus, miners were not timely evacuated once a crack in the heap had formed. ¶¶74-75.

These omissions render Defendants' statements regarding safety and health systems actionable. *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 218-19 (E.D. Pa. 2021) ("commitment" to "safety" misleading "based on the flouting of regulations and consequent environmental disasters"). Claiming that safety systems were "effective" gave investors comfort when, in fact, SSR Mining lacked the ability to act timely and mitigate the risk of landslide. *Patel v. Koninklijke Philips N.V.*, 2024 WL 4265758, at \*11 (E.D.N.Y. Sept. 23, 2024) ("statements about compliance, quality, and safety" actionable where ongoing complaints suggested "potential safety issue"). These safety failures were compounded because the heap was significantly higher than industry norms. ¶54 (heap leach was 257 meters, higher than the maximum of 150 meters, which exacerbated disaster); *In re Norfolk S. Corp. Bond/Note Sec. Litig.*, 2024 WL 3579096, at \*16 (S.D.N.Y. July 26, 2024) ("safety commitments, though "not a guarantee," misleading where alleged facts suggested operations were "less safe and more risky") (emphasis omitted).

These statements are also not puffery, another often used argument to avoid liability in securities cases. *Cf.* MTD at 15-16; *Galestan v. OneMain Holdings, Inc.*,

348 F. Supp. 3d 282, 297-98 (S.D.N.Y. Dec. 12, 2018) ("Puffery is an optimistic statement that is so vague, broad, and non-specific that a reasonable investor would not rely on it, thereby rendering it immaterial as a matter of law."). Defendants claimed that SSR Mining had "effective" and "appropriate" safety systems, which is *verifiable. See, e.g., In re Massey Energy Co. Sec. Litig.*, 883 F. Supp. 2d 597, 618 (S.D.W. Va. 2012) (safety was "first priority every day" was not puffery because its veracity can be determined and "Defendants closely aligned their statements of commitment to safety to their productivity and success as a company"); *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 243-44 (S.D.N.Y. 2012) (omission of inadequate safety and training measures was not puffery because investors would be "greatly concerned" given "an industry as dangerous as deepwater drilling"). The statements cited in Defendants' authorities are more generalized. *See In re Peabody Energy Corp. Sec. Litig.*, 2022 WL 671222, at *13 (S.D.N.Y. Mar. 7, 2022) ("Safety is essential to everything we do."); *In re Vale S.A. Sec. Litig.*, 2017 WL 1102666, at *22 (S.D.N.Y. Mar. 23, 2017) (company "committed to achieving the highest possible health and safety standards").

The statements were false when made. Defendants do not (and cannot) claim that SSR Mining had the requisite monitoring systems at any time during the Class Period. *See* MTD at 16-18. Rather, Defendants claim that there is no suggestion they were "not actually committed to the safety of its workers." MTD at 17. That argument begs the question and mischaracterizes Plaintiff's allegations; the

15

Complaint challenges the concrete *representations about the effectiveness* of SSR Mining's equipment to identify and mitigate mining risks. *See* ¶78 ("The Company's safety framework emphasizes effective risk-centered management systems"), ¶79 (emergency preparedness at Çöpler reflected by "appropriate equipment, effective communication"). Even if Plaintiff's allegations relied on Defendants' purported commitment to the safety of its mine's workers, the lack of adequate monitoring systems and centralized data collection and analysis suggest that the Company was *not* committed to safety.[4]

Defendants then attempt, as a hail mary, to undermine the significance of the Expert Committee Report as being only an "initial review." MTD at 18 & n.6. This ignores the very basic precept that the Court must accept the facts as true and draw inferences in Plaintiff's favor at this stage. All their arguments point to issues that can only be resolved by a fact finder at the appropriate time. For example, Defendants claim that employees' awareness of a crack suggests "they must have been 'monitoring' the heap." MTD at 18. That self-serving *interpretation* of the Report's finding is contrary to the Complaint,[5] dubious at best but hardly an

---

[4]    This distinguishes from Defendants' cited case. *In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 371 (S.D.N.Y. 2018) ("Plaintiffs do not argue that these remedial measures were not in fact taken").

[5]    Data in the weeks preceding the landslide should have led to "red warning" actions by SSR Mining's own standards, if Defendants had actually monitored it. ¶¶107, 111.

argument that establishes that the Complaint should be dismissed as a matter of law at the pleading stage.

