# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

|  |  |
| --- | --- |
| **KARAM AKHRAS**, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>**SSR MINING INC., RODNEY P. ANTAL, and ALISON WHITE**,<br><br>    Defendants. | C.A. No. 1:24-cv-00739-DDD-TPO<br><br>Hon. Daniel D. Domenico |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS CLASS ACTION COMPLAINT [ECF NO. 60] AND IN RESPONSE TO PLAINTIFF'S OPPOSITION THERETO [ECF NO. 62]

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT AND AUTHORITIES ........................................................................ 2

    I.      Plaintiff fails to plead any actionable misstatements or omissions. ............. 2

           A.      No Misstatements in Context ............................................. 4

           B.      Health And Safety Commitment Statements Not Actionable ........... 5

                  1.      Not False/Misleading When Made ....................................... 5

                  2.      Inactionable Puffery ................................................. 7

           C.      Risk Disclosures Not Actionable ......................................... 9

                    1.      Not Actionable as a Matter of Law ....................................... 9

                    2.      Not False/Misleading When Made ....................................... 9

                    3.      Protected by PSLRA Safe Harbor ....................................... 10

    II.      Plaintiff fails to allege a strong inference of scienter as to any
           Defendant. ................................................................. 11

            A.      No Cognizable Motive ..................................................... 11

           B.      "Core Operations" Theory Fundamentally Flawed ......................... 12

           C.      No Scienter Based on Individual Defendants Reporting to EHSS
               Committee .................................................................. 13

           D.      Other Scienter Theories Equally Flawed ................................. 13

           E.      Nonculpable Inference More Compelling than Any Opposing
               Inference ................................................................... 14

    III.     Plaintiff fails to adequately plead loss causation. ........................... 15

CONCLUSION ................................................................................ 16

# TABLE OF AUTHORITIES

**Cases** ................................................................................................................................. **Page(s)**

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy v. Energy Transfer LP*,
532 F. Supp. 3d 189 (E.D. Pa. 2021) ....................................................................................8

*In re Barrick Gold Corp. Sec. Litig.*,
341 F. Supp. 3d 358 (S.D.N.Y. 2018).................................................................................12

*Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*,
866 F. Supp. 2d 223 (S.D.N.Y. 2012)...................................................................................8

*Galestan v. OneMain Holdings, Inc.*,
348 F. Supp. 3d 282 (S.D.N.Y. Dec. 12, 2018) ...................................................................8

*Hampton v. root9B Techs., Inc.*,
897 F.3d 1291 (10th Cir. 2018) ............................................................................................3

*Indiana Public Ret. Sys. v. Pluralsight*,
45 F.4th 1236 (10th Cir. 2022) .........................................................................................7, 9

*Lane v. Page*,
581 F. Supp. 2d 1094 (D.N.M. 2008) ...................................................................................7

*Lingam v. Dish Network Corp.*,
2025 WL 872464 (D. Colo. Mar. 20, 2025) .........................................................................4

*In re Massey Energy Co. Sec. Litig.*,
883 F. Supp. 2d 597 (S.D.W. Va. 2012) ...............................................................................8

*In re Molson Coors Bev. Co. Sec. Litig.*,
2020 WL 13499995 (D. Colo. Dec. 2, 2020)...........................................................12, 13, 16

*In re Norfolk S. Corp. Bond/Note Sec. Litig.*,
2024 WL 3579096 (S.D.N.Y. Jul. 26, 2024) ........................................................................8

*In re Norfolk S. Corp. Bond/Note Sec. Litig.*,
2025 WL 641089 (S.D.N.Y. Feb. 27, 2025)..........................................................................8

*In re NVE Corp. Sec. Litig.*,
551 F. Supp. 2d 871 (D. Minn. 2007)..................................................................................10

*Ore. Laborers Emps. Pension Tr. Fund v. Maxar Techs Inc.*,
    2020 WL 5500458 (D. Colo. Sep. 11, 2020) ............................................................14

*In re Overstock Sec. Litig.*,
    2021 WL 4267920 (D. Utah Sept. 20, 2021) ............................................................11

*Patel v. Koninklijke Philips N.V.*,
    2024 WL 4265758 (E.D.N.Y. Sep. 23, 2024) .............................................................8

*Smallen v. W. Union Co.*,
    950 F.3d 1297 (10th Cir. 2020) ..............................................................................14

