**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:24-cv-00739-DDD-TPO

KARAM AKHRAS, Individually and on behalf of all others similarly situated,

     Plaintiff,

v.

SSR MINING INC., RODNEY P. ANTAL, and ALISON WHITE,

     Defendants.

---

## ORDER

---

SSR Mining is owns precious-metal mines in the United States, Canada, Argentina, and Turkey. Through a subsidiary, SSR owns the Çöpler (pronounced like "Chirpler") gold mine in Turkey. On February 13, 2024, there was a landslide at Çöpler that killed nine mine workers. SSR suspended operations, the Turkish government revoked Çöpler's operating and environmental permits, and SSR's stock price plummeted.

Lead plaintiff, RAD Investment, alleges that throughout the class period, SSR made materially false or misleading statements about the mine's safety and failed to disclose material adverse facts to investors. As a result of these alleged false statements and omissions and the decline in market value, RAD claims that it and other class members have suffered losses. Its consolidated amendment complaint alleges defendants violated Sections 10(b) and 20(a) of the Exchange Act. Doc. 54.

Defendant moved to dismiss. Doc. 60. For the reasons below, the motion is granted.

## BACKGROUND[1]

SSR Mining is a precious metals mining company. Rodney Antal has been the Executive Chairman of SSR since June 2023 and served as the CEO of SSR between September 2020 and June 2023. Alison White served as SSR's Executive Vice President and CFO from March 2021 until March 2024.

In 2020, SSR merged with Alacer Gold Corp., and through that merger it obtained an 80% stake in the Çöpler gold mine through its control of the Turkish company Anagold. SSR, through Anagold, holds the exclusive right to mine in the Çöpler project area. SSR oversees a mining contractor that performs the actual mining tasks. Plaintiffs allege that Çöpler is SSR's "flagship asset," and 41% of the company's revenue was derived from the mine. Doc. 54 ¶ 21, 22. *But see* Doc. 60 at 11 (claiming the mine resulted in 31% of the company's 2023 revenue).

The mine uses a heap leach pad to extract gold from metal-bearing rock. As the phrase suggests, crushed ore is placed in a heap on a leach pad. A cyanide solution is applied to the ore and dissolves the gold, which is collected at the bottom of the leach pad.

On February 13, 2024, a large slip on the heap leach pad resulted in a landslide that killed nine miners; SSR suspended mining activities as a result. The same day, SSR's stock price fell 53.7%, from $9.72 to $4.50 per share. In the aftermath of the disaster, eight SSR employees were detained by Turkish authorities, six were charged with criminal violations, and Turkish authorities revoked Çöpler's environmental permit. SSR also retracted its long-term forecasts, announced an impairment of

---

[1]    Unless otherwise noted, all facts come from Plaintiff's Consolidated Amended Class Action Complaint. Doc. 54.

inventory, and made other announcements and SEC filings to update investors in the aftermath.

Turkish prosecutors commissioned an Expert Committee Report to assess the causes of the landslide. The preliminary report found "multiple errors that lead to the disaster," including "insufficient monitoring during the operation phase, inadequate warning systems, and the lack of an effective management system to act upon the warning signs of cracks." Doc. 54 ¶ 71.

The operative complaint was filed on October 15, 2024. Its chief argument is that the Çöpler disaster revealed that Defendants had previously issued materially false and misleading statements and omissions that amount to violations of the Securities Exchange Act.

## APPLICABLE LAW

Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), "prohibit[s] making any material misstatement or omission in connection with the purchase or sale of any security." *Smallen v. W. Union Co.*, 950 F.3d 1297, 1304 (10th Cir. 2020) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)). To recover damages for a violation of Section 10(b), Plaintiffs must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton*, 573 U.S. at 267.

Defendant moves to dismiss, arguing that Plaintiffs have not properly alleged an actionable misrepresentation or omission, scienter, or loss causation. So only elements 1, 2, and 6 are at issue here.

