**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Daniel D. Domenico**

Civil Action No. 1:24-cv-00739-DDD-TPO

KARAM AKHRAS, Individually and on behalf of all others similarly situated,

Plaintiff,

v.

SSR MINING INC., RODNEY P. ANTAL, and ALISON WHITE,

Defendants.

---

**ORDER GRANTING MOTION TO DISMISS**

---

SSR Mining owns precious-metal mines in the United States, Canada, Argentina, and Turkey. Through a subsidiary, SSR owns the Çöpler (pronounced like "Chirpler") gold mine in Turkey. On February 13, 2024, there was a landslide at Çöpler that killed nine mine workers. SSR suspended operations, the Turkish government revoked Çöpler's operating and environmental permits, and SSR's stock price plummeted.

Plaintiffs allege that throughout the class period, SSR made materially false or misleading statements about the mine's safety and failed to disclose material adverse facts to investors. As a result of these alleged false statements and omissions and the decline in market value, RAD claims that it and other class members have suffered losses. Its consolidated amended complaint alleges defendants violated Sections 10(b) and 20(a) of the Exchange Act. Doc. 69.

I dismissed Plaintiffs' first complaint, Doc. 64, but granted leave to amend, Doc. 65. Defendants again moved to dismiss, arguing that Plain-

tiffs failed to cure the deficiencies in their first complaint. Doc. 72. I agree. The motion is granted.

**BACKGROUND**

The background of this case has not changed since the Court's first order, *see* Doc. 64 at 2–3. I briefly restate those facts here.

SSR Mining is a precious metals mining company. Rodney Antal has been the Executive Chairman of SSR since June 2023 and served as the CEO of SSR between September 2020 and June 2023. Alison White served as SSR's Executive Vice President and CFO from March 2021 until March 2024.

In 2020, SSR acquired the Çöpler mine. Plaintiffs allege that Çöpler is SSR's "flagship asset," and 41% of the company's 2021 revenue was derived from the mine. Doc. 69 ¶ 21, 22.

The mine uses a heap leach pad, a pile of crushed ore treated with cyanide, to extract gold. On February 13, 2024, a large slip on the heap leach pad resulted in a landslide that killed nine miners; SSR suspended mining activities as a result and its stock price fell 53.7%, from $9.72 to $4.50 per share. Following the landslide, six employees were charged with criminal violations, and Turkish authorities revoked Çöpler's environmental permit. SSR also retracted its long-term forecasts, announced an impairment of inventory, and made other announcements and SEC filings to update investors in the aftermath.

Turkish prosecutors commissioned an Expert Committee Report to assess the causes of the landslide. The preliminary report found "multiple errors that lead to the disaster," including "insufficient monitoring during the operation phase, inadequate warning systems, and the lack of an effective management system to act upon the warning signs of cracks." Doc. 69 ¶ 74.

Plaintiffs sued, arguing that the Çöpler disaster revealed that Defendants had previously issued materially false and misleading statements and omissions that amount to violations of the Securities Exchange Act.

I dismissed the first complaint, concluding ultimately that Plaintiffs failed to adequately plead scienter. Doc. 64 at 16–20. But I granted leave to amend. Doc. 65. Plaintiffs filed an amended complaint, Doc. 69, and the Defendants once again moved to dismiss, asserting, among other things, that Plaintiffs have not cured their scienter allegations. Doc. 72.

## APPLICABLE LAW

Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), "prohibit[s] making any material misstatement or omission in connection with the purchase or sale of any security." *Smallen v. W. Union Co.*, 950 F.3d 1297, 1304 (10th Cir. 2020) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014)). To recover damages for a violation of Section 10(b), Plaintiffs must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton*, 573 U.S. at 267.

The Private Securities Litigation Reform Act of 1995, Pub. L. No. 104–67, 109 Stat. 737, applies a heightened pleading standard to both the material misrepresentation and scienter elements. *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1333 (10th Cir. 2012). "In order to overcome a motion to dismiss, a complaint must 'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.'" *Id.*

(quoting 15 U.S.C. § 78u–4(b)(1)). And "it is not enough for a plaintiff to allege generally that the defendant acted with scienter. . . a plaintiff must, 'with respect to each act or omission alleged . . ., state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.* (quoting 15 U.S.C. § 78u–4(b)(2)). But as with any other motion to dismiss, the court takes all well pled factual allegations in the complaint as true. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

## DISCUSSION

### I. Alleged Misstatements

The alleged misstatements in the amended complaint are the same as those from the original. They cover two categories: those regarding safety procedures and those regarding risk disclosures.