**D.    Risks Purportedly Outside The Company's Control Were Materially Misleading**

The omission of the abnormal height of Çöpler's heap leach pad rendered misleading Defendants' representation of the "failure of mining pit slopes" and "landslides" as "events beyond the Company's control."    ¶¶54, 87-88; *Meyer v. Jinkosolar Holdings Co., Ltd.*, 761 F.3d 245, 251 (2d Cir. 2014) ("One cannot, for example, disclose in a securities offering a business's peculiar risk of fire, the installation of a comprehensive sprinkler system to reduce fire danger, and omit the fact that the system has been found to be inoperable, without misleading investors."). According to scientists from Trabzon Karadeniz Technical University Landslide Application and Research Center, the height of the heap leach was above the "controllable level" because it reached 257 meters, above the maximum industry standard of 150 meters. ¶54. The scientists posited that the construction of the heap leach was "the primary driver[] behind the (land) movement's acceleration and the exacerbation of the disaster." *Id.* This is corroborated by the Expert Committee Report, which concluded that the landslide could not have been triggered by a natural disaster. ¶72. Thus, Defendants omitted material facts relevant for investors to assess the probability of a landslide. *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 762-63 (S.D. Tex. 2012) (company misled "as to its risk exposure in its Gulf operations" by overstating the rate of recovery following oil spill).    And it is

17

Defendants who, by their statements, opened the inquiry into the veracity of the statements.

Defendants complain that the omitted facts are "highly specific," MTD at 20-21, but it is well-settled that "a generic warning will not suffice when undisclosed facts on the ground would substantially affect a reasonable investor's calculations of probability." *Jinkosolar*, 761 F.3d at 251. These "facts" are essential to mine operations and its attendant risks. Once Defendants chose to speak about landslides, *they* put the topic "in play" and had a "duty to tell the whole truth." *In re Grab Holdings Ltd. Sec. Litig.*, 2024 WL 1076277, at *15 (S.D.N.Y. Mar. 12, 2024) (by discussing "the importance of incentives in attracting drivers," defendants had duty to disclose increases in partner incentives to combat ongoing driver shortages). The abnormal height of Çöpler's heap leach pad increased the risk of landslide, thus warranted disclosure. *Allison v. Oak St. Health, Inc.*, 2023 WL 1928119, at *7 (N.D. Ill. Feb. 10, 2023) (anti-kickback statute compliance misleading by omitting that company paid agents on a per-patient basis, which increased risk of regulatory scrutiny).

Unlike in Defendants' cited authorities, Defendants failed to disclose material information necessary for investors to assess the disclosed risk of investing in SSR Mining. *Exkae Ltd. v. Domo, Inc.*, 2020 WL 7352735, at *7 (D. Utah Dec. 15, 2020) ("unclear what more Plaintiffs believe Domo should have said regarding risk factors") (MTD at 20); *Wilbush v. Ambac Fin. Grp., Inc.*, 271 F. Supp. 3d 473, 493 (S.D.N.Y.

18

2017) (risk of Puerto Rico's default was common knowledge) (MTD at 21). Defendants' risk statements cast certain factors as "beyond the Company's control" when, in fact, the height of the leach pad, a key component, was within the Company's control and was built above industry levels, thereby threatening the safety of its employees and nearby residents. *InnovAge*, 709 F. Supp. 3d at 1335 (omission of facts concerning adequacy of patient care, which could "literally cap revenue in a business's largest segment," actionable).[6]

Defendants' argument that the risk disclosures that were made were specific and thorough is unconvincing. MTD at 21. The disclosure of a cyanide leak does nothing to warn investors that Çöpler's heap leach pad was too tall, that the continued use of cyanide would further undermine the structural integrity of the heap, or that the mining site lacked adequate systems to monitor heap displacement to mitigate the risk of landslide. Defendants dispute that the heap was "higher than standard" (MTD at 21), also raising a question of fact, but the Complaint's allegation relies on a news report citing local scientists and is corroborated by the Expert Committee Report, which is sufficient for purposes of a pleading unless definitively refuted by documentary or other evidence. ¶¶54, 72; *Medina*, 215 F. Supp. 3d at 1123

---

[6]    Contrary to Defendants' argument, the Tenth Circuit does not require a showing that the risk was "virtually certain" to occur when the statement was made. *Pluralsight*, 45 F.4th at 1255 ("Even if we assume, as the district court did, that risk factors could be materially misleading under certain circumstances, we are not persuaded those circumstances exist here.") (MTD at 19).