*In re Sprint Corp. Sec. Litig.*,
    232 F. Supp. 2d 1193 (D. Kan. 2002) ......................................................................11

*United Food & Com. Workers Union v. Chesapeake Energy Corp.*,
    2013 WL 4494384 (W.D. Okla. Mar. 29, 2013) .........................................................5

*In re Williams Sec. Litig.*,
    339 F. Supp. 2d 1206 (N.D. Okla. 2003) ..................................................................11

*Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*,
    426 F. Supp. 3d 864 (D. Kan. 2019) ..................................................................11, 14

**Statutes**

PSLRA ...........................................................................................................................10, 13

**Rules**

Rule 9(b) ...............................................................................................................................13

iii

**PRELIMINARY STATEMENT**[1]

This case is a misguided attempt to transform the tragic landslide that occurred at SSR's Çöpler mine into securities fraud. As Plaintiff's opposition brief ("the Opposition") confirms, the gravamen of this case is nothing more than a conclusory allegation that SSR knew, but failed to tell investors, its safety procedures were "woefully inadequate and did not meet industry standards." Opp. at 1-2. The Complaint, however, lacks factual allegations establishing that the safety procedures at Çöpler either were inadequate or did not meet industry standards, much less that they in any way caused the landslide, or that the Individual Defendants knew about any supposed safety issues at the time the alleged misstatements were made. Moreover, SSR provided its investors with extensive risk disclosures making it clear that landslides were a risk the Company could not prevent from happening.

What Plaintiff has pled is an impermissible "fraud by hindsight" claim—*i.e.*, because the landslide occurred, Defendants somehow must have known (beforehand) about alleged safety issues that would lead to the collapse. Plaintiff baldly asserts, for example, that it is "implausible that senior executives were not aware what was occurring at [Çöpler] and of the failure to take precautions to protect the safety of its miners." Opp. at 1. But Plaintiff relies entirely on allegations that the Individual Defendants knew about the

---

[1] All abbreviations and capitalized or defined terms not defined herein have the meaning provided in Defendants' Motion to Dismiss ("Motion" or Mot.").

supposed issues because the mine was so important to the Company.  Plaintiff's allegations are patently insufficient to establish the required strong inference of scienter as to any Defendant.  Nor does Plaintiff adequately allege that the revelation of the supposed safety issues caused any investor losses.

At bottom, Plaintiff is merely seeking to second-guess SSR's safety procedures following an unforeseen accident and to improperly hold Defendants liable for a market stock price decline that, contrary to Plaintiff's repeated inaccurate assertions in the Opposition (Opp. at 3, 26 n.8), has been completely reversed (*i.e.*, the Company's current stock price is higher than immediately before the landslide).[2]  The Court should grant Defendants' motion to dismiss with prejudice.

## ARGUMENT AND AUTHORITIES

### I.    Plaintiff fails to plead any actionable misstatements or omissions.

The Complaint contains two categories of alleged misstatements: (a) the Health and Safety Commitment Statements, and (b) the Risk Disclosures.  Mot. at 11.  Plaintiff asserts it has adequately pled that both sets of statements were false and misleading based on the contents of essentially just two documents.  Opp. at 10 (citing AC ¶¶ 54, 71-77).

*First*, Plaintiff relies on a report commissioned by Turkish prosecutors following the landslide (the "Report") (*id.* (citing AC ¶¶ 71-77)), which includes an analysis of the "warning systems" at Çöpler and concludes that, at the time of the incident, those systems

---

[2] *See* https://finance.yahoo.com/quote/SSRM/.

did not operate to prevent the individual deaths that occurred in the landslide. *See* Ex. 9 at 215-225. What the Report does not find, however, is that any issues with SSR's monitoring systems were ongoing or pervasive, that the monitoring systems would have prevented the landslide, or that the Individual Defendants had any responsibilities or knowledge about the monitoring systems. *See id.* at 194-196, 215-225.