The Private Securities Litigation Reform Act of 1995, Pub. L. No. 104–67, 109 Stat. 737, applies a heightened pleading standard to both

the material misrepresentation and scienter elements. *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012). "In order to overcome a motion to dismiss, a complaint must 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *Id.* (quoting 15 U.S.C. § 78u–4(b)(1)). And "it is not enough for a plaintiff to allege generally that the defendant acted with scienter. . . a plaintiff must, 'with respect to each act or omission alleged . . ., state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u–4(b)(2)). But as with any other motion to dismiss, the court takes all well pled factual allegations in the complaint as true. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

## DISCUSSION

### I.   Actionable Misstatements or Omissions

To show falsity, Plaintiffs must provide facts that "support a reasonable belief that the defendant's statements identified by the plaintiff were false or misleading." *Hampton v. root9B Techs., Inc.*, 897 F.3d 1291, 1298 (10th Cir. 2018) (citation omitted). The Tenth Circuit has identified several factors to be considered:

> (1) the level of detail provided by the facts stated in a complaint; (2) the number of facts provided; (3) the coherence and plausibility of the facts when considered together; (4) whether the source of the plaintiff's knowledge about a stated fact is disclosed; (5) the reliability of the sources from which the facts were obtained; and (6) any other indicia of how strongly the facts support the conclusion that a reasonable person would believe

> that the defendant's statements were mis-
> leading.

*Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1248 (10th Cir. 2022) (quoting *Hampton*, 897 F.3d at 1298–99).

Defendant's statements must also be material, and it is so "if a reasonable investor would consider it important in determining whether to buy or sell stock." *Id.* (quoting *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997)). Because materiality is a mixed question of law and fact, "the question of materiality is to be resolved as a matter of law when the information is so obviously important or unimportant to an investor, that reasonable minds cannot differ on the question of materiality." *Connett v. Justus Enters. of Kansas, Inc.*, 68 F.3d 382, 384 (10th Cir. 1995) (quotation omitted).

Plaintiffs' complaint identifies two groups of statements that it believes to be actionable: (1) statements regarding SSR's safety equipment, Doc. 54 ¶¶ 78–82, and (2) statements regarding risks to the company's permits and risks outside the company's control, *Id.* ¶¶ 85–88. I address each in turn.

### A. Health and Safety Statements

Plaintiffs first identify various statements related to safety procedures. These statements, generally, affirm SSR's commitment to "effective" and "appropriate" safety measures including systems, policies, procedures, and equipment. *See generally* Doc. 54 ¶¶ 78–82. The complaint reproduces block quotes from several documents and bolds portions of the statements it believes were false. The following statements are among those identified:

- "The Company is committed to the health and safety of its employees and does so ***by creating and maintaining a safe working environment, equipment, work processes, effective***

- 5 -

*safety and health management systems, and by complying with all applicable health and safety laws and regulations.*" *Id.* ¶78.

- "The Mine also has *high specialized and sophisticated equipment on site*, and reflecting Çöpler's commitment to the community in 2019 . . . ." *Id.* ¶ 79.

- "The Company is committed to the health and safety of its employees and does so *by creating and maintaining a safe working environment, equipment, work processes, effective safety and health management systems, and by complying with all applicable health and safety laws and regulations.*" *Id.* ¶ 80.

- "*The Company's safety framework emphasizes effective risk-centered management systems* . . . ." *Id.*

- "While the details of Emergency Plans vary by site, the fundamentals of our approach are consistent: well-trained teams, *appropriate equipment, effective communication* and clear protocols." *Id.* ¶ 81.

And Plaintiffs claim that these statements were materially false because

> (1) the SSR Mining lacked key systems at the Çöpler mine to monitor the movement and displacement of heap; (2) that, as a result, the Company was ill-equipped to respond to emergencies such as landslides at the heap leach pad; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

*Id.* ¶ 83.

- 6 -

### 1.  Materiality

Defendant claims, though it does not use the word, that the statements Plaintiffs identify are immaterial. It claims that the claims are not actionable because of the greater context of the statements and because they are vague, optimistic puffery.

SSR first argues that the same document that contains the alleged materially false statements also contains disclosures that the company faces risks from landslides, Doc. 60-9 at 37, mechanical failures, *id.*, permitting risks, *id.* at 26, and various safety risks, Doc. 60-5 at 34–35. These documents both contain a bulleted list of risks under the general warning that "[m]ining is inherently risky and subject to conditions and events beyond the Company's control. Doc. 60-5 at 24; Doc. 60-9 at 36.