The statements related to safety procedures affirm SSR's commitment to "effective" and "appropriate" safety measures including systems, policies, procedures, and equipment. *See generally* Doc. 69 ¶¶ 81–85. The complaint quotes several documents and bolds portions of the statements it believes were false, including the following:

- "The Company is committed to the health and safety of its employees and does so ***by creating and maintaining a safe working environment, equipment, work processes, effective safety and health management systems, and by complying with all applicable health and safety laws and regulations.***" *Id.* ¶81.
- "The Mine also has ***high specialized and sophisticated equipment on site***, and reflecting Çöpler's commitment to the community in 2019 . . . ." *Id.* ¶ 82.
- "The Company is committed to the health and safety of its employees and does so ***by creating and maintaining a safe work-***

***ing environment, equipment, work processes, effective safety and health management systems, and by complying with all applicable health and safety laws and regulations.***" *Id.* ¶ 83.

- "***The Company's safety framework emphasizes effective risk-centered management systems*** . . . ." *Id.*
- "While the details of Emergency Plans vary by site, the fundamentals of our approach are consistent: well-trained teams, ***appropriate equipment, effective communication*** and clear protocols." *Id.* ¶ 84.

And Plaintiffs claim that these statements were materially false because

> (1) the SSR Mining lacked key systems at the Çöpler mine to monitor the movement and displacement of heap; (2) that, as a result, the Company was ill-equipped to respond to emergencies such as landslides at the heap leach pad; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

*Id.* ¶ 86.

Plaintiffs also challenge specific statements about risks to the company's permits and other risks outside of the company's control, what SSR collectively calls risk disclosures. The following are some of the statements Plaintiffs identify:

- "**The Company requires permits to conduct its operations, and delays in obtaining or failing to obtain such permits, or a failure to comply with the terms of any such permits that the Company has obtained, would adversely affect the Company's business.**" *Id.* ¶ 87.

- "***Our ability to obtain permits and approvals and to operate near certain communities may be adversely impacted by real or perceived detrimental events associated with our activities or those of other mining companies affecting the environment, health and safety of communities in which we operate.***" *Id.*
- "***Previously obtained permits and approvals may be suspended or revoked for many reasons, including through government or court action, or may be adjusted in a manner that adversely affects our operations, including our ability to explore or develop properties, commence production or continue operations.***" *Id.*
- Under the header "**Mining is inherently risky and subject to conditions and events beyond the Company's control**," *id.* ¶ 90, defendants list risks including "***failure of mining pit slopes and tailings dam walls***" and "flooding, explosions, fire, rockbursts, cave-ins ***and landslides***." *Id.* The statement warned that "[***t***]***hese risks could result in*** damage to, or destruction of, mineral properties, production facilities or other properties, environmental damage, delays in mining, increased production costs, ***asset write downs, monetary losses and possible legal liability or penalties***, occupational illness or health issues, personal injury, ***and loss of life***, and/or facility and workforce evacuation. *Id.*

The complaint alleges these statements are misleading because SSR failed to disclose material adverse facts related to these statements. It alleges that

> (1) that the heap leach pad at the Çöpler mine was significantly higher than industry norms; (2) that, as a result, the heap slope was unsta-

> ble; (3) SSR Mining lacked key systems at the Çöpler mine to monitor the movement and displacement of heap; (4) that the foregoing were foreseeable factors within the Company's control that contributed to a significant risk of landslides at the Çöpler mine; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

*Id.* ¶ 92, *see also id.* ¶ 89.

## II. Scienter

I begin where the last complaint failed: scienter. "Scienter is a mental state embracing (1) intent to deceive, manipulate, or defraud, or (2) recklessness." *Indiana Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1258–59 (10th Cir. 2022) (citation modified). Plaintiffs do not allege that the individual defendants intended to deceive: "recklessness is what is at issue here." Doc. 73 at 19. But recklessness "is a particularly high standard." *In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1206 (10th Cir. 2015) (quotation omitted). The Tenth Circuit has clarified that recklessness is not negligence or even gross negligence and has called it "a state of mind approximating actual intent," "an extreme departure from the standards of ordinary care," and "akin to conscious disregard." *Id.* (collecting descriptions). And Plaintiffs must plead facts that make an inference of scienter "*at least as likely as* any plausible opposing inference." *Tellabs*, 551 U.S. at 311.