(whether metrics showed drug was not "safe" and "well tolerated" was issue for discovery). Defendants have not met that standard.

### E.    Risks To The Company's Permits Were Materially Misleading

Risks that "[p]reviously obtained permits and approvals may be suspended or revoked" due to "real or perceived detrimental events" were materially misleading because they omitted **then-existing conditions** at Çöpler that increased safety concerns and threatened continued operations in Turkey.    ¶¶84-85; *e.g.*, ¶54 (outlandish height of heap). Defendants claim that these risks informed investors of the potential effect if permits were revoked, MTD at 20, but they omitted facts that there were existing conditions that increased the risk would materialize. *Voulgaris v. Array Biopharma Inc.*, 2020 WL 8367829, at \*20 (D. Colo. Nov. 24, 2020) (likelihood of regulatory approval misleadingly omitted then-existing fact that defendants secretly changed drug's indication). A generalized boilerplate statement cannot insulate information known or readily ascertainable.

### F.    The Safe Harbor Does Not Apply

The PSLRA safe harbor only applies to forward-looking statements. 15 U.S.C. § 78u-5(c)(1). A "forward-looking statement" is one "containing a projection of revenues . . . or other financial items;" "a statement of the plans and objectives of management for future operations . . ."; "a statement of future economic performance;" or a statement of the assumptions underlying the representations of projections or future performance.    15 U.S.C. § 78u-5(i)(1).    Defendants'

representation that "Mining is inherently risky and subject to conditions and events beyond the Company's control," including "landslides," is not forward-looking. ¶¶87-88; *Vale*, 2017 WL 1102666, at \*24-25 (certain risk mitigation and environment policies were not forward-looking, including "Vale dams are constructed and operated following strict safety standards and audited periodically to monitor and reduce all potential risks, including structural failures."). Defendants do not contend that statements regarding SSR Mining's equipment and safety are forward-looking, thus those statements are not protected by the PSLRA safe harbor. *See* MTD at 21-23.

Other challenged statements, even if forward-looking, were not prefaced with meaningful cautionary language because the risk factors themselves were misleading. *See* Secs. II.D-E., *supra*; *In re Sprint Corp. Sec. Litig.*, 232 F. Supp. 2d 1193, 1222-23 (D. Kan. 2002) (warning of merger delay was not meaningful cautionary language where it omitted regulator's decision). The risk that "[p]reviously obtained permits and approvals may be suspended or revoked" due to "real or perceived detrimental events associated with our activities" had already materialized when the statements were made. ¶¶84-85. The slightest deviation from local regulations threatened SSR Mining's continued existence in Turkey, after Çöpler operations had already been suspended by the Turkish Ministry of Environment for a cyanide leak and local residents were frustrated by mining operations. ¶¶34-36. Nevertheless, Çöpler operated with a significantly high leach pad and insufficient safety and monitoring systems to mitigate the risk of landslide.

¶¶54, 72, 109-112. Those undisclosed facts jeopardized SSR Mining's permits and operations in Turkey even before the landslide occurred, thus the risks had already materialized. *In re Williams Sec. Litig.*, 339 F. Supp. 2d 1206, 1232 (N.D. Okla. 2003) (warnings insufficient where company "was already experiencing significant declines" in revenue); *see also Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*, 426 F. Supp. 3d 864, 870 (D. Kan. 2019) ("Ultimately it is for the trier of fact in this case to decide whether defendants' cautionary statements were sufficient in this case."). They were risks that the Company was willing to take but not the unsuspecting investors.

The forward-looking statements were also issued with actual knowledge of their falsity, so they are not protected. *See* Sec. III, *infra*; *Schaffer v. Evolving Sys., Inc.*, 29 F. Supp. 2d 1213, 1224 (D. Colo. 1998) (defendants had actual knowledge that second-quarter pre-announcement was false based on first-quarter decline). Defendants cannot overcome this argument at the pleading stage without something more.