*Second*, Plaintiff relies on a sensationalistic Turkish news article, published six days after the landslide occurred, in which "scientists" claimed both that the heap leach pad was higher than industry standards and that the "landslide could have been triggered by an earthquake." Opp. at 10 (citing AC ¶ 54). But the article provides no factual basis for these conclusions. Even more importantly, both claims are inconsistent with the Report, which makes no finding that either the height of the heap leach pad or an earthquake were potential causes of the landslide (and Plaintiff insists that the landslide was *not* caused by a natural disaster—*see, e.g.*, Opp. at 2, 7, 9, 17). Plaintiff cannot cherry-pick unsubstantiated conclusions out of this article to support its claims. *See Hampton v. root9B Techs., Inc.*, 897 F.3d 1291, 1302-03 (10th Cir. 2018) (affirming dismissal of claims based on article that merely speculated about the "potential[]" source of a cyberattack and did not "purport to have irrefutable proof").

In sum, these two documents cannot establish falsity as to the Health and Safety Commitment Statements or Risk Disclosures, and Plaintiff does not otherwise establish how the alleged misstatements were false or misleading.

A.     No Misstatements in Context

Plaintiff attempts to manufacture a factual dispute based on the purported "importance" of the alleged misstatements.  Opp. at 11-12.  But Plaintiff completely ignores the overall context: each alleged misstatement was accompanied by the disclosure of the exact risks that materialized in connection with the Çöpler incident.  *See* Mot. at 11-12.  Specifically, SSR disclosed risks concerning landslides, equipment and mechanical failures, health and safety issues, and permit revocation, all of which could affect Çöpler's operations.  *See* Mot. at 7-9, 12.  Contrary to what Plaintiff suggests (Opp. at 11), courts routinely dismiss securities claims at the pleading stage based on a company's prior disclosure of risks that allegedly materialized.  *See* Mot. at 11-12 (collecting cases).

Plaintiff's only counter is to assert that SSR *also* was required to specifically disclose that it "did not monitor heap leach pad displacement in real-time to allow for early evacuation and that the heap was significantly higher than industry norms" in its risk disclosures.  Opp. at 12.  This argument fails.  *First*, the Complaint has no well-pled factual allegations establishing that SSR did not monitor the heap displacement or that the height of the heap leach pad exceeded any industry standard.  *See supra* at 2-3; Mot. at 16-18, 20 n.7; *see also Lingam v. Dish Network Corp.*, 2025 WL 872464, *4 (D. Colo. Mar. 20, 2025) (no falsity where investors would not have understood statement about testing wireless network to mean test was "sufficient for industry standards for validating a whole network").  *Second*, even if Plaintiff adequately pled that these issues existed when the Risk Disclosures were made (which it did not), SSR was not required to "predict the precise

4

manner" in which its disclosed risks would or could materialize. *See United Food & Com. Workers Union v. Chesapeake Energy Corp.*, 2013 WL 4494384, at \*14 (W.D. Okla. Mar. 29, 2013) (defendants need not "disclose every possible permutation of the risk."); Mot. at 20-21.  The securities laws only required SSR to inform investors about relevant risks, not to specify every aspect of its business that might contribute to the materialization of those risks.[3]

      B.      <u>Health And Safety Commitment Statements Not Actionable</u>

      1.      *Not False/Misleading When Made*

Plaintiff fails to identify any facts suggesting that the Health and Safety Commitment Statements were false or misleading when made.  Once again, Plaintiff relies entirely on the supposed existence of inadequate monitoring systems and an unusually high heap leach pad (Opp. at 13-17), but these assertions lack any well-pled factual support.  *See supra* at 2-3; Mot. at 16-18.  Indeed, Plaintiff grossly mischaracterizes the Report to make its arguments.

*First*, Plaintiff asserts that "SSR Mining lacked effective monitoring and systems at Çöpler to track heap displacement."  Opp. at 13-14.  Both the Complaint and the Report,

---

[3] In contrast, Plaintiff relies on cases where the failure to disclose current facts rendered other statements about the company's business misleading.  *See* Opp. at 12 (citing *Okla. Firefighters Pension and Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 31 (S.D.N.Y. 2019) (failed to disclose then-existing inventory levels)); Opp. at 18 (citing *In re Grab Holdings Ltd. Sec. Litig.*, 2024 WL 1076277, \*14-15 (S.D.N.Y. Mar. 12, 2024) (defendants omitted that company was "experiencing driver shortages in key markets")).

however, establish that SSR did in fact track heap displacement. *See* Mot. at 18 (citing Complaint paragraphs about "radar systems" in place to monitor ground movement at Çöpler, discussing available InSar data, and noting Anagold employees were "aware of a crack" in the heap days before the incident).