It then adds that a reasonable investor would not rely on the statements at issue because they are vague and optimistic and do not convey any specific or verifiable information about SSR's systems. Indeed, the Tenth Circuit has held that mere puffery is not actionable when it is "the kind of rosy affirmations commonly heard from corporate managers and numbingly familiar to the marketplace—loosely optimistic statements that are so vague, so lacking in specificity that no reasonable investor could find them important." *In re Level 3*, 667 F.3d at 1340 (quotation omitted). Statements are mere puffery if they are not "objectively verifiable." *Pluralsight*, 45 F.4th at 1258.

SSR points to the first statement the Plaintiffs identify: "[t]he Company is committed to the health and safety of its employees and does so ***by creating and maintaining a safe working environment, equipment, work processes, effective safety and health management systems, and by complying with all applicable health and safety laws and regulations.***" Doc. 54 ¶ 78. It argues that this is not specific and verifiable information, but is much closer to general, self-

congratulatory language. In *Level 3*, the Tenth Circuit specifically found "general, forward-looking expressions of confidence in future integration progress" immaterial. *In re Level 3*, 667 F.3d at 1340.

Plaintiffs respond that these generic risks of mining do not overcome the misstatements. It argues that the cases SSR cites feature "highly specific, very factual, and directly address the predictive statements that form the basis of [the plaintiff's] complaint." *Grossman*, 120 F.3d 1121; *see also In re Sibanye Gold Ltd. Sec. Litig.*, No. 18-CV-3721(KAM)(PK), 2020 WL 6582326, *16 (E.D.N.Y. Nov. 10, 2020) (Defendant disclosed very specific warnings about the "inherent risks of mining gold deposits located deep underground in areas of seismic activity in its South African mines.").

And Plaintiffs argue that many of SSR's statements are objectively verifiable. Plaintiffs point out that defendants claimed to have "effective" and "appropriate" safety systems, and that both claims have proven false.

SSR's statements do contain at least some objectively verifiable statements. A reasonable investor would certainly care whether Çöpler "also has high specialized and sophisticated equipment on site," Doc. 54 ¶ 79, whether Çöpler's Emergency Plan has "well-trained teams, appropriate equipment, effective communication and clear protocols," *id.* ¶ 81, and whether SSR is "complying with all applicable health and safety laws and regulations," *id.* ¶ 80.

SSR's disclosures certainly affect the materiality of the statement, but they are not specific enough to render the alleged misstatements "so obviously" unimportant. *See Connett*, 68 F.3d at 384. Plaintiffs have sufficiently pled that at least some of the bold statements may be material to a reasonable investor.

### 2.  Falsity

In the aftermath of the Çöpler disaster, it is easy to look critically at SSR's statements. But the law is clear that "securities claims will not be based on 'fraud by hindsight.'" *Grossman*, 120 F.3d at 1124. The statements must have been false or misleading when made. *In re Level 3*, 667 F.3d at 1341.

The health and safety statements that Plaintiffs take issue with come from the company's 2021 10-K (filed on February 23, 2022), Doc. 54 ¶ 78, 2021 Environment, Social, and Governance and Sustainability Report (published April 14, 2022), *id.* ¶ 79, 2022 10-K (filed February 22, 2023), *id.* ¶ 80, and 2022 ESG and Sustainability Report (published April 14, 2023), *id.* ¶ 81. The Çöpler landslide did not occur until February 2024.

SSR argues that Plaintiffs have produced no evidence that any of the health and safety statements were false when they were made. It claims there is no evidence that SSR was not actually committed to safety and no evidence that the specific statements about safety measures were not true. As an example, SSR asserts that Plaintiffs have not presented any particularized factual allegations to establish that Çöpler did not have "high specialized and sophisticated equipment on site."

Plaintiffs confirm in their response that they "challenge[] the concrete *representations about the effectiveness* of SSR Mining's equipment to identify and mitigate mining risks." Doc. 62. But to prove that these representations are actionable, Plaintiffs cannot just rely on the fact of the landslide. They must show that the safety measures were ineffective and inappropriate at the time the statements were made.