Plaintiffs make three arguments that, they contend, when viewed together, raise a cogent inference of scienter: (1) Defendants should have known about the safety at Çöpler because it was a key part of SSR's business, (2) the individual defendants were responsible for the company's safety practices, and (3) the individual defendants ignored previ-

ous safety practices. Doc. 73 at 13, 16, and 18. These are the same three reasons the Plaintiffs presented last time. *See* Doc. 62 at 30–37; *see also* Doc. 64 at 17 (addressing these arguments). They were found lacking then, so the question now is whether the new facts in the amended complaint make a material difference. They don't.

First, the allegations regarding the importance of Çöpler remain relevant, but minimally persuasive. Accepting as alleged that Çöpler accounted for 41% of SSR's 2021 revenue, Doc. 69 ¶ 21, then the mine was certainly important to the business and like received much of the Defendants' attention. But the mere combination of a core operation and a defendant's senior position "do little to create an inference of scienter." *Meitav Dash Provident Funds & Pension Ltd. v. Spirit AeroSystems Holdings, Inc.*, 79 F.4th 1209, 1224 (10th Cir. 2023). While the importance of the mine remains among the information the court considers, it still does little to move the needle about the central question of whether the defendants disregarded how effective their safety measures were.

Next, Plaintiffs renew their arguments that the individual defendants were the executives responsible for mine safety. The complaint again alleges that individual defendants reported to the board of directors' Environment, Health, Safety, & Sustainability Committee. Doc. 69 ¶ 116. And the complaint adds allegations that the company was "hesitant to spend money on new initiatives," *id.* ¶ 115, and that Defendants failed to have adequate procedures to analyze safety data, *id* ¶ 117.

Plaintiff attempts to use these facts to allege circumstantial reckless conduct: "knowledge of a fact that was so obviously material that the defendant must have been aware both of its materiality and that its nondisclosure would likely mislead investors." *Meitav Dash*, 79 F.4th at 1236 (Phillips, J., dissenting) (quoting *City of Philadelphia v. Fleming*

*Cos.*, 264 F.3d 1245, 1261 (10th Cir. 2001)). But this is just restating their other arguments. And it is unclear what material fact they allege defendants knew. They argue that "receipt of internal reports containing contrary facts is sufficient," Doc. 73 at 25, but do not point to any internal reports or any contrary facts. Plaintiffs ask the Court to assume that Defendants received damming information, but I cannot. See *Smallen*, 950 F.3d at 1307 ("Even assuming the Individual Defendants were briefed on these compliance matters while attending the identified meetings, 'mere attendance at meetings does not contribute to an inference of scienter.'").

Plaintiffs' scienter argument seems to begin with the assumption that because the landslide occurred, the safety systems must have been obviously inadequate. And because they were inadequate, the senior executives must have known. And because they must have known, they must have known when they made statements in 2022 and 2023, nearly a year before the February 2024 landslide.

But Plaintiffs have not pleaded any facts that allow the series of inferences that would allow one to conclude that the mine was so obviously unsafe in 2022 and 2023 that the defendants were reckless. And, unlike tort or other areas of the law, the law governing securities fraud claims requires particular facts: "the complaint shall . . . *state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind*." Philadelphia, 264 F.3d at 1258 (emphasis in original) (quoting 15 U.S.C. § 78u–4(b)(2)).

Finally, complaint points to other safety incidents, Doc. 69 ¶¶ 36–37, and the snowfall in the month before the landslide, *id*. at ¶¶ 3, 110. But the company disclosed the previous incidents in the same statement the Plaintiffs allege is misleading, Doc. 69 ¶ 91, so it cannot be argued they disregarded this information. And a 2024 weather event does not

provide any insight into the defendants' mental states regarding the safety measures in place when they made their 2022 and 2023 statements.

The scienter standard is whether the individual defendants recklessly disregarded the truth when they made their 2022 and 2023 statements. The Plaintiffs only argue that there was mismanagement before the 2024 collapse and hope I will connect the dots. But they must connect their own dots by pleading adequate facts in the complaint. They have not done so, so the motion is granted.

**CONCLUSION**

It is ORDERED that:

The MOTION TO DISMISS (Doc. 72) is GRANTED; and

The case is DISMISSED WITH PREJUDICE.

DATED: July 16, 2026

BY THE COURT:

Daniel D. Domenico
Chief United States District Judge