## III.    THE COMPLAINT ALLEGES A STRONG INFERENCE OF SCIENTER

To plead *scienter*, a complaint must "state with particularity facts giving rise to a strong inference of that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). "Scienter is a mental state embracing intent to deceive, manipulate, or defraud, or recklessness." *Pluralsight*, 45 F.4th at 1258-59. Conduct is reckless "if the defendants (1) acted in an extreme departure from the standards of

22

ordinary care and (2) presented a danger of misleading buyers or sellers that was known to the defendants or so obvious that the defendants must have been aware of the danger." *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1237 (10th Cir. 2016).

An inference of scienter is "strong" if it is "cogent and compelling" and "*at least as likely as* any plausible opposing inference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324, 328 (2007) (emphasis in original). The inference "need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the 'most plausible of competing inferences.'" *Id.* at 324. When competing inferences are shown, the tie goes to the plaintiff. *Id.* The relevant inquiry "is whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegations, scrutinized in isolation, meets that standard." *Id.* at 310, 322 (emphasis in original). Plaintiff has met these standards.

A. **Defendants Knew, Or Were Reckless In Not Knowing, About Equipment and Safety At Çöpler Because It Was A Material Part Of SSR Mining's Business**

*Scienter* can be inferred from the importance of Çöpler to the Company's bottom line. Two months before the Class Period started, SSR Mining ramped activities at Çöpler's sulfide plant flotation circuit after receiving required permits and approvals. ¶29. Even before this expansion, Çöpler generated 41% of the Company's revenue at the start of the Class Period. ¶21; *see also* ¶115 (analysts estimating Çöpler accounts for 60% of earnings). The Company also acquired an

23

interest in the Hod Maden project, which is also located in Turkey.  ¶21.  The faintest suggestion that Çöpler was not safely operated would jeopardize the Company's largest mining asset and its nascent project, especially because the local tensions were high following the 2022 cyanide leak.  ¶45 (analyst noting the suspension of Çöpler operations "could have negative implications on the cost and timeline of the planned grind-leach expansion for the Çakmaktepe extension"); ¶46 (questioning the Company's "social license to operate in the country" due to the reputational harm from the landslide).  The Individual Defendants knew, or were reckless in not knowing, about Çöpler's operations, safety, and regulatory compliance.  *Touchtone Grp., LLC v. Rink*, 913 F. Supp. 2d 1063, 1080 (D. Colo. 2012) (magnitude of fraud supported executives' scienter of "Ponzi scheme whose income was entirely fabricated").

When the landslide was first reported, analysts quickly recognized that it would impact SSR Mining for several years.  ¶45 (SSR Mining's "longer-term prospects to 2027 could also be at risk as these were highly dependent on growth assets in Türkiye").  Defendants should have done so as well.  The nearby Hod Madan project was also halted, highlighting that the Çöpler incident had a ripple effect on the Company's operations within the country.  ¶60.  These reports confirm the importance of Çöpler, supporting that the Individual Defendants would have been informed about the height of the heap leach pad and the safety and monitoring systems to mitigate the risk of landslide. *In re Molycorp, Inc. Sec. Litig.*, 157 F. Supp.

24

3d 987, 1011 (D. Colo. 2016) (importance of mine supported scienter that area did not contain heavy rare earth elements) (citing *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008) (nature of fact is "of such prominence that it would be absurd to suggest that management was without knowledge of the matter")).

Defendants claim that the Tenth Circuit does not recognize the core operations doctrine. This is not true. *CURO Grp.*, 426 F. Supp. 3d at 874 (recognizing that Tenth Circuit authorities merely found core operations insufficient in particular instances; "the court did not state that the importance to the company of particular events can never be relevant or cannot be considered for this purpose"). They dispute that Çöpler was a "core" asset, but even if the mine only accounted for 31% of revenue as Defendants assert, that is sufficiently important.[7] For example, in *IBT Employer Grp. Welfare Fund v. Compass Minerals International, Inc.*, the at-issue mine accounted for one-third of the company's earnings and was "the largest single contributor" to its financials, and the most senior executives often discussed the mining and hauling system installed at that mine. 706 F. Supp. 3d 1225, 1261 (D. Kan. 2023). As a result, the court found that the "only reasonable conclusion" is that those executives were aware of the importance of the mine and of the hauling system's

---

[7]    Again, Defendants' argument raises a question of fact. It is irrelevant here whether it accounted for 30 or 40 percent of revenue as both figures are significant to operations of SSR Mining, as confirmed by the magnitude of investors losses' caused by Defendants' inadequate disclosures. *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021) ("market reaction" to disclosure of security vulnerabilities "support[ed] the materiality of the misleading omission").