*Second*, Plaintiff asserts that "the lack of centralized data collection and analysis prevented Company employees from acting in accordance with an emergency response plan," and as a result, "miners were not timely evacuated once a crack in the heap had formed." Opp. at 14. But the Report did not find that the alleged lack of centralized data collection prevented the execution of the emergency response plan or somehow caused the untimely evacuation of miners. *See* Ex. 9 at 215-225. And Plaintiff's contention that these issues "were compounded" by the height of the heap leach pad (Opp. at 14) is not stated in the Report, and indeed, appears to have been made up.

*Finally*, even if the Court accepted Plaintiff's hindsight conclusion that the safety procedures were inadequate because the landslide occurred and not all of the mine's employees were timely evacuated, there are no facts showing that SSR's safety procedures were inadequate *at the time* of the alleged misstatements. *See* Mot. at 16-18. Plaintiff does not even attempt to make a connection between the safety procedures in place at the time of the landslide and the safety procedures in place during the two years prior when the alleged misstatements were made.

### 2.    *Inactionable Puffery*

Based on Plaintiff's representation in its Opposition that all the alleged misstatements in the Complaint are in bold (Opp. at 10-11), the Health and Safety Commitment Statements consist of ten total statements (some of which are just a few words).  AC ¶¶ 78-83.  These generalized statements about SSR's commitment to safety are nonactionable puffery.  *See* Mot. at 13-16.

The only statements that the Opposition specifically argues are *not* puffery are (a) a statement that SSR has "effective safety and health" and "risk-centered management systems" and (b) a statement that SSR has "appropriate equipment, effective communication" for dealing with emergencies.  Opp. at 14-15.  Plaintiff asserts that the words "effective" and "appropriate" are verifiable, and therefore these statements cannot be puffery as a matter of law.  *Id.* at 15.  Plaintiff is wrong.

The word "effective" appears in disclosures broadly discussing the Company's general "commitment" to health and safety, which courts routinely dismiss as immaterial corporate optimism.  *See* Mot. at 13-16; AC ¶¶ 78-81.  Plaintiff cannot isolate an adjective that could theoretically be verifiable to manufacture an actionable misstatement.  *See Lane v. Page*, 581 F. Supp. 2d 1094, 1124 (D.N.M. 2008) ("Read as a whole, rather than focusing on a few words in isolation, the Proxy is not misleading in any material way.").  Likewise, the description of SSR's equipment and communication as "appropriate" or "effective" is merely an "affirmation" of the Company's general commitment to emergency preparedness that no reasonable investor would rely on.  *See Indiana Public Ret. Sys. v.*

7

*Pluralsight*, 45 F.4th 1236, 1253-1254 (10th Cir. 2022) (statements about "productivity and effectiveness" puffery).

Plaintiff's authorities are inapposite. Notably, Plaintiff relies on a R&R issued in *In re Norfolk S. Corp. Bond/Note Sec. Litig.*, 2024 WL 3579096 (S.D.N.Y. Jul. 26, 2024) to argue that statements about a commitment to safety can be actionable. Opp. at 14. But the district court recently overruled that R&R, holding that statements like the company's programs "have been designed to assure the ability to provide safe, efficient, and reliable rail transportation services" were puffery. *In re Norfolk S. Corp. Bond/Note Sec. Litig.*, 2025 WL 641089, at *3 (S.D.N.Y. Feb. 27, 2025). The court further held that even statements that were potentially actionable alone were puffery when made in the context of "tout[ing] Norfolk Southern's dedication and commitment to safety." *Id.* The same reasoning applies here.[4]

---

[4] Plaintiff's other citations fare no better. Opp. 14-15. In each case, the statements regarding health and safety were made after the company already had experienced regulatory violations, complaints, accidents, performance issues, or a lack of training that belied the statements' accuracy. *See Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 532 F. Supp. 3d 189, 218-19 (E.D. Pa. 2021) (regulatory violations and accidents); *Patel v. Koninklijke Philips N.V.*, 2024 WL 4265758, *9 (E.D.N.Y. Sep. 23, 2024) (complaints); *In re Massey Energy Co. Sec. Litig.*, 883 F. Supp. 2d 597, 617-618 (S.D.W. Va. 2012) (regulatory violations and accidents); *Galestan v. OneMain Holdings, Inc.*, 348 F. Supp. 3d 282, 287, 303 (S.D.N.Y. Dec. 12, 2018) (performance issues); *Bricklayers & Masons Loc. Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 233-234, 243-44 (S.D.N.Y. 2012) (lack of training). Plaintiff has alleged no such supporting facts as to SSR and its operations.