Plaintiffs rely on the findings from the Turkish Expert Committee Report, but these findings too were not collected until after the disaster

and detail only the facts immediately preceding the slide. The report considers the velocity data for the week preceding the landslide and a crack that workers noticed on February 11, 2024. Doc. 54 ¶¶ 72–73. The report does not say whether SSR's systems were adequate when the alleged misstatements were made, and Plaintiffs do not attempt to connect them to the period in which the statements were made. The report notes only that "[n]one of the witnesses interviewed by the Prosecutor's Officer recalled a negative radar report before the incident occurred." *Id.* ¶ 77.

Even if we can assume the Expert Committee Report findings are evidence of the state of the systems when the statements were made, they provide only mixed support for Plaintiffs' claims. Some findings in the report support the veracity of SSR's statements. The report confirms that SSR had instituted a triggering action response plan for the heap leach pad. Doc. 54 ¶ 107. It confirms that SSR used radar and geotechnical monitoring to monitor heap deformations. *Id.* ¶ 109, 72. So SSR had at least some advanced systems to monitor the heap.

But the report also found failures in SSR's systems. It found that "pore water is not monitored, measuring instruments were not placed sufficiently, and there was no centralized data collection and analysis." *Id.* ¶ 109. It further noted that the failure of data collection and analysis meant that movement limits were exceeded on February 8, but no security measures were taken. *Id.* at ¶ 110. But the report states that that the movement increased starting in January 2024. *Id.* ¶ 111.

The report certainly provides evidence of where the safety systems failed in hindsight, but it does not show whether these failures were long-term inadequacies or one-off failures. A reasonable investor would not take SSR's statements to mean their safety systems are perfect, and SSR's disclosures do not claim to prevent all disasters. The relevant

question remains whether the company's safety systems were ineffective and inappropriate when the company made its statements. Plaintiffs have not produced any evidence to allow one to make such an inference. Using the fact of the disaster and the subsequent report is precisely the "fraud by hindsight" that the law does not allow.

## B. Risk Disclosures

Plaintiffs also point to specific statements regarding risks to the company's permits and other risks outside of the company's control, what SSR collectively calls risk disclosures. The following are some of the statements Plaintiffs identify.

- "***The Company requires permits to conduct its operations, and delays in obtaining or failing to obtain such permits, or a failure to comply with the terms of any such permits that the Company has obtained, would adversely affect the Company's business.***" Doc. 54 ¶ 84.

- "***Our ability to obtain permits and approvals and to operate near certain communities may be adversely impacted by real or perceived detrimental events associated with our activities or those of other mining companies affecting the environment, health and safety of communities in which we operate.***" *Id.*

- "***Previously obtained permits and approvals may be suspended or revoked for many reasons, including through government or court action, or may be adjusted in a manner that adversely affects our operations, including our ability to explore or develop properties, commence production or continue operations.***" *Id.*

- Under the header "**Mining is inherently risky and subject to conditions and events beyond the Company's control**," *id.*

¶ 87, defendants list risks including "*failure of mining pit slopes and tailings dam walls*" and "flooding, explosions, fire, rockbursts, cave-ins *and landslides*." *Id*. The statement warned that "[t]*hese risks could result in* damage to, or destruction of, mineral properties, production facilities or other properties, environmental damage, delays in mining, increased production costs, *asset write downs, monetary losses and possible legal liability or penalties*, occupational illness or health issues, personal injury, *and loss of life*, and/or facility and workforce evacuation. *Id*.

The complaint does not necessarily claim that these statements are false, but it claims that SSR failed to disclose material adverse facts related to these statements. It alleges that

> (1) that the heap leach pad at the Çöpler mine was significantly higher than industry norms; (2) that, as a result, the heap slope was unstable; (3) SSR Mining lacked key systems at the Çöpler mine to monitor the movement and displacement of heap; (4) that the foregoing were foreseeable factors within the Company's control that contributed to a significant risk of landslides at the Çöpler mine; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

*Id*. ¶ 89, *see also id*. ¶ 86.

### 1. Materiality

An omitted fact is material "when there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of

- 12 -

information made available." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 38 (2011).