25

upgrade, which supported scienter. *Id.* at 1260-61. Similarly, Çöpler was of such importance to SSR Mining and its other projects in Turkey that it is reasonable to conclude Defendants were aware of the safety conditions at the mine. In Defendants' cited authority, the mine was not adequately alleged to be significant to the overall business. *Barrick Gold*, 341 F. Supp. 3d at 374 ("Veladero is one of Barrick Gold's five largest mines, which collectively account for 70% of the Company's gold production.").[8]

**B.      The Individual Defendants Were Responsible For Regularly Monitoring The Company's Safety Practices, Supporting Scienter**

The Individual Defendants were part of the governance structure *touted* by the Company as overseeing SSR Mining's "practice and performance in areas of safety, health, environment, community and stakeholder relationships and environmental management." ¶113. They reported to the Environment, Health, Safety & Sustainability Committee, which claims to regularly assess "safety and health related risks across each part of our mines [to] ensure that we are aware of the specific risks in each part of the mine and [that] the most appropriate hazard controls are

---

[8]      Even assuming, for the purpose of argument, that an asset must be the entire business, which is not a given here, Defendant Antal presided over Alacer, whose *only* asset was Çöpler, before it was acquired by SSR Mining in September 2020. ¶116. Antal would have known if the required safety systems existed prior to the Class Period while at Alacer or if they were implemented (but removed) at some time during the Class Period after the mine was acquired by SSR Mining. The stock reaction reflects that the market treated the mine as the core asset because the stock price has hardly recovered since the end of the Class Period.

implemented." *Id.* As a result, the Individual Defendants held roles that specifically imposed a duty to inform themselves that the requisite safety and monitoring systems were implemented at Çöpler.[9] *In re Sandridge Energy, Inc. Sec. Litig.*, 2017 WL 3317862, at *10-11 (W.D. Okla. Aug. 1, 2017) (CEO who "closely monitored" oil and gas production recklessly "misrepresent[ed] the economic value of Mississippian formation").

Defendants argue that access to information alone is insufficient, but they ignore that *scienter* can be pled through circumstantial evidence of recklessness. *Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*, 79 F.4th 1209, 1236 (10th Cir. 2023) (Phillips, J., dissenting) ("the majority does not sufficiently consider that in our circuit, plaintiffs can proceed by pleading reckless conduct"). Regardless, the receipt of internal reports containing contrary facts is sufficient. *See, e.g., Compass Minerals*, 706 F. Supp. 3d at 1260 ("repeated disregard of the most current factual information before making their misrepresentations favors scienter"). The course of regularly reviewing safety and health risks at the mines, as Defendants claimed to do, necessarily requires reports and inspections of

---

[9]    Plaintiff does not rely on improper group pleading because there are allegations specific to Defendants Antal and to White. *See, e.g.*, ¶¶62, 116; *CURO Grp.*, 426 F. Supp. 3d at 874-76 & n.5 (rejecting improper group pleading and finding that "timing of statements and the magnitude of the fraud" support scienter). In Defendants' cases, there were no unique facts about the executive officers. *In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d 1122, 1152 (D. Colo. 2011) (no specific allegations regarding senior vice president); *TDC Lending LLC v. Priv. Cap. Grp., Inc.*, 340 F. Supp. 3d 1218, 1226-28 (D. Utah 2018) (drafting and approving loan summary sheet was "only allegation of scienter" for several insiders).

the operations. *Array Biopharma*, 2020 WL 8367829, at *23 (scienter supported by executives' selective disclosure of positive trial data despite access to negative data). Defendants claim it is speculative to infer knowledge, but the undisclosed conduct was attenuated from the executives' roles in the cases they cite and the statements they made. *Smallen v. W. Union Co.*, 950 F.3d 1297, 1307 (10th Cir. 2020) (meetings regarding regulator attention to compliance program does not imply knowledge of ongoing, unaddressed fraudulent transactions by third parties); *City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1263 (10th Cir. 2001) ("no particular facts" to infer that senior executives had knowledge of undisclosed, material litigation).