C.    Risk Disclosures Not Actionable

1.    *Not Actionable as a Matter of Law*

It is black-letter law in the Tenth Circuit that risk factors are *only* actionable if (1) the harm already materialized at the time of the statement, or (2) the defendants knew the harm was virtually certain to occur.  *See Pluralsight*, 45 F.4th at 1255-56; Mot. at 19-20. Plaintiff's assertion in a stray footnote that this is not the controlling law is specious.  *See* Opp. at 19 n.6.

There is no plausible basis for the Court to conclude that the harm of the landslide, or of any permits being revoked, (1) had already materialized at the time of the alleged misstatements, or (2) that the Defendants knew these harms were virtually certain to occur. Mot. at 19-20.  Plaintiff resorts to arguing that Defendants "omitted facts that there were existing conditions that *increased* the risk would materialize" and that the "undisclosed facts *jeopardized* SSR Mining's permits and operations in Turkey."  Opp. at 20, 22 (emphasis added).  But "increased" and "jeopardized" do not equal "materialized."  Nor do these words mean it was "virtually certain" the harm would materialize at the time the statements were made.  The Court need go no further to conclude that Plaintiff's claims based on the Risk Disclosures must be dismissed.

2.    *Not False/Misleading When Made*

Even if the Risk Disclosures were theoretically actionable as a matter of law (which they are not), Plaintiff fails to adequately allege that any of the Risk Disclosures were false or misleading when made.  The Risk Disclosures "warned of the precise issues that

9

ultimately materialized," including the possibility of the "failure of mining pit slopes,"
"landslides," and permit suspensions or revocations. *See* Mot. at 7-8, 20-21.

Plaintiff asserts that the Risk Disclosures nevertheless were inadequate because they
failed to inform investors about the nonstandard height of the heap leach pad, which
supposedly (a) existed at the time of these statements, and (b) increased the possibility of
the risks materializing. Opp. at 17, 19-20. The problem with this argument is that the
Complaint lacks well-pled facts establishing that the heap leach pad was higher than the
industry standard, that this height issue existed at the time of the Risk Disclosures, or that
the heap's height increased the risks associated with the revocation of permits or a
landslide. *See supra* at 2-3.

### 3.    *Protected by PSLRA Safe Harbor*

The Opposition does not meaningfully contest that the Risk Disclosures are
forward-looking statements covered by the PSLRA safe harbor. *See* Mot. at 21-23.[5]
Instead, Plaintiff contends the safe harbor does not apply because the cautionary language
was not meaningful, and Defendants allegedly had actual knowledge of the falsity of the
Risk Disclosures. Opp. at 21-22. Neither of these arguments can save Plaintiff's claims.

---

[5] Plaintiff argues that two of the Risk Disclosures are not forward-looking (Opp. at 21), but
each of the statements is framed by the word "may" (Mot. at 22). The term "may" renders
those statements forward-looking. *In re NVE Corp. Sec. Litig.*, 551 F. Supp. 2d 871, 901
(D. Minn. 2007) (statement forward-looking where it uses "may").

*First*, the Opposition's argument that the cautionary language surrounding the Risk Disclosures was not meaningful because "the risk factors themselves were misleading" is baseless. Opp. at 21. As shown above, the "risks" had not materialized at the time any statement was made,[6] and they were not "virtually certain" to occur. *See supra* at 9.

*Second*, Plaintiff's cursory assertion that the "forward-looking statements were also issued with actual knowledge of their falsity, so they are not protected"—citing its scienter argument—is wrong. Opp. at 22. Even if Plaintiff adequately alleged scienter (which it did not), that would not defeat the safe harbor, which requires "actual knowledge" of falsity, not mere recklessness. *See In re Overstock Sec. Litig.*, 2021 WL 4267920, at *7 (D. Utah Sept. 20, 2021) ("The 'actual knowledge' standard for forward-looking statements is more exacting than the scienter inquiry.").