SSR first claims that the risk disclosures are not actionable because the harm was not "virtually certain" to occur. It points to *Pluralsight*, where the Tenth Circuit noted that "[w]here risk factors have been found materially misleading, the risk had materialized or was virtually certain to occur." 45 F.4th at 1255 (collecting cases). And so SSR argues that even if the heap leach pad had been higher than industry norms, that does not render a landslide so certain that permits were "virtually certain" to be impacted.

Plaintiffs argue not that the risk had already materialized, but that SSR has mischaracterized the nature of the risk. For example, SSR describes the risk of landslides as "out of its control" but Plaintiffs allege that the height of the slab was well above industry standards, suggesting that at least some risk mitigation remained in SSR's control.

Plaintiffs correctly read *Pluralsight* to focus on the characterization of risk. In distinguishing a different case, the Tenth Circuit concluded that "the risk disclosed had materialized, so it could no longer be characterized as a risk without creating a misleading impression." *Pluralsight*, 45 F.4th at 1256. But in contrasting the case at issue, the Circuit found relevant that the "problem could still be remedied at the time Pluralsight disclosed the risk to investors." *Id.*

Other circuits have held "[a] generic warning of a risk will not suffice when undisclosed facts on the ground would substantially affect a reasonable investor's calculations of probability." *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014). These facts include not only if the risks have transpired, but if the mitigation systems are inadequate. *Id.* ("One cannot, for example, disclose in a securities offering a business's peculiar risk of fire, the installation of a comprehensive

sprinkler system to reduce fire danger, and omit the fact that the system has been found to be inoperable, without misleading investors.").

Returning to the touchstone of materiality, Plaintiffs have plausibly pled that the facts surrounding the risk of landslide would be important to a reasonable investor. After all, a landslide would affect not only the profitability of the heap leach pad, but the permitting for the entire mine. *See El Paso Firemen & Policemen's Pension Fund v. InnovAge Holding Corp.*, 709 F. Supp. 3d 1296, 1335 (D. Colo. 2023) ("There simply can be no doubt that withholding information concerning facts that could literally cap revenue in a business's largest market (plus an additional market) would significantly alter the total mix of information available to investors.").

### 2. Falsity

SSR also claims that the risk disclosures accurately disclosed the scope of the risks. It argues that "the Risk Disclosures 'warned of the precise issues that ultimately materialized.'" Doc. 60 at 26 (quoting *Exkae Ltd. v. Domo, Inc.*, No. 2:19-CV-781-DAK-DAO, 2020 WL 7352735, *6–*7 (D. Utah Dec. 15, 2020). The permitting risks warned investors of the adverse effects if permits were revoked, Doc. 54 ¶¶ 84–85, and that mining is inherently risky and includes the risk of landslides, *id.* ¶ 87–88.

Plaintiffs respond that the omission of the abnormal height of the heap leach pad rendered these representations misleading. The complaint cites an article that quotes scientists from Trabzon Karadeniz Technical University (KTÜ) Landslide Application and Research Center. These scientists claimed that "heap leach that caused landslide in the Çöpler Gold Mine in Turkey's eastern Erzincan province was above the 'controllable level.'" *Id.* ¶ 54. One specifically said "[w]e have determined that the heap leach, which is a maximum of 150 meters in the

- 14 -

world standards, reached 257 meters here which is an unbelievable fig-ure." *Id.* That height was among "the primary drivers behind the (land) movement's acceleration and the exacerbation of the disaster." *Id.*[2]

The Second Circuit has held "once a company speaks on an issue or topic, there is a duty to tell the whole truth." *Meyer*, 761 F.3d at 250. Plaintiffs have alleged that SSR has not told the whole truth. It has pro-duced evidence through a news articles and the Turkish government's report that SSR may have omitted material facts from its risk disclo-sures. Although the facts in the complaint are contradictory as to whether an earthquake could have triggered the landslide, *compare* Doc. 54 ¶ 54 *with* ¶ 72, between the KTÜ scientists and the Expert Commit-tee Report, Plaintiffs have alleged enough facts to suggest that SSR did not disclose all of the material information about its landslide and per-mitting risks. This evidence "support[s] a reasonable belief that the de-fendant's statements identified by the plaintiff were false or mislead-ing." *Hampton*, 897 F.3d at 1298.