### C. The Individual Defendants Ignored Red Flags From Prior Safety Incidents

Çöpler was subject to specific regulatory actions due to safety concerns, which constitute red flags for the Individual Defendants that the safety and monitoring systems were inadequate. In September 2020, mining had been halted by the General Directorate of Mining and Petroleum because of slippage and a concern about the "groundwater level and the related slope stability." ¶33. In June 2022, the Turkish Ministry of Environment halted operations due to a cyanide leak at the Çöpler heap leach pad, which is the same area that was affected in February 2024. ¶34. The September 2020 and June 2022 incidents were *actual* safety incidents that threatened Çöpler's permits, thus they were red flags for the Individual Defendants to review safety protocols and remediate deficiencies. *Or. Laborers Emp'rs.' Pension*

28

*Tr. Fund v. Maxar Techs. Inc.*, 2020 WL 5500458, at \*15 (D. Colo. Sept. 11, 2020) (red flags supported scienter as to asset writedown).

Defendants argue that these prior incidents do not imply notice of safety concerns because they were not "in any way connected to the Çöpler incident." MTD at 29. But perfect symmetry between the prior events and the at-issue incidents is not required. *Cf. Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*, 2013 WL 5423875, at \*8 (D. Idaho Sept. 26, 2013) (no scienter based on past compliance issues because regulator had not suggested "during these inspections that the mine would need to be shut down") (MTD at 29). The prior incidents all concern safety issues at the Çöpler mine which threatened permits and continued operations in the region. *See* ¶33 (General Directorate suspending operations because mine activities were not conducted in accordance with project design and permit). The September 2020 incident concerned slope instability, which is related to the risk that materialized in February 2024 because slope instability led to heap displacement and resulted in a landslide. ¶¶33, 72. Unlike in *Hecla*, the regulators had shut down SSR Mining's operations twice due to their concerns. *See In re Myriad Genetics, Inc.*, 2021 WL 977770, at \*19 (D. Utah Mar. 16, 2021) (regulatory scrutiny supported scienter). Stated another way, they go to the alleged misstatements and omissions alleged in the Complaint.

29

### D.      The Balance Of Inferences Supports Scienter

Several additional factors support a strong finding of *scienter*.  The Individual Defendants held themselves out to be knowledgeable by speaking about safety at mines during earnings calls.  ¶32; *see also* ¶31 (touting lower injury frequency rates after revising ESG policies); *Maxar*, 2020 WL 5500458, at *14 (executives' own statements show they closely monitored satellite market, supporting scienter).  Defendants want to have it both ways.  But when it comes to the statements in the Complaint alleged to be misleading or incomplete they disavow knowledge.  Whichever way they spin it, they cannot ignore that Turkish authorities found that the safety systems were lacking.  *CURO Grp.*, 426 F. Supp. 3d at 874 (post-class period admissions "relevant" to scienter).  And Defendant White resigned soon after the regulatory scrutiny increased, further supporting a finder of scienter for purposes of this motion. ¶62; *Myriad Genetics*, 2021 WL 977770, at *22 (unusual resignation provides "modest scienter support").

The importance of Çöpler's mining operations to the future of the Company, the Individual Defendants' roles in the governance structure purportedly presiding over the safety and environmental risks at SSR Mining's mines, the prior incidents that called into question the safety systems at Çöpler, and Defendants' own statements support a strong inference of *scienter* sufficient to deny Defendants' motion.

30

Defendants' competing inference, that the systems in place could not eliminate the risk of landslide, is not compelling. MTD at 31. Defendants claimed to have "effective" and "appropriate" safety systems, but the Expert Committee Report found glaring failures, including the inability to respond to the data on hand. ¶¶109-112. The heap displaced at a rate of 25 mm per day since January 5, 2024 and images of a visible crack were circulated among employees two days before the landslide occurred. ¶¶73, 111. The Company, due to its lack of centralized data analysis unit, failed to monitor "whether these cracks got wider over time" or occurred "in different areas." ¶75. Plaintiff does not contend that Defendants falsely guaranteed against the risk of landslide, nor is such an allegation required. The well-pled allegations demonstrate that Defendants *ignored* key information relevant to safety at its largest mining operation, which is reckless.[10]

### E.    Motive Is Not Required

Motive is not required. *Tellabs*, 551 U.S. at 325 ("absence of motive is not fatal" because scienter allegations must be considered "collectively"). Defendants' cited authorities merely weigh the significance of the motive that was alleged. *MHC Mut. Conversion Fund, L.P. v. Sandler O'Neill & Partners, L.P.*, 761 F.3d 1109, 1122 (10th Cir. 2014) (a stock offering is not motive because that is a "generalized motive[]

---

[10]    The Individual Defendants' scienter can be imputed to SSR Mining because their oversight of mine safety and issuance of public statements is within the scope of their apparent authority and those charged with that responsibility. *Kinder-Morgan*, 340 F.3d at 1106.