## II.    Plaintiff fails to allege a strong inference of scienter as to any Defendant.

### A.    No Cognizable Motive

Plaintiff does not seriously dispute that the Complaint fails to establish a cognizable motive for Defendants to have engaged in securities fraud. *See* Opp. at 31-32. While Plaintiff argues that Defendants had an incentive to expand SSR's "foothold in Turkey"

---

[6] Plaintiff's authorities are easily distinguishable for this reason. *See In re Sprint Corp. Sec. Litig.*, 232 F. Supp. 2d 1193, 1208, 122-1223 (D. Kan. 2002) ("defendants *already knew*") (emphasis in original); *In re Williams Sec. Litig.*, 339 F. Supp. 2d 1206, 1232 (N.D. Okla. 2003) (company "already experiencing significant declines"); *Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*, 426 F. Supp. 3d 864, 870 (D. Kan. 2019) (statements "contradicted by known facts").

11

(*id.*), that supposed motive is not alleged in the Complaint and, in any case, would be a general corporate motive that could not support an inference of scienter. *See, e.g.*, Ex. 12 at 5-6 (*Enservco*) (Domenico, J.) (even if "company's survival allegedly hung in the balance," that would still be insufficient to establish scienter).

### B.    "Core Operations" Theory Fundamentally Flawed

Plaintiff's "core operations" theory of scienter fails. It relies entirely on (a) Antal's prior role as CEO of Alacer, which owned Çöpler, and (b) the general "importance" of Çöpler to SSR's business. But an executive's role overseeing a "core" operation does not establish an inference of scienter. *See* Mot. at 28 (citing cases). Plaintiff offers no particularized facts establishing what Antal knew about Çöpler's safety procedures, let alone that he knew they were deficient.

Nor does SSR's alleged increased activity at the sulfide plant at Çöpler, or its other "interest[s]" in Turkey (Opp. at 23-24), make Çöpler a "core" operation. In the year before the landslide, Çöpler accounted for just 31% of SSR's revenue, and the oxide heap (where the landslide occurred) represented just 3.5% of SSR's revenue. Mot. at 28 n.9. Those amounts fall well short of establishing a "core operations" theory. *See In re Barrick Gold Corp. Sec. Litig.*, 341 F. Supp. 3d 358, 374 (S.D.N.Y. 2018) (core operations theory requires "that the operation in question constitute nearly all of a company's business"); *In re Molson Coors Bev. Co. Sec. Litig.*, 2020 WL 13499995, *8-9 (D. Colo. Dec. 2, 2020) (business accounting for 80% of the company's earnings not a core operation).

12

C.    No Scienter Based on Individual Defendants Reporting to EHSS Committee

Plaintiff asserts that because the Individual Defendants "reported" to the EHSS Committee, they were reckless in not knowing about the alleged deficiencies in Çöpler's safety procedures.[7]  Opp. at 26-28.  Not so.  There is no plausible basis to infer that the Individual Defendants received reports on the status of safety procedures just because the EHSS Committee may have received them.  *See* Mot. at 26-27.  Moreover, the Opposition cannot identify any specific report that the EHSS Committee received (much less that any Individual Defendant received).  *See id.*  Plaintiff's inability to do so "cuts against an inference of scienter." *In re Molson*, 2020 WL 13499995 at *8.

D.    Other Scienter Theories Equally Flawed

Plaintiff's hodgepodge of additional theories of scienter cannot overcome the fatal flaws in its case.

*First*, the cyanide leak and "slippage" (Opp. at 28-29) are not related to the heap leach pad monitoring systems or the landslide.  *See* Mot. at 29.  Indeed, the Opposition concedes that the cyanide leak had "nothing" to do with any of the alleged causes of the landslide.  Opp. at 19.  Plaintiff fails to plead any facts "either tying the Individual Defendants to" these issues, "or otherwise demonstrating the Individual Defendants were

---

[7] Plaintiff does not contest that "group pleading" violates Rule 9(b) and the PSLRA.  *See* Mot. at 24; Opp. at 27 n.9.  The Opposition fails to identify any viable individualized allegations of scienter, which is an independent basis for dismissal.

13

aware [the Company] had [allegedly] failed to redress these issues." *See Smallen v. W. Union Co.*, 950 F.3d 1297, 1306 (10th Cir. 2020); Mot. at 29.