### 3.  PSLRA Safe Harbor

SSR finally claims that the risk disclosures fall under the PSLRA's safe harbor for forward-looking statements. The statute protects a for-ward-looking statement if it is "identified as a forward-looking

---

[2] Like the health and safety statements, the risk disclosures must have been false or misleading at the time they were made. Only in its reply brief does SSR suggest that the height issue did not exist when the state-ments were made. But the complaint alleges that "it takes more than 2 years to extract the majority of the valuable minerals from the heap." Doc. 54 ¶ 2. It is unclear when the height of the heap became material, and thus whether SSR had a duty to correct the omission. *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1246 (10th Cir. 2016), as amended (July 6, 2016) ("Liability for securities fraud requires the making of a material misrepresentation. This requirement may be sat-isfied when the defendant remains silent while owing a duty to investors to correct their misperceptions." (citation omitted)).

statement, and is accompanied by meaningful cautionary statements"
and it is not made with actual knowledge of falsity. 15 U.S.C. § 78u-
5(1)(A)–(B).

SSR identifies as one of its warnings that there are risks beyond the
Company's ability to control or predict. Doc. 60 at 22. But this is exactly
the kind of statement that Plaintiffs allege is misleading. Because the
warning is plausibly misleading, I cannot conclude as a matter of law
that the statements are accompanied by sufficient warnings, even if they
are forward-looking.

Plaintiffs have properly alleged that the risk disclosures were mean-
ingfully misleading. Statements from the TKÜ scientists and Expert
Committee Report support the claim that the risk of landslides and, as
a result, the revocation of permits, was not entirely out of SSR's control.
Because of the significant influence these factors have on SSR's busi-
ness, such omissions are plausibly material misrepresentations.

## II.  Scienter

SSR next argues that Plaintiffs failed to plead a strong inference of
scienter. "Scienter is a mental state embracing [1] intent to deceive, ma-
nipulate, or defraud, or [2] recklessness." *Pluralsight*, 45 F.4th at 1258–
59 (quotation omitted). Plaintiffs do not seem to argue that any defend-
ants had actual intent to defraud, so the focus is on whether they were
reckless. In this context, recklessness is a high bar—"conduct that is an
extreme departure from the standards of ordinary care, and which pre-
sents a danger of misleading buyers or sellers that is either known to
the defendant or is so obvious that the actor must have been aware of
it." *In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1201 (10th Cir. 2015)
(quoting *City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1258 (10th
Cir. 2001)).

Considering whether Plaintiffs have alleged a "strong" inference of scienter, courts consider all facts collectively. *Id.* at 1201–02. The complaint must be dismissed unless "a reasonable person would deem the inference of scienter cogent and *at least as compelling as any opposing inference* one could draw from the facts alleged." *Id.* at 1202 (emphasis added).

Plaintiffs argue three reasons to suggest the defendants were reckless: (1) defendants knew or should have known about the risks at Çöpler because it was a significant part of SSR's business, (2) the individual defendants were responsible for monitoring the company's safety practices, and (3) individual defendants ignored previous safety incidents. But this conflates the Defendants' obligations to mitigate risks in operating their business with their obligation to not make misleading statements to investors. Plaintiffs' arguments do not meet the high standard for showing the latter.

Çöpler is important to SSR's bottom line. The complaint alleges that the mine generated 41% of the company's revenue at the start of the class period. Doc. 54 ¶ 21. In the aftermath, analysts projected that the loss of Çöpler reduced SSR's asset value by between 30 and 45%. *Id.* ¶ 115. Plaintiff argues that Çöpler was a core asset to the business and so the individual defendants likely knew or were reckless in not knowing about its safety measures.

Defendant argues that the Tenth Circuit has rejected "core operations theory." Doc. 60 at 34 (citing *Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*, 79 F.4th 1209, 1222 (10th Cir. 2023). But this is an overstatement of the caselaw. The Circuit has not foreclosed considering core operations; it has merely said that that "core operations" alone are insufficient to create the inference of scienter. *Meitav Dash*, 79 F.4th at 1222. But defendant correctly points out

- 17 -

that the mere fact of the CEO's position and the fact of a core operation, even if relevant, "do little to create an inference of scienter." *Id.* at 1224. Even so, Çöpler's significance is one of the facts to be considered collectively. *See In re Zagg*, 797 F.3d at 1201.