31

shared by all companies"); *W. Union*, 950 F.3d at 1310-11 (increase in holdings weakens significance of stock sales). Regardless, Defendants had a motive: omitting the deficient safety controls allowed SSR Mining to obtain permits and approvals for expansion of the Çöpler mine and acquisition of the Hod Madan project, thereby expanding its foothold in Turkey. *Array Biopharma*, 2020 WL 8367829, at *25 (concealing truth to achieve corporate milestones provided pleading stage inference of scienter).

## IV.    THE COMPLAINT ADEQUATELY PLEADS LOSS CAUSATION

At the motion to dismiss stage, Plaintiff need only "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). The Rule 8 notice pleading applies. *See Better v. YRC Worldwide Inc.*, 2012 WL 4433500, at *9-10 (D. Kan. Sept. 25, 2012). Moreover, "the disclosure need not precisely mirror the earlier representation." *Maxar*, 2020 WL 5500458, at *17. Under the materialization of risk theory, "a plaintiff must allege two facts: 1. The risk that materialized was within the zone of risk concealed by the misrepresentation (foreseeability)[; and] 2. The materialization of the risk caused a negative impact on the value of the securities (causal link)." *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1154 (10th Cir. 2015) (that bidder decided asset was not worth $400 million rendered foreseeable that company could not find a buyer; materialization of that risk caused loss). Plaintiff has made that showing here.

32

The occurrence of the landslide was the foreseeable result of the abnormally high heap leach and inadequate systems to monitor heap displacement.  ¶¶106, 108. When the landslide occurred, SSR Mining's share price fell 53.7%.  ¶101.  Thus, the materialization of the foreseeable risk caused Plaintiff's loss.  *See In re Vale S.A. Sec. Litig.*, 2020 WL 2610979, at \*18 (E.D.N.Y. May 20, 2020) (dam "was within the zone of risk concealed by Vale's misrepresentations as to the likelihood of a Vale damn collapsing" and caused stock decline) .

Defendants raise a series of arguments that all fail. First, Defendants contend that the risk was not concealed.   MTD  at  34  n.10. But SSR Mining's general regulatory risk disclosures did not contemplate the extreme departure from industry-standard monitoring that SSR Mining had implemented in and operated under at Çöpler, nor did it disclose risk of anything nearing the shuttering of ***its largest and most profitable site***.  ¶115; *see also* Secs. III.C-E., *supra.*  To put this into context, the investors had no choice but to rely on Defendants.   The heap displacement monitoring data for the Çöpler heap was not publicly available, so investors had no means to independently confirm the adequacy of safety at Çöpler.  By contrast, the allegedly corrective information had been public throughout the class period in Defendants' cited authorities.  *See, e.g.*, *Abady v. Lipocine Inc.*, 2023 WL 2938210, at \*26 (D. Utah Apr. 13. 2023) (regulator rejection of drug approval was not materialization of concealed risk where clinical trial's failure was *already public*);

*Kessman v. Myriad Genetics, Inc.*, 2019 WL 1330363, at \*9 (D. Utah Mar. 25, 2019) (the potentially fraudulent billing practices were "*no secret*").

Second, Defendants wrongly claim that the corrective disclosures is not linked to the stock price decline.  MTD at 33-34.  The alleged news articles and analyst reports link the collapse of the Çöpler heap to SSR Mining's failure to maintain industry-standard safety and monitoring procedures.  ¶¶42-46, 48, 50, 52, 54, 60, 68, 71-77.  Defendants' reliance on *Chipotle Mexican Grill* is unconvincing because the news had not identified the cause of the norovirus outbreak.  2019 WL 3297467, \*15 ("no allegations in the Complaint link the outbreak to understaffing").  The outbreak had not been narrowed to one of the company's hundreds of restaurants, and it was "speculative" to conclude that inadequate food safety protocols were to blame.  *Id.* Here, it is reasonable to conclude that the Company's employees were detained because Turkish authorities suspected wrongdoing led to the landslide, thereby linking the stock decline and the concealed safety risks.