*Second*, contrary to what the Opposition asserts (Opp. at 30), the Individual Defendants did not claim to be mine safety experts. The fact that Antal stated on a single earnings call that "ESG is and has long been a core value and focus for SSR Mining" and the Company had seen "positive health and safety trends at [its] operations" (AC ¶ 32) is hardly an admission of mine safety expertise.[8]

*Finally*, White's departure does not support an inference of scienter. She was the only executive alleged to have left, and there is no basis to infer that her departure was "suspicious." Mot. at 29; Opp. at 30. Indeed, White left for the innocuous pursuit of "other opportunities." (AC ¶ 62).

E.    Nonculpable Inference More Compelling than Any Opposing Inference

Plaintiff does not present factual allegations sufficient to support an inference of scienter (never mind a "strong inference") as to any Defendant. *See* Mot. at 31-32. Instead, the record supports only the nonfraudulent inference that no safety procedures can eliminate the risk of landslides, that SSR repeatedly warned investors of the relevant risks,

---

[8] Plaintiff's authority is inapposite. Opp. at 30. Antal's statement does not suggest he was "actively monitoring" safety at SSR's mines (*Ore. Laborers Emps. Pension Tr. Fund v. Maxar Techs Inc.*, 2020 WL 5500458, *14 (D. Colo. Sep. 11, 2020)) and is not analogous to a post-class period "admission" of wrongdoing (*Yellowdog Partners, LP v. CURO Grp. Holdings Corp.*, 426 F. Supp. 3d 864, 874 (D. Kan. 2019)).

and that Defendants endeavored to manage and truthfully disclose the challenges to SSR's business. *Id.*

## III.    Plaintiff fails to adequately plead loss causation.

Plaintiff relies primarily on a flawed "materialization-of-concealed-risk" theory to establish loss causation. Opp. at 33. Plaintiff claims SSR's risk disclosures "did not contemplate" the risks of "the shuttering of its largest and most profitable site" and the "departure from industry-standard monitoring that SSR Mining had implemented." *Id.* But in fact, SSR fully disclosed these risks. *See supra* at 4-5; Mot. at 7-9, 11-12. Among other things, SSR disclosed that the suspension or revocation of its permits could specifically impact "continued production at Çöpler" and that landslides and similar risks could negatively impact the Company's business. *See* Mot. at 7-8. SSR was not required to disclose more (*see supra* at 5) and did not "conceal" any risks that allegedly caused investor losses later. *See* Mot. at 34 n.10.

Plaintiff's "corrective disclosures" argument also fails. Opp. at 34-35. As Plaintiff concedes, the necessary corrective disclosure would involve "news articles and analyst reports link[ing] the collapse of the Çöpler heap to SSR Mining's failure to maintain industry-standard safety and monitoring procedures." *Id.* at 34. But Plaintiff fails to identify any news article, analyst report, or other public disclosure providing that link and leading to a decline in SSR's stock price. *See* Mot. at 33-35. Instead, Plaintiff admits that it was the Report that supposedly revealed "SSR Mining lacked essential monitoring systems," but the Report, issued in May 2024, had no impact on SSR's stock price. *See*

15

Opp. at 35.  The Court need go no further to conclude that Plaintiff has failed to adequately

plead loss causation.[9]

## **CONCLUSION**

For these reasons, the Complaint should be dismissed with prejudice.[10]

---

[9] The Opposition does not contest that Plaintiff's 20(a) claim is entirely derivative of its
10(b) claim, and therefore fails for the same reasons.  *See* Mot. at 35.

[10] Plaintiff's request for leave to amend (Opp. at 36) should be denied because it is
"inadequately presented because it is only a single sentence at the end of [Plaintiff's] brief."
*Molson*, 2020 WL 13499995 at *13-14 (denying identical request to amend contained in
opposition brief).

16

Respectfully submitted this 1st day of April, 2025.

**ALLEN OVERY SHEARMAN STERLING US LLP**

*/s/ Lyle Roberts*

Lyle Roberts
1101 New York Ave., NW
Washington, DC 20005
Telephone: (202) 508-8108
Email:  lyle.roberts@aoshearman.com

*Counsel for Defendants SSR Mining, Rodney P. Antal and Alison White*

17

## PRACTICE STANDARD III(A)(1) CERTIFICATION

I hereby certify that the foregoing motion complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1), as modified by the Court's Order Granting Defendants' Unopposed Motion to Exceed Word Limit (ECF 59).


/s/ Lyle Roberts
Lyle Roberts

18

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2025, a copy of the foregoing was electronically filed with the Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by the Court's electronic filing system.

*/s/ Lyle Roberts*
Lyle Roberts