Plaintiffs next argue that the individual defendants were responsible for monitoring Çöpler's safety. The complaint points out that both Ms. White and Mr. Antal reported to the company's Environment, Health, Safety, and Sustainability Committee. Doc. 54 ¶ 113. It alleges that the individual defendants were in a position to know about the safety systems because of their duty to report to this committee.

But the fact that the individual defendants occupied senior positions is not enough to establish knowledge. *Philadelphia*, 264 F.3d at 1264 ("Thus, the mere fact that the individual Defendants occupied senior positions in the company, and that two of them knew of the litigation at least by early 1995, is not sufficient to imply knowledge of the specific fact of materiality."). This is true even if they attended meetings that discussed mine safety. *See Smallen*, 950 F.3d at 1307 ("Even assuming the Individual Defendants were briefed on these compliance matters while attending the identified meetings, 'mere attendance at meetings does not contribute to an inference of scienter.'").

Plaintiffs argue that the individual defendants "recei[ved] internal reports containing contrary facts" and "regularly review[ed] safety and health risks at the mines," Doc. 62 at 27, but provides no specific evidence that this is true, nor even cites to the record for support.

Pointing to a September 2020 incident of slippage and a June 2022 cyanide leak, Plaintiffs finally argue that the individual defendants should have known that Çöpler's safety protocols were inadequate. Defendant responds that these instances were totally unrelated to the eventual landslide. Certainly, they should have put the individual

- 18 -

defendants on notice that safety issues could threaten mine operations and permits. But there is no suggestion that the individual defendants recklessly disregarded this information in its disclosures. In fact, SSR disclosed the cyanide leak in the statements Plaintiffs take issue with. Doc. 54 ¶ 88.

Plaintiffs attempt to plead sufficient circumstantial evidence to establish recklessness. This is a high bar. The standard is not negligence, it is "akin to conscious disregard." *In re Zagg*, 797 F.3d at 1207. Plaintiffs have shown that the individual defendants were high-ranking officers in SSR. But not that they were privy to information that contradicted the public disclosures. There is no evidence that they knew of the height of the heap, that the height increased the risk of landslides, that the safety systems were inadequately monitored, or that they knew of any other contradictory information at the time the statements were made.

To be sure, the individual defendants knew Çöpler was important and likely knew there were safety risks. But that is not the same as knowing the mine's safety systems were wholly inadequate or that the design of the mine was so risky that it needed to be disclosed. Plaintiffs assert that "[t]he abnormal height of Çöpler's heap leach pad increased the risk of landslide, thus warranted disclosure." Doc. 62 at 26. But they do not argue when the heap's height became materially risky, nor when it became "so obvious that the [defendants] must have been aware of it." *In re Zagg*, 797 F.3d at 1201.

The heightened pleading standard "requires the complaint to allege, with particularity, *facts* giving rise to a strong inference of scienter." *Id.* (emphasis in original). Plaintiffs have not alleged facts that show "an extreme departure from the standards of ordinary care," *Philadelphia,*

- 19 -

264 F.3d at 1260, and so one cannot reasonably infer that the individual defendants intended to defraud investors.[3]

The failure to allege scienter is sufficient alone to dismiss this case.[4]

## CONCLUSION

It is ORDERED that:

The MOTION TO DISMISS (Doc. 60) is GRANTED; and

The case is DISMISSED WITHOUT PREJUDICE.

DATED: September 30, 2025     BY THE COURT:

Daniel D. Domenico
United States District Judge

---

[3] The scienter of senior controlling officers may be imputed to a corporate defendant. *Smallen*, 950 F.3d at 1312. Since Plaintiffs failed to allege scienter as to the individual defendants, we need not consider whether it may be imputed to SSR.

[4] SSR also argues that Plaintiff fails to plead Loss Causation. Because failure to plead scienter is sufficient to dismiss the case, I do not consider this alternative argument.