Third, Defendants argue that there is no causal link because the safety deficiencies were not revealed until the Expert Committee Report was issued and there was no stock decline at that time.  MTD at 35.  However, by then, the revocation of Çöpler's permits on February 18, 2024 suggested to the market that the landslide was caused by factors within SSR Mining's control and that the future of the Company's core asset was in jeopardy.  Investors understood the significance of the landslide and that it was caused by the Company's safety deficiencies.  ¶49 (permit

revoked 4 days after landslide). When the Executive Committee Report specifically stated that SSR Mining lacked essential monitoring systems, the market price already reflected that the Çöpler operations were defunct. *See, e.g.*, ¶¶50, 52 (as early as February 19, 2024, multiple analysts completely removed the Çöpler mine from their valuations of SSR Mining). Indeed, this was confirmed on Monday, February 19, 2024, when Scotiabank issued a report stating that, though the permit cancellation was negative news, "we expect a negative reaction to be muted at market open on Tuesday as we believe investors have already priced the Çöpler asset out of the stock entirely." ¶50. This report is the same as the allegations in the Complaint.[11]

Defendants try to separate the cause (SSR Mining's undisclosed carrying of risk) from the consequences (the revocation of its Çöpler permit, the instigation of an investigation by Turkish authorities, and a hit to its financials), but Plaintiff need not disprove other factors for the stock decline. That is Defendants' burden at the appropriate time.[12] A plausible causal connection between the corrective information and Plaintiff's loss has been pled, which is *all* that is required at the pleading stage. *See Maxar*, 2020 WL 5500458, at *16 ("a plaintiff must only provide a short and plain

---

[11] The Expert Committee Report was not widely disseminated, so it is not surprising that the stock price was nearly flat. ¶69 (company announcing *it* had received the report). This also raises a question of fact.

[12] Defendants' other authority is also distinguishable and inapposite. *See Loos v. Immersion Corp.*, 762 F.3d 880, 883 (9th Cir. 2014) ("an announcement of an investigation, *standing alone*, is insufficient to establish loss causation") (MTD at 34).

statement of loss causation that gives the defendant fair notice of the claim and the grounds on which it rests").

## CONCLUSION

For the reasons stated above, Defendants' motion should be denied in its entirety. Alternatively, if the motion is granted, Plaintiff requests leave to amend. *Heiner v. Watford*, 2022 WL 18777077, at \*21 (D. Colo. Nov. 21, 2022) ("leave to amend is to be granted with extreme liberality in securities fraud cases, because the heightened pleading requirements imposed by the PSLRA are so difficult to meet"); *see also In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1209 (D. Colo. 2004) (granting leave to amend fourth amended class action securities complaint).

DATED: February 14, 2025                    Respectfully submitted,

                                            GLANCY PRONGAY & MURRAY LLP

                                            By: */s/ Daniella Quitt*
                                            Daniella Quitt
                                            745 Fifth Avenue, 5th Floor
                                            New York, NY 10151
                                            Telephone: (212) 935-7400
                                            dquitt@glancylaw.com

                                            Robert V. Prongay
                                            Pavithra Rajesh
                                            1925 Century Park East, Suite 2100
                                            Los Angeles, California 90067
                                            Telephone: (310) 201-9150
                                            Facsimile: (310) 201-9160
                                            rprongay@glancylaw.com
                                            prajesh@glancylaw.com

                                            *Counsel for Lead Plaintiff and Lead Counsel for the Class*

36

## PRACTICE STANDARD III(A)(1) AND III(D)(1) CERTIFICATION

I hereby certify that the foregoing motion complies with the type-volume limitation set forth in DDD Civ. P.S. III(A)(1), as modified by the Court's Order Granting Defendants' Unopposed Motion to Exceed Word Limit (ECF 59).

/s/ Daniella Quitt
Daniella Quitt

37

## **CERTIFICATE OF SERVICE**

I hereby certify that on 14th day of February 2025, I electronically filed the

foregoing document with the Clerk of the Court by using the CM/ECF system which

will send notification to all counsel of record.

/s/ *Daniella Quitt*
Daniella Quitt